# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **FRED SPEER and MIKE McGUIRK**<br>**Individually and on behalf of a class of all**<br>**others similarly situated,** | )<br>)<br>)<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| **v.** | ) **CASE NO: 4:14-cv-00204-FJG** |
| | )<br>) |
| **CERNER CORPORATION,** | )<br>) |
| **Defendant.** | )<br>) |

## PLAINTIFFS' AMENDED MOTION FOR FLSA CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND NOTICE AND INTEGRATED SUGGESTIONS IN SUPPORT

Until Plaintiffs filed this lawsuit, Cerner Corporation ("Defendant") utilized an unlawful payroll processing system, reflected in its HR "Payroll Process Flow" chart. (Exhibit 1, filed under seal). [1]  Pursuant to this company-wide payroll process, Defendant systematically paid its non-exempt employees' (including Plaintiffs') overtime a full pay period late. The same unlawful payroll process also systematically miscalculated overtime wages by failing to include all remuneration into non-exempt employees' (including Plaintiffs') regular rate of pay. Plaintiffs' pay records confirm these overtime violations.  And, Defendant's U.S. Payroll Group's documented instructions for processing payroll also confirm the systemic nature of these overtime violations.  Every non-exempt employee who earned overtime and for whom Defendant processed payroll using this flawed system was similarly a victim.

---

[1] Defendant acknowledges it changed its payroll process for non-exempt employees following the inception of this lawsuit, but it is unclear if Defendant has remedied all the unlawful practices at issue in this lawsuit.

In addition to this system-wide, unlawful payroll-processing scheme, Defendant unlawfully paid Plaintiffs and hundreds of other non-exempt employees a purported fixed salary for fluctuating hours (a "fluctuating workweek" method of pay), even though these individuals were not paid a fixed salary (e.g. they received varying amounts of pay, rather than a "fixed" salary, to perform other job functions such as on-call work). And, as described above, Defendant also failed to pay contemporaneous overtime to its fluctuating workweek employees because it paid non-exempt employees' overtime a full pay period later than the straight time wages and failed to include all additional remuneration—such as on-call pay—into the overtime calculation. Even to this day Defendant has not paid Plaintiffs and other fluctuating workweek employees all the overtime wages they earned over the last three years. Accordingly, Plaintiffs allege that Defendant's unlawful pay practices invalidate its use of the fluctuating workweek method of calculating overtime and therefore deprived non-exempt employees of overtime premiums at a rate of one-and-one-half times their regular rate of pay.

Defendant's own payroll and human resource records, together with Plaintiffs' allegations and supporting testimony, establish that Defendant's non-exempt employees are similarly victims of Defendant's centralized payroll practices. This far exceeds what is required under the lenient threshold standard for conditional certification, which requires nothing more than "substantial allegations" that Plaintiffs and putative class members were subjected to similar policies or circumstances. Therefore, Plaintiffs move this Court for an Order conditionally certifying and directing notice to the following collective classes of Defendant's non-exempt employees:

(1)     All non-exempt persons employed by Defendant in the U.S., at any time during the last three years, whose overtime compensation was not paid on the next

regular payday for the period in which the overtime work was performed **("Late Payment of Overtime Class")**;

(2)     All non-exempt persons employed by Defendant in the U.S., at any time during the last three years, who received overtime compensation that was calculated based upon a "regular rate" of pay that excluded additional remuneration **("Miscalculated Overtime Class")**;

(3)     All non-exempt persons employed by Defendant in the U.S., at any time during the last three years, who were purportedly compensated based on the fluctuating workweek method of pay and who received overtime compensation **("Fluctuating Work Week Class")**,

(collectively, the "Notice Classes").

Plaintiffs also request this Court's Order (1) requiring Defendant to produce, within 10 days of this Court's Order, a separate computer-readable data file for each Notice Class, containing the employees' names, last-known addresses, job titles and employment locations, employee IDs, and dates of employment; (2) authorizing Plaintiffs to send notice of this lawsuit, in the form attached as Exhibit 12, to the individuals in each Notice Class; (3) providing a 90-day opt-in period within which members of the Notice Classes may postmark for return consents to join this FLSA lawsuit; and (4) directing Defendant to conspicuously post these notices at each of its work locations employing putative Notice Class members for the duration of the opt-in period, and for such other relief as this Court deems appropriate.

Without the requested court-ordered notice, many employees will never learn about this case, and their viable claims will silently erode under the FLSA statute of limitations.

# TABLE OF CONTENTS

**PAGE**

I.  STATEMENT OF FACTS.                                                    1

    A.  The Parties.                                                    1

    B.  Cerner Subjected Plaintiffs and Its Non-Exempt Employees To Uniform,   3
        Unlawful Pay Practices.

II.  THE LENIENT, THRESHOLD FLSA CONDITIONAL CERTIFICATION                 7
    STANDARD REQUIRES ONLY "SUBTANTIAL ALLEGATIONS."

    A.  The Two-Step Conditional Certification and Notice Process.     8

    B.  The Lenient, First-Tier Standard Requires Only Substantial Allegations,   9
        Not Proof That The Class Members Are Actually Similarly Situated.

III.  PLAINTIFFS EASILY MEET THE LENIENT, FIRST-TIER                      10
    STANDARD, AND CONDITIONAL CERTIFICATION IS
    WARRANTED.

    A.  Plaintiffs' Offer Substantial Allegations That They And The Late   11
        Payment of Overtime Class Are Similarly Situated.

    B.  Plaintiffs' Offer Substantial Allegations That They And The       12
        Miscalculated Overtime Class Are Similarly Situated.

    C.  Plaintiffs' Offer Substantial Allegations That They And The       14
        Fluctuating Work Week Class Are Similarly Situated.

IV.  THIS COURT SHOULD APPROVE AND DIRECT ISSUANCE OF                     16
    PLAINTIFFS' PROPOSED NOTICE FORM.

V.  CONCLUSION.                                                           18

# TABLE OF AUTHORITIES

**CASES**                                                                                           **PAGE**

*Carden v. Scholastic Book Clubs, Inc.,* 2011 WL 2680769  (W.D. Mo.).                                9, 16

*Chapman v. Hy-Vee, Inc.*, No. 10-CV-6128-W-HFS, 2012 WL 1067736 (W.D.          8-9, 16
    Mo. Mar. 29, 2012).

*Davis v. NovaStar Mortgage, Inc.,* 408 F.Supp.2d 811 (W.D. Mo. 2005).                               9-10

*Dernovish v. AT&T Operations, Inc.*, 2010 WL 143692 (W.D. Mo. Jan. 12,          9-12, 14, 16-17
    2010)

*Fast v. Applebees Int'l, Inc.*, 243 F.R.D. 360 (W.D. Mo. 2007)                                      10

*Garner v. G.D. Searle Pharm. & Co.*, 802 F.Supp. 418 (M.D. Ala. 1991).                              9

*Grayson v. K Mart,* 79 F.3d 1086 (11th Cir.1996).                                                   8

*Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989).                                          8, 10, 17

*Huang v. Gateway Hotel Hldgs.*, 248 F.R.D. 225 (E.D. Mo. 2008)                                      9-10

*Kautsch v. Premier Communications*, 504 F.Supp.2d 685 (W.D. Mo. 2007).                              8-10

*Loyd v. Ace Logistics, LLC*, 2008 WL 5211022 (W.D. Mo. Dec. 12, 2008).                              10

*Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207 (1959).                                       7

*Robertson v. LTS Mgmt. Serv. LLC*, 2008 WL 4559883 (W.D. Mo. Oct. 9,                                10
    2008).

*Schleipfer v. Mitek Corp.*, 2007 WL 2485007 (E.D. Mo. Aug. 29, 2007)                                10


**STATUTES**

29 U.S.C. § 216(b)                                                                                   7, 10

29 C.F.R. 778.106                                                                                    11

29 C.F.R. 778.114                                                                                    14-15

# I. STATEMENT OF FACTS.

## A. The Parties.

- **Plaintiffs Fred Speer, Mike McGuirk, and Defendant's Non-Exempt U.S. Workforce.**

1. Plaintiffs Fred Speer and Mike McGuirk were employed by Defendant as non-exempt Service Center Analysts and/or System Support Analysts in the ITWorks division in Columbia, Missouri. (Deposition of Fred Speer ("Speer Depo."), attached as Exh. 2, at 105:6-13, 274:5-9; Deposition of Mike McGuirk ("McGuirk Depo."), attached as Exh. 3, at 27:25-28:7).

2. Plaintiffs, like all of Defendant's non-exempt employees, were entitled to overtime premium pay for work in excess of 40 hours each week. Defendant does not dispute this. (Doc. 47, Defendant's Answer to Amended Complaint, at ¶ 21).

3. Like all of Defendant's non-exempt employees, Plaintiffs were required to enter their hours worked into Defendant's centralized, People Soft timekeeping and payroll system. (Speer Depo., Exh. 2, at 152:4-13, 213:1-10, 214:25-217:9, 227:16-24, 250:20-24, 269:20-22, 309:23-310:2, 310:19-312:19; McGuirk Depo., Exh. 3, at 89:16-23, 90:22-91:19, 100:3-14, 145:10-146:1; Doc. 47, Defendant's Answer to Amended Complaint, at ¶ 34).

4. From there, Defendant's corporate U.S. Payroll group processed their payroll and issued their checks. (Cerner "Creating a Time Sheet," SPEER_D00001272-1279; Cerner "Time Reporting," SPEER_D00001280-1285; Cerner "Payroll Create Paysheets Work Instructions," SPEER_D00001151-1153; Cerner "Payroll to Calculate Pay Work Instructions," SPEER_D00001154-1155; collectively attached as Exhibit 4, filed under seal).

1

5. Plaintiffs, like all of Defendant's non-exempt employees regardless of job title and location, were subject to Defendant's centralized pay policies and processes for calculating and paying their overtime wages. *See id.*

- **Plaintiffs Fred Speer, Mike McGuirk, and Defendant's Non-Exempt Workforce Paid On a Fluctuating Work Week Basis ("Salary Non-Exempt").**

6. Of its non-exempt associates, at any given time during the last three years, Defendant paid 650-850 employees—including Plaintiffs—on a fluctuating workweek basis ("Salary Non-Exempt Employees"). (Defendant's First Supplemental Objections and Answers to Plaintiff Fred Speer's First Interrogatories, ("Defendant's Interrogatory Answers"), attached as Exh. 5, at No. 10).

7. Plaintiffs, like all of Defendant's Salary Non-Exempt Employees, were promised a fixed salary plus one-half (instead of one-and-one-half) times their regular rate of pay for each hour worked over 40 in a workweek. (Defendant's Interrogatory Answer, Exh. 5, at No. 5; Speer Depo., Exh. 2, at 114:7-17, 116:11-22; McGuirk Depo., Exh. 3, at 52:8-23;  Declaration of Opt-in Plaintiff, Wyatt Thorpe ("Thorpe Decl."), attached as Exh. 6, at ¶¶ 4-5; Declaration of Opt-in Plaintiff, Scott Sexton ("Sexton Decl."), attached as Exh. 7, at ¶¶ 4-5).

8. These Salary Non-Exempt Employees were and are still non-exempt employees, subject to Defendant's centralized pay policies and processes for calculating and paying employees' overtime wages.  (Exh. 4).

9. Defendant calculated and paid all its Salary Non-Exempt Employees across the U.S. pursuant to the same payroll policies and overtime calculations.  (Cerner "When do Salary Non-Exempt (SNE) Associates receive their overtime (OT)?", attached as Exh. 8, filed under seal; Cerner "Salary Non-Exempt Overtime Data Processing Instructions," SPEER_D00001163-1169, attached as Exh. 9, filed under seal).

2

- **Defendant Cerner Corporation**

10. Defendant Cerner Corporation is a healthcare information technology corporation, with its world headquarters located in North Kansas City, Missouri. *See* www.cerner.com/ContactUs/ (last visited April 8, 2015).

11. At all relevant times, Defendant employed Plaintiffs and thousands of other non-exempt employees within the United States to facilitate its business services. And, regardless of each employee's location, Defendant's U.S. Payroll group processes payroll for all non-exempt employees centrally, at their world headquarters. (Defendant's Interrogatory Answers, Exh. 5, at No. 7; Exh. 4).

12. During the relevant time period, Defendant's payroll and time administration process for all its non-exempt employees was carried out by or under the direction of approximately 5 individuals in its U.S. Payroll group: one Director, Payroll; one Manager, Payroll; and three Operations Specialists, Payroll. (Defendant's Interrogatory Answers, Exh. 5, at No. 8).

13. During the relevant time period, Defendant's payroll process for calculating, administering, and issuing payment for non-exempt employees' wages, including overtime, is illustrated in its Payroll Process Flow chart, utilized by Defendant's U.S. Payroll group. (Cerner Payroll Process Flow chart, SPEER_D00001145-1150, Exh. 1; Defendant's Interrogatory Answers, Exh. 5, at No. 7).

**B. Cerner Subjected Plaintiffs and Its Non-Exempt Employees To Uniform, Unlawful Pay Practices.**

- **Late Payment of Overtime (All Non-Exempt Employees).**

1. Defendant's Payroll Process Flow chart for processing U.S. payroll reveals Defendant's systemic practice of paying overtime late. Pursuant to this process, Defendant's

"System Resource Data Gathering" includes instructions to pull overtime hours from the pay period prior (as opposed to from the current pay period) for inclusion in the current pay period's pay checks. (Cerner Payroll Process Flow chart, Exh. 1, p. 1146, at step c.).

2.  Defendant's unlawful late payment of overtime is confirmed in its own HR documents, which notify United States associates that **"Overtime is always one pay period behind."** (Exh. 8).

3.  Defendant's detailed instructions to its U.S. Payroll group for processing payroll also expressly remind them that **"\*\*\*_Overtime is always a pay period behind_\*\*\*"** and direct them to "pull prior pay period weeks" when gathering associates' reported overtime hours. (Exh. 9, at SPEER_D00001163).

4.  Defendant's unlawful late payment of overtime is further confirmed in Plaintiffs' deposition testimony, and in two opt-in plaintiffs' supporting declarations. This testimony confirms that Defendant paid overtime a pay period behind even though its non-exempt employees submit their overtime and straight time hours at the same time, and on the same electronic time record, each week. (Speer Depo., Exh. 2, at 266:12-21, 308:22-309:4, 309:23-310:2; McGuirk Depo., Exh. 3, at 121:2-14, 122:11-124:15; Thorpe Decl., Exh. 6, at ¶¶ 6-7; Sexton Decl., Exh. 7, at ¶¶ 6-7).

5.  Defendant's unlawful late payment of overtime is also reflected throughout Plaintiff Fred Speer's and Plaintiff Mike McGuirk's pay and time records. (Fred Speer Pay & Time Records, ("Speer Pay Records"), attached as Exh. 10, filed under seal; Mike McGuirk Pay & Time Records, ("McGuirk Pay Records"), attached as Exh. 11, filed under seal).

6.  All of Defendant's non-exempt employees who were paid overtime a pay period behind, whether salary non-exempt or hourly non-exempt, were similarly victims of this

systemic, unlawful pay practice. (Plaintiffs' Amended Complaint, (Doc. 39), at ¶¶ 34-40, 50, 55-60, 71; Speer Depo., Exh. 2, at 152:4-13, 192:13-194:10, 227:16-24, 249:9-250:5; McGuirk Depo., Exh. 3, at 121:2-14, 122:11-124:15, 236:10-17, 251:22-252:1).

7.     Plaintiffs seek to represent all of Defendant's non-exempt employees whose overtime, like theirs, was paid a pay period behind. (Plaintiffs' Amended Complaint, (Doc. 39), at ¶¶ 34-40, 50, 55-60; Speer Depo., Exh. 2, at 192:13-194:10; McGuirk Depo., Exh. 3, at 236:10-17, 247:22-248:3, 251:22-252:1).

- **Miscalculated Overtime (All Non-Exempt Employees).**

8.     At least until Plaintiffs filed this lawsuit, Defendant failed to include all additional compensation into non-exempt employees' regular rate of pay when calculating and paying overtime premiums. (Defendant's Interrogatory Answer, Exh. 5, at No. 12; Exh. 9, at SPEER_D00001163).

9.     Prior to this lawsuit, the Payroll Process Flow that Defendant's U.S. Payroll group utilized to calculate overtime did not include a proper component interface to add additional compensation into employees' regular rate of pay before calculating overtime. (Defendant's Interrogatory Answers, Exh. 5, at No. 9; Exh. 1; Exh. 9).

10.    Defendant's failure to include additional compensation into non-exempt employees' regular rates of pay is also supported by Plaintiffs' deposition and declaration testimony. (Speer Depo., Exh. 2, at 177:18-178:8, 268:20-269:22; Sexton Decl., Exh. 7, at ¶¶ 6-7).

11.    Defendant's unlawful miscalculation of overtime is also reflected throughout Plaintiff Fred Speer's and Plaintiff Mike McGuirk's pay and time records. (Speer Pay Records, Exh. 10; McGuirk Pay Records, Exh. 11).

12.     All of Defendant's non-exempt employees who received additional remuneration that was excluded from their overtime calculations, whether salary non-exempt or hourly non-exempt, were similarly victims of this systemic, unlawful pay practice.  (Plaintiffs' Amended Complaint, (Doc. 39), at ¶¶ 41-43, 47, 55, 72; Speer Depo., Exh. 2, at 268:20-269:22).

13.     Plaintiffs seek to represent all non-exempt employees whose overtime was miscalculated due to Defendant's unlawful failure to include additional remuneration. (Plaintiffs' Amended Complaint, (Doc. 39), at ¶¶ 50, 55, 58-60; Speer Depo., Exh. 2, at 192:10-193:9; McGuirk Depo., Exh. 3, at 236:10-237:12, 247:15-24, 252:4-10 )

- **Fluctuating Work Week Violations (Salary Non-Exempt Employees).**

14.     Plaintiffs, like all of Defendant's Salary Non-Exempt Employees, were promised a fixed salary plus one-half (instead of one-and-one-half) times their regular rate of pay for each hour worked over 40 in a workweek.  (Speer Depo., Exh. 2, at 114:7-17, 116:11-22; McGuirk Depo., Exh. 3, at 52:8-23;  Thorpe Decl., Exh. 6, at ¶¶ 4-5; Sexton Decl., Exh. 7, at ¶¶ 4-5).

15.     Plaintiffs, like all Salary Non-Exempt Employees, were expected to, and did, regularly work far in excess of 40 hours each workweek. (Speer Depo., Exh. 2, at 242:5-25, 243:23-245:21, 305:21-307:25; McGuirk Depo., Exh. 3, at 49:5-19, 52:8-23, 80:18-81:3, 88:2-20, 92:14-93:10, 97:3-9, 118:15-120:21, 145:10-18, 166:5-15, 238:6-20;  Thorpe Decl., Exh. 6, at ¶¶ 6-7; Sexton Decl., Exh. 7, at ¶¶ 6-7).

16.     Plaintiffs were not paid a fixed salary.  Instead, they earned varying amounts of additional compensation, including on-call pay and other incentive pay, paid separate from their fixed salary and overtime, to perform other job functions or meet other requirements.  (Speer Depo., Exh. 2, at 166:4-10, 170:19-171:13, 227:16-229:4, 268-269:22; McGuirk Depo., Exh. 3, at 147:19-148:5, 168:4-7;  Sexton Decl., Exh. 6, at ¶ 8).

17.     And, as with all non-exempt employees (discussed *supra* in this section), the additional remuneration Defendant paid for on-call work and other incentive pay was not included in with each employee's regular rate of pay when calculating overtime premiums.  This failure to include all compensation in the regular rate of pay resulted in an underpayment of overtime.   (Speer Depo., Exh. 2, at 166:4-10, 170:19-171:13, 227:16-229:4, 268-269:22; McGuirk Depo., Exh. 3, at 147:19-148:5, 168:4-7;  Sexton Decl., Exh. 7, at ¶ 11).

18.     Plaintiffs seek to represent all of Defendant's non-exempt employees paid on a fluctuating workweek basis because, like Plaintiffs, these individuals were not paid a fixed salary, their overtime was paid at a rate below ½ their regular rate of pay, and their overtime was not paid contemporaneously, resulting in systemic underpayments.   (Plaintiffs' Amended Complaint, (Doc. 39), at ¶¶ 23-27, 40-47, 58-60, 70; Speer Depo., Exh. 2, at 192:10-193:25, 26:24-27:14; McGuirk Depo., Exh. 3, at 236:9-238:20; 247:15-24;  Sexton Decl., Exh. 7, at ¶ 8)..

## II.     THE LENIENT, THRESHOLD FLSA CONDITIONAL CERTIFICATION STANDARD REQUIRES ONLY "SUBTANTIAL ALLEGATIONS."

The FLSA provides for a private right of action to recover damages for violations of the Act's overtime provisions. 29 U.S.C. § 216(b). Since the FLSA is a remedial statute that "has been construed liberally to apply to the furthest reaches consistent with congressional direction," it should be given a broad reading in favor of coverage. *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959). Employers are liable for the amount of unpaid wages, plus an equal amount in liquidated damages, for violations of §§ 206 and 207. 29 U.S.C. § 216(b). Pursuant to § 216(b):

> An action to recover the liability prescribed in [§§ 206 or 207] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

*Id.*

A district court may certify a case as a collective action if members of the class are "similarly situated" or raise similar legal issues regarding coverage, exemption, or nonpayment of wages or benefits. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 168-71 (1989).

### A. The Two-Step Conditional Certification and Notice Process.

A majority of the district courts in the Eighth Circuit use a two-step FLSA conditional certification analysis. *Kautsch v. Premier Communications*, 504 F.Supp.2d 685, 688 (W.D. Mo. 2007). In the first step, the "plaintiff's motion for certification is typically filed at an early stage of the litigation thus requiring a lenient evaluation standard and typically resulting in conditional certification of a representative class." *Id.* at 688-89 (holding that, even though the parties conducted seven months of discovery, the lenient notice standard applies where discovery is not yet complete); *Chapman v. Hy-Vee, Inc.*, No. 10-CV-6128-W-HFS, 2012 WL 1067736, at *2 (W.D. Mo. Mar. 29, 2012) (granting conditional certification and applying lenient, first-tier standard of review because "only a few depositions have been taken and a limited amount of documents exchanged").

This first-stage certification "is considerably less stringent than Rule 23(b)(3) class action standards." *Id.* (citing *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213-14 (5th Cir.1995); *Grayson v. K Mart,* 79 F.3d 1086, 1096 (11th Cir.1996). At this early stage of litigation, the Court does not reach the merits of the plaintiffs' claims. *See id.* (citing *Hoffmann v. Sbarro, Inc.,* 982 F.Supp. 249, 262 (S.D.N.Y.1997). "Once the Court conditionally certifies the class, potential class members are given notice and the opportunity to 'opt-in.'" *Id.* After discovery is completed, the defendant may move to decertify the class "when the Court has much more information and is able to make a more informed decision." *Id.*

## B. The Lenient, First-Tier Standard Requires Only Substantial Allegations, Not Proof That The Class Members Are Actually Similarly Situated.

At this first stage, Plaintiffs' burden is lenient and not onerous. "Plaintiffs can meet [their] burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* at 689. "There is no need to show that the would-be members of the class are <u>actually</u> similarly situated or that they are identical, but the plaintiff must present some evidence to demonstrate the class members are similar in important respects and are subjected to similar policies or circumstances." *Dernovish v. AT&T Operations, Inc.*, 2010 WL 143692, *2 (W.D. Mo. Jan. 12, 2010); *Chapman*, 2012 WL 1067736, at *3 ("plaintiffs need not show that members of the conditionally certified class are *actually* similarly situated, that determination will be made after the close of discovery") (citing *Carden v. Scholastic Book Clubs, Inc.,* 2011 WL 2680769 * 3 (W.D. Mo.)).

Conditional certification "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Kautsch*, 504 F.Supp.2d at 689 (quoting *Davis v. NovaStar Mortgage, Inc.,* 408 F.Supp.2d 811, 815 (W.D. Mo. 2005)). "Typically, district courts will make the determination of whether to conditionally certify a class based solely on the affidavits presented by the plaintiffs." *Huang v. Gateway Hotel Hldgs.*, 248 F.R.D. 225, 227 (E.D. Mo. 2008); *accord Davis*, 408 F.Supp.2d at 817 ("Signed declarations provide appropriate support for motions such as this."). "To impose a strict standard of proof would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' of the FLSA." *Garner v. G.D. Searle Pharm. & Co.*, 802 F.Supp. 418, 422 (M.D. Ala. 1991).

9

The goal of judicial economy also weighs heavily in favor of certification and issuing notice to potential class members. *See Hoffman-LaRoche, Inc.*, 493 U.S. at 170. Collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact." *Id.* Further, a collective action provides plaintiffs the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Id.*

For these reasons, Courts thus routinely grant conditional certification and supervised notice under § 216(b). *See, e.g., Dernovish*, 2010 WL 143692, *2-3 (certifying nation-wide class of call center employees based upon declarations of employees from only three facilities); *Loyd v. Ace Logistics, LLC*, 2008 WL 5211022, at *2-3 (W.D. Mo. Dec. 12, 2008) (certifying class on the basis of one affidavit by plaintiff); *Robertson v. LTS Mgmt. Serv. LLC*, 2008 WL 4559883, at *2 (W.D. Mo. Oct. 9, 2008) (noting certification may be granted on basis of a single plaintiff's affidavit); *Huang*, 248 F.R.D. at 228 (certifying class of waiters, housekeepers, cooks, bartenders, hosts, and kitchen staff); *Kautsch*, 504 F. Supp. 2d at 691 (certifying multi-state, multi-defendant class of field-service technicians); *Fast v. Applebees Int'l, Inc.*, 243 F.R.D. 360 (W.D. Mo. 2007) (certifying nationwide class of bartenders and servers); *Schleipfer v. Mitek Corp.*, 2007 WL 2485007, at *1-2 (E.D. Mo. Aug. 29, 2007) (certifying multi-state class on the basis of a single affidavit by plaintiff); *Davis*, 408 F. Supp. 2d at 813, 818-19 (certifying nationwide, multi-defendant class). The same result is warranted here.

## III. PLAINTIFFS EASILY MEET THE LENIENT, FIRST-TIER STANDARD, AND CONDITIONAL CERTIFICATION IS WARRANTED.

Plaintiffs' Fred Speer and Mike McGuirk meet and exceed the threshold standard for FLSA conditional certification. Plaintiffs' testimony, together with supporting declarations and Defendant's own documents, are more than "substantial allegations" that Plaintiffs and

Defendant's other non-exempt employees "are similar in important respects and are subjected to similar policies or circumstances." *Dernovish*, 2010 WL 143692, at *2.

All of Defendant's non-exempt employees are paid pursuant to Defendant's centralized processes for calculating and paying overtime. (SOF, at ¶¶ A. 3-5, 9, 11, 13). These system-wide processes are illustrated in Defendant's own Payroll Process Flow chart and its U.S. Payroll group's detailed instructions for calculating and processing employees' overtime payments. (SOF, at ¶¶ A. 9, 13). These centralized pay practices give rise to three FLSA classes, warranting conditional certification.

### A. Plaintiffs' Offer Substantial Allegations That They And The Late Payment of Overtime Class Are Similarly Situated.

Plaintiffs seek to represent "all non-exempt persons employed by Defendant in the U.S., at any time during the last three years, whose overtime compensation was not paid on the next regular payday for the period in which the overtime work was performed" ("Late Payment of Overtime Class") (Doc. 39, Plaintiffs' Amended Complaint, ¶ 59).

Plaintiffs allege Defendant violated the FLSA by failing to timely pay overtime to its non-exempt employees. (Doc. 39, Plaintiffs' Amended Complaint, ¶¶ 32-40, 71). Defendant unlawfully failed to pay Plaintiffs and other non-exempt employees their overtime compensation on the next regular payday for the pay period in which the overtime was earned. 29 C.F.R. 778.106. Moreover, the FLSA provides that an employer cannot delay paying overtime for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the overtime amount due, and also provides that in no event can payment be delayed beyond the next payday after such computation of the overtime amount due can be made. 29 C.F.R. 778.106. Plaintiffs pursue this claim on behalf of themselves and the Late Payment of Overtime Class.

Plaintiffs unquestionably offer substantial allegations that they are similarly situated to the Late Payment of Overtime Class. Plaintiffs offer proof—though it is not required—that their own overtime was paid a pay period behind every pay period. (SOF, at ¶¶ B. 4-5). And, Plaintiffs offer deposition and supporting declaration testimony that other non-exempt employees were also paid overtime late due to Defendant's system-wide pay practice. (SOF, at ¶¶ B. 4, 6). Furthermore, Defendant's own documents bolster these allegations, notifying U.S. Associates that **"Overtime is always a pay period behind,"** and including in its Payroll Process Flow chart instructions to "Run query from Analytics of OT Hours for pay Period prior." (SOF, at ¶¶ B. 1-3). This is overwhelming evidence—which is not even required at this stage—of a centralized, unlawful pay practice.

Plaintiffs offer substantial allegations they are similarly situated to all Defendant's non-exempt employees (whether hourly or salary non-exempt) who were paid overtime a pay period behind pursuant to Defendant's centralized payroll processes. This is all that is needed for conditional certification because Plaintiffs and other non-exempt employees "are similar in important respects and are subjected to similar policies or circumstances." *Dernovish*, 2010 WL 143692, at *2.

### B. Plaintiffs' Offer Substantial Allegations That They And The Miscalculated Overtime Class Are Similarly Situated.

Plaintiffs also seek to represent "all non-exempt persons employed by Defendant in the U.S., at any time during the last three years, whose overtime compensation was calculated based upon a "regular rate" of pay that excluded additional remuneration ("Miscalculated Overtime Class") (Doc. 39, Plaintiffs' Amended Complaint, ¶ 59).

Plaintiffs allege that Defendant violated the FLSA by failing to include all required remuneration into their regular rate of pay when calculating their overtime premiums. (Doc. 39,

Plaintiffs' Amended Complaint, ¶¶ 41-43, 66-67, 72). The FLSA requires that all "remuneration" (subject to a few statutory exceptions), not just an employee's base salary, be included when calculating the "regular rate" of pay owed to an employee who works overtime. 29 CFR § 778.107--778.109. But, Defendant failed to include non-discretionary bonuses, non-overtime premium payments, and other wages when calculating Plaintiffs' and other non-exempt employees' "regular rate," and therefore under-calculated their overtime pay.

Plaintiffs again offer substantial allegations that they are similarly situated to the Miscalculated Overtime Class. Plaintiffs offer proof—though it is not required—that their own overtime excluded their on-call pay and wellness bonuses. (SOF, at ¶¶ B. 10-11). And, Plaintiffs offer deposition and supporting declaration testimony that other non-exempt employees received additional compensation that was excluded from their overtime pay due to Defendant's system-wide pay practice. (SOF, at ¶¶ B. 10, 12). And, again, Defendant's own documents and discovery admissions bolster these allegations. Defendant concedes in interrogatory responses that it failed to include all additional compensation into Plaintiffs' regular rate of pay when calculating and paying overtime premiums. (SOF, at ¶¶ B. 8-9). And, prior to Plaintiffs filing this lawsuit, Defendant's Payroll Process Flow utilized by the U.S. Payroll group to calculate overtime did not include a proper component interface to add additional compensation into employees' regular rate of pay before calculating overtime. (SOF, at ¶¶ B. 8-9). Defendant's other U.S. Payroll group documents also describe Defendant's systematic processes for calculating and processing overtime payments, with no instructions to incorporate additional compensation into the regular rate of pay prior to calculating overtime premiums. (SOF, at ¶¶ B. 8-9). Again, this is overwhelming evidence—which is not required at this stage—of a centralized, unlawful pay practice.

Plaintiffs offer "substantial allegations" that they are similarly situated to all Defendant's non-exempt employees (whether hourly or salary non-exempt) who were paid overtime compensation based upon a regular rate of pay which excluded additional compensation. This systemic miscalculation of overtime is the result of Defendant's flawed, centralized pay process. And this suggests that Plaintiffs and the Miscalculated Overtime Class "are similar in important respects and are subjected to similar policies or circumstances," warranting conditional certification. *Dernovish*, 2010 WL 143692, at *2.

### C. Plaintiffs' Offer Substantial Allegations That They And The Fluctuating Work Week Class Are Similarly Situated.

Plaintiffs seek to represent "all non-exempt persons employed by Defendant in the U.S., at any time during the last three years, who were purportedly compensated based on the fluctuating workweek method of pay and who received overtime compensation ("Fluctuating Work Week Class") (Doc. 39, Plaintiffs' Amended Complaint, ¶ 59).[2]

Plaintiffs allege that Defendant failed to comply with the FLSA's requirements for paying non-exempt employees on a fluctuating workweek basis. (Doc. 39, at ¶ 23-27, 35-45). In order for an employer to utilize the Fluctuating Work Week ("FWW") model of pay, it must comply with certain requirements set forth at 29 C.F.R. §778.114. These include paying a "fixed salary" for all hours worked "whether few or many" . . . "whatever their number". 29 C.F.R. §778.114(a). Plaintiffs contend that Defendant's use of the fluctuated workweek method for paying them and other non-exempt employees (e.g., Salary Non-Exempt Employees) violated the

---

[2] While Plaintiffs' Amended Complaint, (Doc. 39, ¶ 59), set forth subclasses within the Fluctuating Work Week ("FWW") Class, this is unnecessary because the "Late Payment of Overtime Class" includes **all employees** whose overtime was not paid on the next regular payday for the period in which the work was performed—wholly subsuming any FWW subclass for late overtime. Similarly, the "Miscalculated Overtime Class" includes **all non-exempt employees** whose overtime failed to include all additional remuneration—wholly subsuming any FWW subclass for miscalculated overtime. Accordingly, Plaintiffs see no reason to certify subclasses at this time.

FLSA because Defendant did not pay a fixed salary. (Doc. 39, at ¶ 23-27). Instead, Defendant paid varying amounts of additional compensation for other job duties and requirements (e.g. on-call work).

Use of the FWW model of pay also requires payment for overtime hours at a rate "not less than one-half [the employee's] regular rate of pay." 29 C.F.R. §778.114(a). However, Plaintiffs contend that Defendant underpaid their, and other FWW employees', overtime by excluding additional remuneration from its calculation of their regular rate of pay, and Defendant therefore failed to pay for overtime work at a "rate not less than one-half [their] regular rate of pay." (Doc. 39, at ¶¶ 45). Additionally, Defendant systematically paid overtime a full pay period late, and thereby failed to contemporaneously pay for overtime at the statutorily required rate. (Doc. 39, at ¶¶ 39-40, 46).

Plaintiffs allege that these systemic, unlawful pay practices invalidate Defendant's use of the FWW method of calculating overtime. (Doc. 39, at ¶ 44). Plaintiffs, therefore, pursue overtime claims on behalf of themselves and the Fluctuating Work Week Class.

Plaintiffs again offer substantial allegations that they are similarly situated to the Fluctuating Work Week Class. Plaintiffs own pay records establish that Defendant paid them on a fluctuating workweek basis—even though they were not paid a fixed salary, their overtime was paid at a rate below ½ their regular rate of pay, and their overtime was not paid contemporaneously, resulting in systemic underpayments. (SOF, at ¶¶ B. 14-18).

Plaintiffs also offer testimony and supporting Opt-in Plaintiffs' declarations, which demonstrate that Defendant's other Salary Non-Exempt employees were similarly paid on a fluctuating work week basis—even though they were not paid a fixed salary, their overtime was

paid at a rate below ½ their regular rate of pay, and their overtime was not paid contemporaneously, resulting in systemic underpayments. (SOF, at ¶¶ B. 14-18).

And, Defendant's own documents and admissions in discovery confirm these substantial allegations that Plaintiffs are similarly situated to the Fluctuating Work Week Class. Defendant concedes that, at any given time during the last three years, it paid 650-850 employees—including Plaintiffs—on a fluctuating workweek basis. (SOF, at ¶ A. 6). These Salary Non-Exempt Employees were and are all subject to Defendant's centralized pay policies and processes for calculating and paying employees' overtime wages. (SOF, at ¶ A. 8). And, Defendant calculated and paid all its Salary Non-Exempt Employees across the U.S. pursuant to the exact same payroll policies and overtime calculations, described in detail in Defendant's U.S. Payroll group's instructions for processing and paying overtime. (SOF, at ¶ A. 9).

Again, Plaintiffs need not prove they are identically or even actually similarly situated to the class members to achieve conditional certification. *Dernovish v. AT&T Operations, Inc*., 2010 WL 143692, *2 (W.D. Mo. Jan. 12, 2010); *Chapman*, 2012 WL 1067736, at *3 ("plaintiffs need not show that members of the conditionally certified class are *actually* similarly situated, that determination will be made after the close of discovery") (citing *Carden v. Scholastic Book Clubs, Inc.,* 2011 WL 2680769 * 3 (W.D. Mo.)). Plaintiffs are only required to offer "substantial allegations," and they more than meet this threshold standard. This Court should, therefore, grant conditional certification of these Notice Classes.

## IV.  THIS COURT SHOULD APPROVE AND DIRECT ISSUANCE OF PLAINTIFFS' PROPOSED NOTICE FORM.

Plaintiffs request this Court approve notice in the form attached as Exhibit 12 to be sent to the following Notice Classes:

(1)     All non-exempt persons employed by Defendant in the U.S., at any time during the last three years, whose overtime compensation was not paid on the next regular payday for the period in which the overtime work was performed **("Late Payment of Overtime Class")**;

(2)     All non-exempt persons employed by Defendant in the U.S., at any time during the last three years, whose overtime compensation was calculated based upon a "regular rate" of pay that excluded additional remuneration **("Miscalculated Overtime Class")**;

(3)     All non-exempt persons employed by Defendant in the U.S., at any time during the last three years, who were purportedly compensated based on the fluctuating workweek method of pay and who received overtime compensation **("Fluctuating Work Week Class"),**

As the Supreme Court recognized in *Hoffman-LaRoche*, the goal of judicial economy weighs heavily in favor of certification and the issuance of notice to potential class members. 493 U.S. at 170. Collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact." *Id.* "The benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action." *Id.* Plaintiffs accordingly request this Court order Defendant to conspicuously post the notice at each of its facilities until the opt-in period closes, and authorize Plaintiffs to disseminate notice to the affected employees at their last known mailing address. *See Dernovish*, 2010 WL 143692, *2-3 (ordering notice be posted in the break rooms at each of defendant's facilities and distributed by mail).

17

In furtherance of issuing the notice, Plaintiffs request this Court order Defendant to produce to Plaintiffs, within 10 days of this Court's Order, a separate computer-readable data file for each Notice Class, containing the employees' names, last-known addresses, job titles and employment locations, employee IDs, and dates of employment. Finally, Plaintiffs request the Court order a 90-day period after the mailing of the Court-authorized notice for those persons receiving notice to post-mark their consent forms to join the case.

## V.  CONCLUSION.

This case bears all the indicia of a FLSA collective action suited for conditional certification. The net effect of Defendant's unlawful payroll process and policies is systemic underpayment of overtime wages. This is the very type of unlawful conduct the FLSA was designed to eliminate through its collective action mechanism.

Plaintiffs, therefore, respectfully request this Court: (1) certify the three Notice Classes to proceed as collective actions; (2) order Defendant to produce to Plaintiffs a separate computer-readable data file for each Notice Class, containing the employees' names, last-known addresses, job titles and employment locations, employee IDs, and dates of employment, within ten (10) days after the Court's Order; (3) direct the issuance of Plaintiffs' proposed notice, attached as Exhibit 12, to all such person; (4) authorize a 90-day period after the mailing of the Court-authorized notice for those persons receiving notice to post-mark their consent forms to join the case; and (5) order Defendant to conspicuously post the notice in the break rooms at each of its facilities employing putative Notice Class members until the opt-in period closes.

Respectfully submitted,

*s/ Tracey F. George*
Brett A. Davis, Mo. Bar 43299
Tracey F. George, Mo. Bar 52361

DAVIS GEORGE MOOK LLC
1600 Genessee, Ste. 328
Kansas City, MO 64102
Tel. (816) 569-2629
Fax (816) 447-3939
Email: brett@dgmlawyers.com
Email: tracey@dgmlawyers.com
Website: www.dgmlawyers.com


Patrick Reavey, MO#47365
Kevin C. Koc, MO#56955
REAVEY LAW LLC
Livestock Exchange Building
1600 Genessee, Suite 303
Kansas City, Missouri 64102
(816) 474-6300  Telephone
(816) 474-6302  Facsimile
patrick@reaveylaw.com
kkoc@reaveylaw.com

ATTORNEYS FOR PLAINTIFF



**CERTIFICATE OF SERVICE**

  I hereby certify that on the 19th day of August 2015, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:


Lori R. Schultz, Esq.
Katherine R. Sinatra, Esq.
Mike Barnett, Esq.
David Brenton Dwerlkotte, Esq.
Amy Crouch, Esq.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: 816.474.6550
Facsimile: 816.421.5547
lschultz@shb.com
ksinatra@shb.com

19

mbarnett@shb.com
dbdwerlkotte@shb.com
amcrouch@shb.com

*s/ Tracey F. George*