**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **FRED SPEER and MIKE McGUIRK** | ) |
| Individually and on behalf of a class of all | ) |
| others similarly situated, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) **CASE NO: 4:14-CV-00204-FJG** |
| | ) |
| **CERNER CORPORATION** | ) |
| | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## CERNER CORPORATION'S SUGGESTIONS IN OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR FLSA CONDITIONAL COLLECTIVE ACTION CERTIFICATION

## INTRODUCTION

Defendant Cerner Corporation ("Cerner") respectfully submits its Suggestions in Opposition to Plaintiffs' Amended Motion for FLSA Conditional Collective Action Certification ("Plaintiffs' Motion," Doc. #97). Former employees Fred Speer and Mike McGuirk ask this Court to certify three classes encompassing *the entirety of Cerner's nonexempt workforce for the past three years.* This case requires denial of conditional certification on numerous grounds.

As a preliminary and fundamental matter, Plaintiffs have not filed written consents required by Section 216(b) of the FLSA in order to become party plaintiffs and, therefore, their claims have not yet commenced. Filing a collective action complaint and being named as a plaintiff does not satisfy this requirement. Without being party plaintiffs, Plaintiffs cannot move for conditional certification. Likewise, the Court cannot conditionally certify a class and find that non-party plaintiffs are representative of and similarly situated to a putative class, nor can it issue notice to putative members and identify non-party plaintiffs as appropriate class representatives. Conditional certification should be denied on this ground alone.

Moreover, because Plaintiffs have not commenced their claims, the statute of limitations bars them from asserting ordinary, two-year FLSA claims. Should Plaintiffs choose to file consents at a later time, they are left with only the possibility of proving the three-year willfulness exception to any FLSA claims they assert—which requires proof that Cerner knew its alleged policies violated the FLSA. Yet Plaintiffs fail even to *mention* willfulness in their Motion, let alone come forward with any evidence in support of such a claim. The Court should look no further and deny conditional certification on this ground as well.

These are not the only unique elements of this case that require denial of conditional certification. Even if Plaintiffs had filed Section 216(b) consent forms and even if they possessed

i

ordinary, two-year claims, each of Plaintiffs' claims alleged on behalf of three overbroad, nationwide classes suffer from the same flaws. Not only do Plaintiffs fail to submit any proof of a single, uniform policy applicable to each class they seek to represent, but Plaintiffs' alleged "policies" *do not violate the FLSA*. Plaintiffs cannot even meet this most basic element of proving a single, uniform policy applied to the respective class that violated the FLSA and resulted in the same injury to Plaintiffs and the class.

The impropriety of conditional certification in this case does not stop there. Plaintiffs allege claims they do not possess on behalf of employees they bear no connection to—claims that are against public policy and harmful to the interests of the current employees they seek to represent. After one and one-half years of litigation and more than two years of solicitation of putative class members, *not one* current employee has filed a written consent to opt in to this action. Further, *only two* of the thousands of *former* non-exempt employees have done so—two former employees who worked on the same small team, in the same role, under the same supervisor, and at the same client site in Columbia, Missouri, as did Plaintiffs.

Plaintiffs wrongly try to rely on a "lenient standard" for conditional certification and assume it gives them a free pass. But even the lenient standard requires that Plaintiffs submit sufficient proof of a uniform policy applied to Plaintiffs and the putative class that violates the FLSA and resulted in the same class-wide injury. Plaintiffs have not done so. Moreover, Plaintiffs must concede that a heightened standard is required here. Not only has this case been pending since March 2014, during which substantial discovery has occurred, but Plaintiffs rely on that discovery—their deposition testimony, Cerner's Answers to Interrogatories, and documents produced by Cerner in response to Plaintiffs' discovery requests—in support of their Motion. The Court must therefore consider both parties' proof in assessing conditional

ii

certification. But the "proof" that Plaintiffs submit is not proof at all. It is conclusory and hypothetical, based largely on Plaintiffs' unfounded, unilateral interpretation of documents and circumstances they know nothing about. Plaintiffs inappropriately extrapolate their own circumstances to thousands of employees about whom they have no personal knowledge. Plaintiffs' incorrect assumptions and unfounded extrapolations are not a legitimate basis to canvass the country and Cerner's workplace with notice of an unsustainable mass action.

Finally, even if Plaintiffs' conclusory opinions could operate as "proof" of a "policy" that violates the FLSA, far from promoting judicial economy, certification of any of Plaintiffs' proposed classes would require the Court to engage in multiple individualized analyses of different legal and factual issues. But Plaintiffs want the Court to do just that—certify Cerner's entire nonexempt workforce, and later perform an extensive analysis, for each class member, to determine whether an FLSA violation and injury occurred.

For all of these reasons, denial of Plaintiffs' Motion is warranted.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... i

STATEMENT OF RELEVANT FACTS ................................................................... 1

ARGUMENT .............................................................................................................. 7

I.      Conditional Certification Cannot be Granted Because Plaintiffs have not Filed Written Consents and are Not Party Plaintiffs to any Collective Action Claim ................. 7

II.      Plaintiffs are Required to, But Cannot, Meet a Heightened Burden of Proof ................... 9

       A.    The Court Should Analyze the Evidence ................................................. 9
       B.    Plaintiffs' "Evidence" is Inadmissible ................................................... 11

III.     Plaintiffs' Two-Year Ordinary Claims Are Time-Barred, Yet They Present No Evidence of Any Willful Violation ..................................................... 12

IV.     Even if Plaintiffs Had Ordinary, Two-Year Claims, None of Their Three Proposed Classes Can Be Conditionally Certified ................................. 14

       A.    The "Miscalculated Overtime Class" Cannot Be Conditionally Certified ........... 15
             1.    No FLSA Violation ....................................................................... 15

             2.    No Evidence of a Common Policy or Plan ................................. 18

             3.    No Evidence that Plaintiffs Are Similarly Situated to Other Putative Class Members ........................................................................... 19

       B.    The "Fluctuating Workweek Class" Cannot Be Conditionally Certified ............. 21
             1.    No FLSA Violation ....................................................................... 21

             2.    No Evidence of a Common Policy or Plan ................................. 21

             3.    No Evidence that Plaintiffs are Similarly Situated to Other Putative Class Members ........................................................................... 22

       C.    The "Late Payment of Overtime Class" Cannot Be Conditionally Certified ........ 23
             1.    No FLSA Violation ....................................................................... 23

             2.    No Evidence that Plaintiffs are Similarly Situated to Other Putative Class Members ........................................................................... 25

V.      Class Certification is Inappropriate Because Plaintiffs Cannot Demonstrate Sufficient Interest in the Lawsuit ........................................................ 27

VI.     Plaintiffs' Proposed Notice is Inadequate ................................................... 29

CONCLUSION ......................................................................................................... 30

iv

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acosta v. Tyson Foods, Inc.*,
  No. 14-1582, 2015 WL 5023643 (8th Cir. Aug. 26, 2015) .................................................8, 13

*Augustyniak v. Lowe's Home Ctr., LLC*,
  No. 14-CV-00488-JJM, 2015 WL 1964382 (W.D.N.Y. May 1, 2015)...................................14

*Boyle v. Barber & Sons, Co.*,
  No. 03-0574-CV-W-FJG, 2004 WL 5897946 (W.D. Mo. May 21, 2004).............................15

*Brown v. Money Tree Mortg., Inc.*,
  222 F.R.D. 676 (D. Kan. 2004).............................................................................................30

*Butcher v. Delta Mem. Hosp.*,
  No. 5:12-cv-00241-SWW, 2013 WL 1668998 (E.D. Ark. Apr. 17, 2013) ...........................29

*Cahill v. City of New Brunswick*,
  99 F.Supp.2d 464 (D. N.J. 2000) ..........................................................................................13

*Cox. v. Brookshire*,
  919 F.2d 354 (5th Cir. 1990) .................................................................................................14

*D'Anna v. M/A Com, Inc.*,
  903 F. Supp. 889 (D. Md. 1995)............................................................................................29

*East Texas Motor Freight Systs., Inc. v. Rodriguez*,
  431 U.S. 395 (1977)...............................................................................................................21

*Freeman v. Wal-Mart Stores, Inc.*,
  256 F. Supp. 2d 941 (W.D. Ark. 2003)............................................................................10, 15

*Frye v. Baptist Mem. Hosp., Inc.*,
  495 F. App'x 669 (6th Cir. 2012) ............................................................................................9

*Gomez v. Tyson Foods, Inc.*,
  No. 13-3500, 2015 WL 5023630 (8th Cir. Aug. 26, 2015) ......................................................8

*Harkins v. Riverboat Servs., Inc.*,
  385 F.3d 1099 (7th Cir. 2004) .................................................................................................9

*Johnson v. VCG Holding Corp.*,
  802 F. Supp. 2d 227 (D. Me. 2011) .......................................................................................29

*Jost v. Commonwealth Land Title Ins. Co.*,
  No. 4:08CV734 CDP, 2009 WL 211943 (E.D. Mo. Jan. 27, 2009) .......................................11

v

*Kautsch v. Premier Commc'ns,*
    504 F. Supp. 2d 685 (W.D. Mo. 2007) ...........................................................................10, 15

*Lalli v. Gen. Nutrition Ctrs., Inc.,*
    85 F. Supp. 3d 560, 562-563 (D. Mass. 2015)...................................................................22

*Lindsay Transmission LLC v. Office Depot, Inc.,*
    No. 4:12-CV-221, 2013 WL 275568 (E.D. Mo. Jan. 24, 2013) .............................................18

*McClean v. Health Sys., Inc.,*
    No. 11-03037-CV-S-DGK, 2011 WL 6153091 (W.D. Mo. Dec. 12, 2011) ...........................11

*McLaughlin v. Richland Shoe Co.,*
    486 U.S. 128 (1988)........................................................................................................13, 14

*O'Brien v. Town of Agawam,*
    350 F.3d 279 (1st Cir. 2003)..................................................................................................25

*Parker v. Rowland Express, Inc.,*
    492 F. Supp. 2d 1159 (D. Minn. 2007) ..................................................................................29

*Salazar v Agriprocessor, Inc.,*
    No. 07-CV-1006-LRR, 2008 WL 782803 (N.D. Iowa Mar. 17, 2008) ..................................10

*Saleen v. Waste Mgmt., Inc.,*
    649 F. Supp. 2d 937 (D. Minn. 2009) ..............................................................................11, 10

*Severtson v. Phillips Beverage Co.,*
    137 F.R.D. 264 (D. Minn. 1991)............................................................................................28

*Stubbs v. McDonald's Corp.,*
    227 F.R.D. 661 (D. Kan. 2004)..............................................................................................21

*Taylor v. Bear Commc'n,*
    LLC, No. 4:12–CV–01261–BCW, 2013 WL 3270971 (W.D. Mo. June 27, 2013)....11, 12, 19

*Wacker v. Personal Touch Home Care, Inc.,*
    No. 4:08CV93 CDP, 2008 WL 4838146 (E.D. Mo. Nov. 6, 2008) ...........................10, 11, 29

*Walling v. Harnischfeger,*
    325 U.S. 427 (1945)......................................................................................................24, 25

*White v. Osmose, Inc.,*
    204 F. Supp. 2d 1309 (M.D. Ala. 2002) ................................................................................28

*Wirtz v. Harrigill,*
    214 F. Supp. 813 (S.D. Miss. 1963), aff'd 328 F.2d 963 (5th Cir. 1964)...............................26

vi

**STATUTES**

29 U.S.C. § 207(a)(2) ........................................................................................20

29 U.S.C. § 207(e) ...............................................................................16, 18, 20

29 U.S.C. § 207(e)(1-8) ............................................................................16, 20

29 U.S.C. § 207(e)(2) ........................................................................................17

29 U.S.C. § 213 ..................................................................................................16

29 U.S.C. § 216(b) ...............................................................................................8

29 U.S.C. § 255(a) .............................................................................................13

29 U.S.C. § 256 ....................................................................................................8

**OTHER AUTHORITIES**

29 C.F.R. § 778.106 ..........................................................................................25

FED. R. EVID. 602, 701 ......................................................................................12

vii

## STATEMENT OF RELEVANT FACTS

### Cerner

1.      Cerner's greater than 16,500 U.S.-based employees create, sell, implement, support, and manage innovative clinical, financial, and knowledge software solutions and help client organizations of every size increase patient safety and improve efficiency in delivery of healthcare. (Declaration of Stephanie Roberts, ¶ 4 (dated October 6, 2015) (attached as Ex. A)).

2.      Cerner employs associates in 48 states and the District of Columbia and in settings ranging from office complexes to trauma centers. (*Id.* at ¶ 6).

3.      Each of Cerner's more than 16,500 U.S.-based employees works on countless small teams within one of approximately 1,350 Departments, 515 Business Units, 110 Organizations, and within one of 21 Organization Units. (*Id.* at ¶ 7).

4.      All Cerner employees are classified into one of three distinct groups: (1) salaried exempt; (2) hourly nonexempt ("hourly"); or (3) salaried nonexempt ("SNE"). (Declaration of Jessie Richardson, at ¶ 2 (Dated October 6, 2015) (attached as Exhibit B)).

5.      As of February 2015, Cerner employed SNE employees in greater than 120 different business units and in approximately 18 states across the country and employed hourly nonexempt employees in greater than 200 different business units and in approximately 32 states. (Ex. A, Roberts Dec., at ¶ 9).

6.      Cerner imposes a deadline of 11:59 p.m. on Saturday for the submission of time, and the pay period closes immediately after that deadline. (Ex. B., Richardson Dec. at ¶¶ 8-9).

7.      Cerner operates on a bi-weekly payroll schedule and has established its payday as the Friday following the close of the two-week pay period. (*Id.* at ¶ 11).

1

8.     To be included in the Friday paycheck, all pay amounts must be calculated and reconciled and all payroll information must be submitted to the bank with payroll instructions by close of business Tuesday—two business days after the close of the pay period. (*Id.* at ¶ 13).

9.     This quick turnaround requires a regimented and comprehensive two-week payroll flow process, which began during Plaintiffs' employment with the pulling of all payroll time entry data on Sunday, the first day of the next payroll period. (*Id.* at ¶ 12).

10.     As a result of the process required to compute and process Plaintiffs' overtime pay based on their timesheet data, the regular pay day for Plaintiffs' receipt of overtime pay, if earned, was the Friday after the close of the subsequent pay period. (*Id.* at ¶¶ 12-20).

11.     Cerner set such a pay schedule so as to pay Plaintiffs their full salary—all or a majority of their pay—on the Friday immediately following the close of the pay period, within five days of the close of the pay period, rather than lengthening the period in which they would regularly receive their salary in order to pay them the salary and any overtime that may have been worked within the same paycheck. (*Id.* at ¶¶ 12-13, 17-18).

12.     Plaintiffs received their full salary whether or not they submitted a timesheet by the deadline, or at all, because as SNE employees they were guaranteed their full salary every week regardless of the hours they worked, including weeks where no work was performed at all. (*Id.* at ¶¶ 6, 14-16; Ex. A, Roberts Dec., at Exs. 1-2).

13.     If Plaintiffs recorded overtime hours on their timesheets in a workweek, Cerner was required to determine Plaintiffs' "regular rate" of pay for each week in order to determine the proper amount of Plaintiffs' overtime compensation. (Ex. B., Richardson Dec., at ¶ 17).

14.     Since at least January 1, 2011, Cerner has included certain forms of pay within the regular rate calculation for its nonexempt employees. (*Id.* at ¶ 19).

2

15.     McGuirk contends that an individual told him as part of his orientation that employees "could still submit [their time] by Monday or Tuesday. Usually Monday because by Tuesday they may be screaming at you to fill it out so they can do the payroll on time." (Deposition of Michael ("McGuirk Dep."), at p. 100:3-14 (Feb. 6, 2015) attached as Ex. D).

16.     Speer contends that he believed, based on what he was told by his manager, that he was "allowed to submit [time] essentially up until Tuesday at noon." (Ex. C, Speer Dep., at pp. 219:5-220:25).

17.     The "Payroll Process Flow" document attached to Plaintiffs' Motion (Ex. 1) is a high level overview of how Cerner's payroll system operates and is maintained as reference material for internal compliance. (Ex. B, Richardson Dec., at ¶ 22).

18.     The Payroll Process Flow document does not include every step done in Cerner's bi-weekly payroll process, and not all of the steps listed in the Payroll Process Flow document are completed as part of Cerner's bi-weekly payroll process. (*Id.* at ¶ 23).

19.     Not all of the steps listed in the Payroll Process Flow document apply to all of Cerner's nonexempt or SNE employees. (*Id.* at ¶ 23).

20.     The Payroll Process Flow document does not state or describe any calculations or describe how any individual employee's pay is calculated. (*Id.* at ¶ 24).

21.     Speer testified his understanding of the "Cerner process flow for calculating payroll" is "based on [his] review and understanding of the document." (Ex. C, Speer Dep., at pp. 323:1-9).

22.     Speer testified that he had not read through the Payroll Process flow document (Ex. C, Speer Dep., at pp. 320:20-321:4) and that he had never discussed that document with anyone at Cerner. (Ex. C, Speer Dep., at pp. 322:19-323:19).

3

**Plaintiffs Speer and McGuirk**

23.     Plaintiffs Frederic Speer and Michael McGuirk were classified as SNE employees. (First Am. Compl. [Doc. #39], ¶¶ 21, 23).

24.     Plaintiffs worked at the Tiger Institute in Columbia, Missouri. (Ex. C, Speer Dep., pp. 67:14-67:20; Ex. D, McGuirk Dep., 30:18-20).

25.     Plaintiffs worked on the same team, which they refer to as the "workstation team" or "device team." (Ex. C, Speer Dep., pp. 67:14-67:20, 70:9-23).

26.     The team is part of the Cerner department known as *ITWorks*® Tech Delivery Services-MU. (Ex. C, Speer Dep., at pp. 191:13-192:9).

27.     This department operated within the business unit "Tiger Institute," which is a single *ITWorks* client site at the University of Missouri hospital in Columbia, Missouri. (*Id.*).

28.     Speer worked for Cerner from September 2011 to December 2012 as a Service Center Analyst. (Speer Time Records, Plaintiffs' Motion [Doc. #97], Ex. 10).

29.     Speer's Offer Letter stated that he would "be compensated as a nonexempt associate on a fixed salary for fluctuating hours basis. Thus, you will receive your base salary for whatever hours you work in a workweek, and you will receive extra compensation, in addition to such salary, for all authorized overtime hours worked at a rate of one-half your regular rate of hourly pay. Your regular rate of hourly pay may vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week." (Ex. A, Roberts Dec., at Ex. 1).

30.     Speer received his base salary every week throughout his employment regardless of the number of hours worked. (Speer Time Records, Plaintiffs' Motion [Doc. #97], Ex. 10; Ex. C, Speer Dep., at pp. 248:24-249:1).

4

31.     During the final 37 weeks Speer worked at Cerner (pay end dates from April 14, 2012), Speer did not comply with Cerner's time submission policy and submitted his time anywhere from 1 to 3 days late 18 out of the 37 weeks. (Speer Time Records, Plaintiffs' Motion [Doc. #97], Ex. 10 at pp. 30-66).

32.     Speer's last day of employment at Cerner was December 21, 2012. (*Id.* at p. 66; Ex. A, Roberts Dec., at. ¶ 10).

33.     Speer began researching potential FLSA claims in mid to late 2013, after he consulted with an attorney. (Ex. C, Speer Dep., at pp. 173:23-174:6).

34.     Speer has contacted at least ten individuals, all of whom worked at the Tiger Institute, about opting into this lawsuit and has suggested some contact his attorney. (*Id.* at pp. 16:16-21; 19:18-24; 31:21-32:4; 252:17-253:12).

35.     Speer never had a conversation about "compensation" with anyone who was not on his team. (*Id.* at pp. 146:2-5; 190:3-6).

36.     Speer has no knowledge regarding pay practices outside his team, including on the following topics: (a) whether any Cerner employee received types of pay besides those received by Speer; (b) whether all nonexempt employees received additional compensation; (c) whether any type of pay besides on-call pay and the wellness incentive were excluded from the calculation of Cerner employees' regular rate; (d) how Cerner employees were compensated after the date of his resignation in December 2012; or (e) whether any employees besides clinical engineers at the Tiger Institute were compensated on an hourly basis. (*Id.* at pp. 180:24-181:8, 229:5-230:13; 199:4-9; 232:16-21; 92:6-16, 99:1-22; 149:6-22, 150:21-25).

37.     McGuirk worked for Cerner from April 2010 to March 2013 as a Service Center Analyst. (McGuirk Time Records, Plaintiffs' Motion [Doc. #97], Ex. 11).

38.     McGuirk's Offer Letter stated that he would "be compensated as a nonexempt associate on a fixed salary for fluctuating hours basis. Thus, *you will receive your base salary for whatever hours you work in a workweek,* and you will receive extra compensation, in addition to such salary, for all authorized overtime hours worked at a rate of one-half your regular rate of hourly pay. Your regular rate of hourly pay may vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week." (Ex. A, Roberts Dec., at Ex. 2).

39.     McGuirk received his base salary every week regardless of the number of hours worked. (McGuirk Time Records, Plaintiffs' Motion [Doc. #97], Ex. 11).

40.     McGuirk's last day of employment was March 8, 2013. (Ex. D, McGuirk Dep., at p. 11:11-23; Ex. A, Roberts Dec., at. ¶ 12).

41.     McGuirk has no knowledge "about Cerner's pay practices that were not applicable to" him (Ex. D, McGuirk Dep., at p. 167:17-20) or on the following topics, among others: (a) whether the other members of his team were compensated pursuant to the fluctuating workweek; (b) whether any members of his team received any type of additional pay that he did not receive; (c) whether "anybody received a bonus . . . ."; (d) anything about how his team was compensated after he left during March 2013; or (e) when hourly employees received their overtime or whether hourly employees received "any additional compensation from Cerner[.]" (*Id.* at pp. 148:14-149:8; 154:1-5; 168:8-13; 154:6-9; 259:9-16).

### The Opt-In Plaintiffs

42.     Scott Sexton is an opt-in plaintiff who filed his consent to join this action on March 6, 2015. (Sexton Dec., Plaintiffs' Motion [Doc. #97], Exhibit 7).

43.     Sexton was a salaried nonexempt "Service Center Analyst" at the Tiger Institute from November 2012 to June 2014. (*Id*. at ¶ 2).

6

44.     Cerner employed Sexton in the same role, in the same business unit, and for the same managers, as Speer and McGuirk, at the Tiger Institute in Columbia, Missouri. (Ex. A, Roberts Dec., at ¶¶ 15, 17).

45.     Sexton's Declaration states that he "received additional remuneration for on-call work" that was not included when calculating his regular rate. (Sexton Dec., at ¶¶ 8, 11).

46.     Wyatt Thorpe is an opt-in plaintiff who filed a consent to join this action on March 5, 2015. (Thorpe Dec., Plaintiffs' Motion [Doc. #97], Exhibit 6).

47.     Thorpe was a salaried nonexempt "Service Center Analyst" from January 2011 to June 2012. (Thorpe Dec. at ¶ 2; Ex. A, at ¶¶ 16-17).

48.     From June 2012, Thorpe was a salaried exempt employee. (Ex. A, at ¶ 16).

49.     Cerner employed Thorpe in the same role, in the same business unit, and for the same managers, as Speer and McGuirk, at the Tiger Institute in Columbia, Missouri. (*Id.* at ¶ 17).

50.     Thorpe's Declaration does not state that he received any additional compensation other than his salary and overtime pay. (*See* Thorpe Dec).

## ARGUMENT

**I.     Conditional Certification Cannot be Granted Because Plaintiffs have not Filed Written Consents and are Not Party Plaintiffs to any Collective Action Claim**

Plaintiffs brought this collective action "pursuant to section 16 of the FLSA, 29 U.S.C. § 216(b) . . ." (Doc. #39, ¶57). 29 U.S.C. §216(b) is clear and unambiguous: "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Section 256 provides that a collective action under the FLSA "shall be considered to be commenced" by an individual claimant:

> **(a) on the date when the complaint is filed**, *if* he is specifically named as a party plaintiff in the complaint and **his written consent**

7

> **to become a party plaintiff is filed on such date** in the court in which the action is brought; or
>
> **(b) if such written consent was not so filed** or if his name did not so appear—**on the subsequent date on which such written consent is filed in the court in which the action was commenced.**

29 U.S.C. § 256 (emphasis added). To date, because they have not filed their written consents, Plaintiffs have not commenced their collective action claims against Cerner.

Eighth Circuit caselaw is also clear that a named plaintiff to an FLSA collective action, like all other employees covered by the statute, must file a written consent to become a party plaintiff. *See Acosta v. Tyson Foods, Inc.*, No. 14-1582, 2015 WL 5023643, at *4-6 (8th Cir. Aug. 26, 2015) (requiring dismissal of plaintiff's claim where plaintiffs brought claims "by themselves and on behalf of other similarly situated individuals" as a collective action but failed to file a written consent prior to the expiration of statute of limitations); *see also Gomez v. Tyson Foods, Inc.*, No. 13-3500, 2015 WL 5023630, at *2 (8th Cir. Aug. 26, 2015) (same).

Neither filing a collective action complaint nor being named in such a complaint are of any consequence—a Section 216(b) written consent must nonetheless be filed:

> The statute is unambiguous: if you haven't given your written consent to join the suit, or if you have but it hasn't been filed with the court, you're not a party. It makes no difference that you are named in the complaint, for you might have been named without your consent. The rule requiring written, filed consents is important because a party is bound by whatever judgment is eventually entered in the case . . . . We are inclined to interpret the statute literally. No appellate decision does otherwise.

*Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004); *see also Frye v. Baptist Mem. Hosp., Inc.*, 495 F. App'x 669, 675 (6th Cir. 2012).

Because they have not filed written consents, Plaintiffs are neither party plaintiffs to any collective claim in this case, nor are Plaintiffs' FLSA claims considered "commenced" as a

8

matter of law. Plaintiffs therefore had no ability to move for conditional certification, and their motion should accordingly be denied. Cerner should not be compelled to respond to Plaintiffs' Motion, assume Plaintiffs will file their written consents at some unknown point in the future, and assume what claims Plaintiffs will still possess at that time.

More importantly, this Court cannot (1) conditionally certify a class in response to a motion filed by two individuals who are not party plaintiffs and whose FLSA claims have not "commenced" as a matter of law, (2) find that two non-party plaintiffs are similarly situated to other members of the classes they may seek to represent in the future, or (3) issue notice to putative class members identifying non-party plaintiffs as the representative plaintiffs designated to pursue class members' claims and make decisions on their behalf, as Plaintiffs suggest (Doc. #97, Ex. 12). If Plaintiffs later file written consents, Cerner respectfully requests that it be afforded the opportunity to oppose conditional certification at that time.

## II.     Plaintiffs are Required to, But Cannot, Meet a Heightened Burden of Proof

### A.     The Court Should Analyze the Evidence

If the Court were to consider Plaintiffs' Motion now, it should use a heightened burden of proof. In some FLSA cases, plaintiffs can meet their burden "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007) (citation omitted).[1] However, Plaintiffs cannot even meet the most basic elements of proving, for each claim, a single, uniform policy applied to the respective class that violated the FLSA and resulted in the same injury to Plaintiffs and the putative class

---

[1] Despite this lenient burden, many district courts within the Eighth Circuit have rejected conditional certification. *See Saleen*, 649 F. Supp. 2d at 942-43; *Wacker*, 2008 WL 4838146, at *4; *Salazar v Agriprocessor, Inc.*, No. 07-CV-1006-LRR, 2008 WL 782803, at *6-7 (N.D. Iowa Mar. 17, 2008); *Young*, 503 F. Supp. 2d at 1229; *Freeman* 256 F. Supp. 2d at 944.

9

member. And Plaintiffs must concede that a heightened standard is required here, considering they attached evidence to their Motion.

This is not a case where Plaintiffs sought conditional certification at the outset of the litigation. This case has been pending for more than 18 months, during which Cerner took the depositions of both named Plaintiffs, responded to extensive discovery, and produced many documents, as evidenced by the attachments to Plaintiffs' Motion upon which they purport to rely (although erroneously). (Doc. #97, Exhibits). Cerner also prepared its corporate representative for her deposition in February 2015 at Plaintiffs' request; however, Plaintiffs cancelled the deposition with three business days' notice. Not only has substantial discovery occurred, but Plaintiffs rely almost exclusively on that discovery—their deposition testimony, Cerner's Answers to Interrogatories, and documents produced by Cerner in response to Plaintiffs' discovery requests—in support of their Motion.

Where there has been opportunity for discovery, and plaintiffs rely on evidence in support of their motion, courts apply a more restrictive standard. *See, e.g.*, *McClean v. Health Sys., Inc.*, No. 11-03037-CV-S-DGK, 2011 WL 6153091, at *4 (W.D. Mo. Dec. 12, 2011) (comparing "Plaintiffs' allegations set forth in their Complaint with the factual record assembled through discovery to determine whether Plaintiffs have made sufficient showing beyond their original allegations") (internal quotation omitted). As stated by the *McClean* Court, "[t]he Court cannot close its eyes to the amount of discovery already performed in this action . . . ." and inequitably allow the plaintiff to benefit from the lenient standard. *Id*. Rather, the evidence presented by both sides should be assessed. *See Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d. 937, 940 (D. Minn. 2009); *Wacker v. Personal Touch Home Care, Inc.*, No. 4:08CV93 CDP, 2008 WL 4838146, at *4 (E.D. Mo. Nov. 6, 2008). Looking at the evidence presented here,

10

Plaintiffs' Motion must be denied. Not only does Plaintiffs' "evidence" fall short of demonstrating that certification is appropriate, it is likewise inadmissible.

### B. Plaintiffs' "Evidence" is Inadmissible

Evidence submitted in support of conditional certification, including affidavits and other testimony, must be admissible. *E.g., Taylor v. Bear Commc'n,* LLC, No. 4:12–CV–01261–BCW, 2013 WL 3270971, at *2 (W.D. Mo. June 27, 2013) (unsupported assertions or those not based on personal knowledge will not show that plaintiffs are similarly situated for conditional certification); *Jost v. Commonwealth Land Title Ins. Co.*, No. 4:08CV734 CDP, 2009 WL 211943, at *3 (E.D. Mo. Jan. 27, 2009) (affidavits submitted in support of conditional certification are subject to similar standards as those submitted for summary judgment).

Plaintiffs' case hangs on three conclusory allegations:

1.  "All of Defendant's nonexempt employees who received additional remuneration that was excluded from their overtime calculations, whether salary or nonexempt or hourly nonexempt, were similarly victims of this systemic, unlawful pay practice." (Doc. #97 at SOF B12) (the "Miscalculated Overtime class").

2.  "And, as with all nonexempt employees (discussed *supra* in this section), the additional remuneration Defendant paid for on-call work and other incentive pay was not included in with each [fluctuating workweek] employee's regular rate of pay when calculating overtime premiums. This failure to include all compensation in the regular rate of pay resulted in underpayment of overtime." (*Id.* at SOF B17) (the "Fluctuating Workweek" class).

3.  "All of Defendant's nonexempt employees who were paid overtime a pay period behind, whether salary nonexempt or hourly nonexempt, were similarly victims of this systematic, unlawful pay practice." (*Id.* at SOF B6) (the "Late Payment of Overtime" class).

In support, Plaintiffs exclusively cite their Amended Complaint and deposition testimony. (*Id.* at SOF B6, B12, B17). Yet, at their depositions, both Plaintiffs candidly admitted they have no knowledge of pay practices outside their own team. (SOF ¶¶ 35-36, 41). Because Plaintiffs'

testimony is not based on personal knowledge, it is inadmissible and cannot support conditional certification. *See Taylor*, 2013 WL 3270971 at *2.

Plaintiffs also highlight limited Cerner documents and rely on Plaintiffs' own testimony or counsel's arguments to interpret them. (Doc. #97). But Plaintiffs cannot (1) lay the foundation, or (2) explain how these documents support their conclusory assertions. *See* FED. R. EVID. 602, 701. Plaintiffs' unsupported interpretations of Cerner's documents are insufficient as a matter of law to support their Motion. *See id*. Stripped of its reliance on this and other inadmissible evidence, Plaintiffs' Motion is supported only by hypotheses and should be denied.

### III. Plaintiffs' Two-Year Ordinary FLSA Claims Are Time-Barred, Yet They Present No Evidence of Any Willful Violation

This case is unusual in several respects. Not only have the two named Plaintiffs not filed written consents, but the FLSA statute of limitations on their two-year, ordinary claims has run. Should Plaintiffs choose to file consents and become party plaintiffs at a later time, they are left with only the possibility of asserting and proving the three-year willfulness exception to any FLSA claim. But Plaintiffs come nowhere close to proving that Cerner willfully violated the law and knew its alleged policies violated the FLSA. Indeed, willfulness is not even *mentioned* in Plaintiffs' Motion. Where Plaintiffs fail to come forward with any evidence of an FLSA violation, Plaintiffs' Motion should be denied in its entirety.

"Ordinary violations of the FLSA are subject to the general 2-year statute of limitations" running from the time of claim accrual. *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 130 (1988). The FLSA includes an exception for willful conduct that extends the statutory period to three years from the date of claim accrual. 29 U.S.C. § 255(a). Because Plaintiffs have not filed their written consents, the statute of limitations on their claims continues to run. *See Acosta*, 2015 WL 5023643, at *4-6 (requiring dismissal of plaintiff's claim where plaintiff filed claim as

12

a collective action and failed to file a written consent prior to expiration of statute of limitations).[2] Speer's last day of employment at Cerner was December 21, 2012 (SOF ¶ 32), and his two-year claim accordingly expired in December 2014. McGuirk's last day of employment at Cerner was on March 8, 2013 (SOF ¶ 40), and his two-year claim accordingly expired in March 2015. Without a two-year, ordinary claim to assert, Plaintiffs' Motion should be denied absent proof that Cerner willfully violated the FLSA.

The Supreme Court has "draw[n] a significant distinction between ordinary violations and willful violations," requiring plaintiffs claiming the latter to prove that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at 133. Plaintiffs make only thread-bare allegations of willfulness in their Complaint (Doc. #39, ¶ 73), and *do not raise the issue at all* in their Motion. They certainly offer no evidence that would suggest any willful violation committed by Cerner. An employer's "actions will only be deemed willful if they are proved so—and no presumption may circumvent the patent willfulness requirement explicit in § 255." *Cox. v. Brookshire*, 919 F.2d 354, 356 (5th Cir. 1990) (rejecting plaintiff's argument the court "adopt a presumption" that "defendant intended the consequences of its deliberate acts").

In *Augustyniak v. Lowe's Home Ctr., LLC*, No. 14-CV-00488-JJM, 2015 WL 1964382, at *5 (W.D.N.Y. May 1, 2015), the court denied conditional certification noting among other things that discovery, even when construed in plaintiff's favor, showed no basis for a willfulness claim under the FLSA. The court further noted it would give "no weight whatsoever to plaintiffs'

---

[2] *See Cahill v. City of New Brunswick*, 99 F.Supp.2d 464, 479 (D. N.J. 2000) ("Until the non-named plaintiff officers file the prerequisite written consents with this court, they are not considered joined to a collective action and the statute of limitations on their claims is not tolled."). Plaintiffs' claims are certainly not subject to tolling under the Court's Orders tolling the statute of limitations for any *potential opt-in plaintiffs* due to a discovery stay—and extending from September 23, 2015, to October 7, 2015. (*See* Doc. #100). Regardless, Plaintiffs' two-year statute of limitations would have run.

13

allegation" that defendant's violation of the FLSA was willful. *Id*. Here, Plaintiffs failed even to argue willfulness in their Motion, much less come forward with evidence in support. Because Plaintiffs may only assert a willfulness claim, and have no ordinary claim, Plaintiffs' Motion should be denied in its entirety. At the very least, Plaintiffs certainly are not similarly situated to other members of the purported classes who still have two-year, ordinary claims remaining. *See id.* at *5.

**IV.  Even if Plaintiffs Had Ordinary, Two-Year Claims, None of Their Three Proposed Classes Can Be Conditionally Certified**

Assuming Plaintiffs could overcome their failure to file written consents and their failure to allege or demonstrate a willful FLSA violation, and further assuming Plaintiffs could somehow assert an ordinary, two-year claim, their Motion still must be denied for multiple reasons. This Court may only conditionally certify an ordinary, two-year class if it determines that the Plaintiffs and members of the putative classes were together "victims of a common policy or plan that violated the law." *E.g., Kautsch*, 504 F. Supp. 2d at 689. It is the Court's responsibility to make a preliminary determination that the representative Plaintiffs are similarly situated to the proposed class and to evaluate the management of a proposed collective action. *E.g., Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (rejecting argument that "it is inappropriate to engage in . . . a detailed analysis at this stage" and finding "[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.").

Similar to the plaintiffs in *Freeman*, Plaintiffs here argue that the Court should certify classes comprised of Cerner's entire nonexempt workforce for the past three years with no proof that (1) the alleged policies to which Plaintiffs tie their classes violated the law, (2) there existed

14

a common policy or plan with respect to which Plaintiffs and the purported class members were victims, or (3) Plaintiffs are similarly situated to the thousands of employees they seek to represent. Adopting Plaintiffs' position would result in a rubber-stamp ruling, followed by notices being sent to three nationwide classes of current and former employees based solely on their status as nonexempt. That result is not warranted, as Plaintiffs have not proven any of the three prongs they must in order to certify even one of their three proposed nationwide classes. *See id.*; *see also Boyle v. Barber & Sons, Co.*, No. 03-0574-CV-W-FJG, 2004 WL 5897946 (W.D. Mo. May 21, 2004) (noting that conditional certification in cases like *Freeman* would be inappropriate based on manageability concerns).

## A. The "Miscalculated Overtime Class" Cannot Be Conditionally Certified

### 1. No FLSA Violation

Plaintiffs seek conditional certification of a nationwide class of all nonexempt Cerner employees whose overtime compensation was calculated based upon a "regular rate" of pay that, alternatively, failed to include all "additional remuneration" for purposes of calculating overtime premiums—as argued in their motion seeking conditional certification (*see* Doc. #97, p. 13)—or "did not include all statutorily required remuneration" for purposes of calculating overtime premiums—as argued in their Amended Complaint (*see* Doc. #39 ¶ 59). Neither formulation may be conditionally certified.

No FLSA rule or regulation provides that all remuneration or additional compensation must be included when calculating the regular rate of pay. Indeed, a violation of the FLSA occurs *only* if (1) additional remuneration is paid to an employee during a week in which an employee works overtime hours, (2) the additional remuneration was not included when calculating the regular rate, and (3) based on a review of the purpose of the remuneration and the

15

facts and circumstances surrounding its payment to an employee, the additional remuneration does not fall within one of the eight FLSA exemptions. *See* 29 U.S.C. § 207(e)(1-8).[3]

Section 207(e) defines the "regular rate" and provides for certain exclusions: "As used in this section the 'regular rate' at which an employee is employed shall be deemed to include ***all remuneration for employment paid to***, or on behalf of, the employee, ***but shall not be deemed to include***—." 29 U.S.C. § 207(e) (emphasis added). Section 207(e)(1)-(8) then sets forth the eight exemptions. Whether compensation is exempt requires a determination of the type, nature, and purpose of the payment and the circumstances under which it was paid. For example, Section 207(e)(2) excludes:

> (2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment.

29 U.S.C. § 207(e)(2).

A similar analysis is required for each type of pay. Indeed, as set forth in Cerner's Motion for Summary Judgment on Plaintiffs' Claim the Wellness Incentive was not Exempt from the Regular Rate (filed this same day), Speer's claim related to the wellness incentive does not state an FLSA violation both because (1) it was not remuneration for employment, and (2) it was exempt from inclusion in Speer's regular rate of pay pursuant to subsection (2) of 29 U.S.C. § 207(e). A similar analysis to that set forth in Cerner's accompanying motion would be required for *each* additional form of remuneration in order to determine if an FLSA violation occurred.

---

[3] The statutory construction of the regular rate exemptions under 29 U.S.C. § 207(e) is similar to that of the FLSA's requirement that all employees are considered nonexempt from the overtime compensation requirements unless their job duties and responsibilities fit within one of the statutory exemptions set forth in 29 U.S.C. § 213.

But Plaintiffs do not offer proof as to what other forms of remuneration exist, let alone proof that each was excluded and that violated the law. Plaintiffs do not even provide this analysis with respect to the only two types of additional remuneration they received—on-call pay and a wellness incentive. (Doc. #97, p. 13). Without such proof, Plaintiffs cannot prevail.

Understanding this required, pay-specific analysis, Plaintiffs originally argued (in their Amended Complaint) that they seek only to represent those whose "statutorily required" pay was not included in the regular rate. (*See* Doc. #39, ¶ 59). Plaintiffs repeat this concept in the Proposed Notice by describing the "Miscalculated Overtime" class as consisting of individuals whose "overtime did not include all legally require (sic) compensation." (*See* Doc. #97, Ex. 12). But this proposed class definition fares no better. Not only do Plaintiffs possess no FLSA claim based on other unknown and unidentified types of compensation they never received, but, if certified, notice could not be sent until after the Court reviewed each form of pay and assessed whether it was "legally required" to be included for each class member. That type of unascertainable, fail-safe class definition is not proper for conditional certification. *See Lindsay Transmission LLC v. Office Depot, Inc.*, No. 4:12-CV-221, 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013) ("A fail-safe class is 'one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'") (citations omitted). Indeed, such a class definition would be no different than asserting an FLSA misclassification claim on behalf of "all nonexempt employees on the ground they may have been misclassified"—something that requires a legal decision.

Plaintiffs' alternative class definitions only highlight the fundamental flaws in Plaintiffs' "miscalculated overtime" class. It is either so broad that it does not state a violation of the FLSA—as alleged in Plaintiffs' Motion—or it is restricted to individuals who allegedly suffered

a violation of the FLSA—but who cannot be ascertained without an individual analysis of the type of pay received (and under what circumstances it was received) to determine if it was exempt from inclusion in the regular rate of pay. Neither of Plaintiffs' iterations of the "miscalculated overtime" class definition may be conditionally certified.

### 2. No Evidence of a Common Policy or Plan

Plaintiffs likewise have not demonstrated that they and the potential class members were the victims of a common policy or plan. At their depositions, Plaintiffs explicitly disclaimed broad knowledge of Cerner's payroll practices. Both Plaintiffs and the opt-ins worked at the Tiger Institute in Columbia, Missouri, as service center analysts, on the same team, for the same manager, and were classified by Cerner as salaried nonexempt employees. (SOF ¶ 23-28, 37, 43-44, 47, 49). Plaintiffs' and the opt-ins' team is one of countless teams within greater than 1,350 departments and 515 business units at Cerner. (SOF ¶¶ 3). Beyond the Tiger Institute, Cerner employs other salaried nonexempt employees compensated pursuant to the fluctuating workweek ("FWW") in greater than 120 business units in eighteen states and employs hourly nonexempt employees in greater than 200 business units in approximately thirty-two states. (SOF ¶ 5).

Plaintiffs claim that they and all other nonexempt employees across the country were the victims of a common policy or practice. Yet both Plaintiffs candidly admit they have no knowledge about Cerner's pay practices outside of their group, including any pay practices applicable to hourly employees. (SOF ¶¶ 35-36, 41). Because they have no personal knowledge about Cerner's pay practices outside of the Tiger Institute (*Id.*), Plaintiffs illogically contend Cerner's "system-wide processes are illustrated in [Cerner's] own Payroll Process Flow chart." (Doc. #97, p. 11). As an initial matter, Plaintiffs have no personal knowledge about that document (SOF ¶¶ 21-22), and their testimony attempting to interpret it is accordingly inadmissible. *See, e.g., Taylor*, 2013 WL 3270971 at *2. Regardless, Plaintiffs imply that the

18

flow chart indicates a systematic exclusion of all "additional remuneration" when calculating the regular rate. Nothing about the document affirms such a claim. Indeed, Plaintiffs' claim is false. Since at least January 1, 2011, Cerner has included certain forms of pay within the regular rate calculation for its nonexempt employees. (SOF ¶ 14).

In reality, the flow chart Plaintiffs characterize as an "unlawful payroll processing system" is not a policy, plan, or decision of any kind. It is instead a high-level overview of how Cerner's payroll system operates and is maintained as reference material for internal compliance. (SOF ¶ 17). It does not include every step taken in performing Cerner's bi-weekly payroll process; nor are all of the steps listed in the Payroll Process Flow document completed as part of Cerner's bi-weekly payroll process. (SOF ¶¶ 18-19). And many of the steps listed in the Payroll Process Flow document apply only to a specific subset of Cerner employees. (SOF ¶ 19). The Payroll Process Flow document does not state or describe *any* calculations or describe how any individual employee's pay is calculated. (SOF ¶ 20). The Payroll Process Flow document—the key document Plaintiffs cite in support of certification—does not show a uniform, unlawful policy applied to the nationwide, "miscalculated overtime" class of all nonexempt employees that Plaintiffs seek to represent. As Cerner's declarant attests, Plaintiffs' claim that Cerner systematically excluded all remuneration when calculating the regular rate is false. (SOF ¶ 14).

### 3. No Evidence that Plaintiffs Are Similarly Situated to Other Putative Class Members

The FLSA mandates that all employees must be compensated "at a rate not less than one and one-half times the regular rate at which he is employed" for all hours worked in excess of forty in a workweek. 29 U.S.C. § 207(a)(2). If pay qualifies as "remuneration for employment," the FLSA mandates the pay be included within the regular rate, *unless the nature and purpose of the pay* falls within one of eight statutory exemptions set forth in 29 U.S.C. § 207(e)(1)-(8).

19

As set forth above, Section 207(e) requires a pay-by-pay inquiry. To skirt this analysis, Plaintiff jump to the unsupported conclusion that Cerner had a nationwide policy of excluding the types of pay they received *plus* all other types of "additional remuneration." (Doc. 97, pp. 12-13). This conclusion is demonstrably false. (SOF ¶ 14). Regardless, Plaintiffs offer no proof as to (1) what types of other remuneration Plaintiffs contend existed, (2) who received it, (3) whether it was included when determining the regular rate or not, (4) if excluded, whether it was of the type and purpose and paid under circumstances that fell within one of eight FLSA statutory exemptions, or (5) whether all nonexempt employees were treated the same with respect to the particular type of remuneration.

Even if they had offered such proof, these named Plaintiffs could not be the class representatives for individuals who received other forms of remuneration, because they would lack standing to pursue damages for injuries they have not suffered. *See East Texas Motor Freight Systs., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members") (citations omitted); *Stubbs v. McDonald's Corp.*, 227 F.R.D. 661, 665 (D. Kan. 2004) (named plaintiff in FLSA case lacked standing to represent individuals in different job).

Even limiting this class to the two types of additional remuneration Plaintiffs received—on-call pay and a wellness incentive—Plaintiffs still have not proven that they are similarly situated to all other nonexempt employees. Dissimilarities exist even between the Plaintiffs and the opt-ins. Speer claims to have occasionally received on-call pay and received a wellness incentive. *See* Doc. #97 at SOF B 10-11, p. 18. McGuirk claims only to have occasionally received on-call pay, but he never received a wellness incentive. *Id.* Wyatt Thorpe (one of the two opt-ins) does not claim to have received any additional pay. (SOF ¶ 50). Scott Sexton (the

20

other opt-in) claims to have received only on-call pay. (SOF ¶ 45). Just between these four individuals, three different pay combinations exist, and each would need to be individually analyzed to determine liability. "Far from promoting judicial economy, certification of such a class would require the Court to entertain myriad individualized analyses." *Young*, 503 F. Supp. 2d at 1232. The proposed miscalculation class is inappropriate.

### B. The "Fluctuating Workweek Class" Cannot Be Conditionally Certified

#### 1. No FLSA Violation

Plaintiffs seek to represent a nationwide class of all nonexempt Cerner former and current employees who were compensated based on the FWW method of pay *and* who received overtime compensation. (*See* Doc. #97, p. 14). It is not a violation of the FLSA, however, to compensate a nonexempt employee under the FWW method of pay and to pay them overtime. Instead, it is illegal *not* to pay them overtime if they earned it. Likewise, contrary to Plaintiffs' allegations, an employer can use the FWW method of pay and still provide other forms of pay to employees. *Lalli v. Gen. Nutrition Ctrs., Inc.*, 85 F. Supp. 3d 560, 562-563 (D. Mass. 2015) (collecting cases). As set forth in Cerner's Motion for Partial Judgment on the Pleadings on Plaintiffs' Claim that Cerner Violated the FLSA in Using the Fluctuating Workweek Computation (filed this same day), Plaintiffs fail to allege a violation of the FLSA as a matter of law. For these reasons, and those set forth in Cerner's accompanying motion, the Court should deny Plaintiffs' Motion for conditional certification of a FWW class.

#### 2. No Evidence of a Common Policy or Plan

Plaintiffs likewise have not shown that they and the potential class members were the victims of a common policy or plan. Plaintiffs presented the same evidence in support of the "fluctuating workweek" class as they presented in support of the "miscalculated overtime" class, and it is insufficient for all of the same reasons stated above. Plaintiffs have no personal

knowledge regarding how other employees were paid. (SOF ¶¶ 35-36, 41). McGuirk does not even know if other members of his team were compensated pursuant to the FWW method of pay. (SOF ¶ 41). Plaintiffs likewise have no personal knowledge about the Payroll Process Flow chart—the sole document upon which they once again pin their request for conditional certification and which still does not show a systematic exclusion of additional remuneration when calculating the regular rate. (SOF ¶¶ 21-22). As Cerner's declarant attests, Plaintiffs' assertion is false. (*See* SOF ¶ 14). Plaintiffs have not proven a common policy or plan with respect to which they and all class members were victims.

Plaintiffs' argument appears to be that Cerner's alleged (1) failure to pay a fixed salary; (2) failure to include Plaintiffs' on-call pay and wellness incentives in the regular rate; and (3) decision to issue overtime in a subsequent pay period from the employees' fixed salary, each separately supports their FWW class. *See* Plaintiff's Motion, pp. 14-15. But Plaintiffs present no evidence that these three groups were subject to any one uniform policy or practice that can be joined as a single class, because that evidence does not exist. Further, the second and third elements repeat Plaintiffs' other classes and should not be certified for the same reasons Plaintiffs' "miscalculated overtime" and "late overtime" classes cannot be certified.

### 3. No Evidence that Plaintiffs are Similarly Situated to Other Putative Class Members

The three bases set out above also, necessarily, render the potential class members dissimilar. If Plaintiffs' allegations lead to a certified class, potential members may be part of the class on any one of the three bases. There is nothing about Plaintiffs' proposed FWW class that can bind together a group of similarly situated employees. For the alleged fixed-salary theory alone, Plaintiffs inappropriately assume that every employee at Cerner who was salaried nonexempt and paid pursuant to the FWW was paid overtime and also received some type of

22

additional compensation. This isn't even true according to Plaintiffs' own allegations—Wyatt Thorpe does not claim to have received any additional form of compensation. (SOF ¶ 50).

For the repetitive miscalculation theory, plaintiffs inappropriately assume that all employees paid pursuant to the FWW received at least one type of additional compensation that was inappropriately excluded when calculating the regular rate for purposes of calculating overtime. That assumption is also incorrect. (*See* SOF ¶ 14). Regardless, Plaintiffs cannot claim to be similarly situated to every FWW employee at Cerner who was paid overtime and who received different forms of pay based on their unique circumstances. Plaintiffs have not even demonstrated what other types of additional compensation exist, much less that all of it was excluded when calculating the regular rate. As with the "miscalculated overtime class," determining whether an FLSA violation has occurred would require the Court to examine each type of pay, whether each is permitted in conjunction with the FWW, whether each was excluded when calculating the regular rate, and, if so, why. Plaintiffs have presented no evidence to show that a class of similarly situated individuals exists or how those individuals could be identified without the same pay-by-pay analysis required for Plaintiffs' proposed miscalculation class.

### C.    The "Late Payment of Overtime Class" Cannot Be Conditionally Certified

#### 1.    No FLSA Violation

Finally, Plaintiffs seek conditional certification of a nationwide class of nonexempt employees "whose overtime was paid a pay period behind." (*See* Doc. #97, Ex. 12). Plaintiffs contend Cerner violated the FLSA because it consistently paid its employees overtime wages on a regular payday two weeks after they received their salary. (Doc. #39 ¶¶ 35, 71). In essence, Plaintiffs allege Cerner should not have paid them their full salaries so quickly—on a pay day just five days after the close of the pay period—but instead should have set a *later* regular pay day so that their full salaries and their overtime premium compensation would be paid on the

23

same date. Plaintiffs further allege this two-week difference in payment date entitles them to windfall damages in an amount equal to the overtime compensation they were already paid.

The FLSA does not set a payment schedule and does not require payment of regular wages and overtime compensation in the same paycheck or on the same day. While Section 216 provides a civil action for unpaid minimum wages under Section 206 and for unpaid overtime compensation under Section 207, nowhere within the FLSA did Congress create a civil action for so-called "late payment"—of either regular or overtime wages. *See* 29 U.S.C. § 216(b).

In 1945, the Supreme Court addressed timing of overtime payments in *Walling v. Harnischfeger,* 325 U.S. 427 (1945), holding "§ 7 (a) does not require the impossible. If the correct overtime compensation cannot be determined until sometime after the regular pay period, . . . Section 7 (a) requires only that the employees receive a 50% premium as soon as convenient or practicable under the circumstances." *Id.* at 432-433. This remains federal law. To date, Congress has not amended the FLSA to impose any timing requirement on the payment of regular wages or overtime compensation. Many states have enacted wage-payment statutes in recognition of that fact.

Unable to rely on the FLSA to support their position, Plaintiffs instead highlight a 1968 Department of Labor interpretive bulletin, which provided:

> [t]he general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of overtime compensation cannot be determined until sometime after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next pay day after such computation can be made. . . .

29 C.F.R. § 778.106. That interpretation is *not* a regulation. It was issued without notice and comment and therefore does not command deference from this Court. *See O'Brien v. Town of Agawam*, 350 F.3d 279, 298 (1st Cir. 2003) ("Because § 778.106 is an interpretative bulletin, it does not command formal deference from this court.").

Regardless, while the bulletin advises that overtime payments should not be delayed longer than "reasonably necessary," it does not mandate that overtime be paid at the same time regular pay is issued. Its only actual requirement is that all pay be made by the subsequent pay period, which is exactly what Cerner is alleged to have done. The DOL interpretive bulletin does not, and cannot, create a requirement that all pay be given simultaneously and cannot be relied upon to argue an FLSA violation in this case. Plaintiff's novel timing theory is inconsistent with the FLSA's goals, which are "designed and intended as a shield to protect the unwary and not as a sword on which to impale an unsuspecting employer. . . ." *Wirtz v. Harrigill*, 214 F. Supp. 813, 815 (S.D. Miss. 1963), aff'd 328 F.2d 963 (5th Cir. 1964).

### 2. No Evidence that Plaintiffs are Similarly Situated to Other Putative Class Members

Plaintiffs argue that their overtime pay should have been issued in the same pay check as their regular salary; otherwise, Cerner's decision regarding when overtime pay was issued is based on the amount of time "reasonably necessary" to calculate their pay. (Doc. #97 p. 16). A reasonableness assessment, however, necessarily requires the Court to determine when Plaintiffs and the proposed class members submitted their time sheets and, if they were submitted late in violation of Cerner's time submission policy, why. It will also require the Court to determine whether Cerner, based on the employee's time submission, reasonably could have calculated the employee's overtime within two business days after the pay period closed, and whether it would have been in the best interest of the employee for Cerner to have decided not to pay the

25

employee's full salary so quickly—on a pay day just five days after the close of the pay period—and instead delay such payment to a *later* regular pay day so that their full salaries and their overtime premium compensation would be paid on the same day.

Cerner operates on a bi-weekly payroll schedule. (SOF ¶ 7). Cerner imposes a time-submission deadline of 11:59 p.m. on Saturday and the pay period closes immediately after that deadline passes. (SOF ¶ 6). Cerner's payday is the Friday after the close of the pay period. (SOF ¶ 7). This quick turnaround requires a regimented and comprehensive two-week payroll flow process, which began during Plaintiffs' employment with the pulling of all payroll time entry data on Sunday, the first day of the next payroll period. (SOF ¶ 9). To be included in the Friday paycheck, all pay amounts must be calculated and reconciled and all payroll information must be submitted to the bank with payroll instructions by close of business Tuesday—two business days after the close of the pay period. (SOF ¶ 8).

Plaintiffs posit that Cerner had the "technical capability" to compute and issue their overtime compensation, if earned, in the same paycheck as their salary, because they submitted their overtime hours on the same timesheet as their regular hours. (Doc. #39, ¶¶ 37-38). However, Plaintiffs Speer and McGuirk, as salaried nonexempt employees, received their full weekly salaries in their paycheck, regardless of the number of hours they worked and regardless of whether they even submitted timesheets. (SOF ¶¶ 12, 29, 30-31, 38, 39). However, unlike Plaintiffs' salary, Cerner could not determine Plaintiffs' overtime pay, if earned, without Plaintiffs' timesheets. If Plaintiffs recorded overtime hours on their timesheets in a workweek, Cerner was required to determine Plaintiffs' "regular rate" of pay for each week in order to determine the proper amount of Plaintiffs' overtime compensation. (SOF ¶ 13). Plaintiffs' regular rate of pay varied based upon the number of overtime hours recorded and submitted by

26

Plaintiffs on their timesheets. (*Id.*). Other Cerner nonexempt employees' regular rates also varied based on additional forms of compensation they received. (SOF ¶ 14).

Completing and issuing pay under this schedule is especially difficult when, as here, computing, processing, and issuing payment of Plaintiffs' overtime pay is contingent on Plaintiffs submitting timesheets. Plaintiffs testified it was their personal belief that the 11:59 p.m. deadline on Saturday was not an actual deadline and, therefore, did not comply with it. (SOF ¶¶ 15-16, 31). In explaining why they often submitted their time late, Plaintiffs Speer and McGuirk separately testified that they were told by someone that they could miss the deadline and submit their timesheets by Monday or Tuesday, although Plaintiffs submitted timesheets on even later dates. (SOF ¶¶ 15-16).

Cerner set its pay schedule so as to pay Plaintiffs their full salary on the Friday immediately following the close of the pay period, within five days of its close, rather than lengthen the period in which they would regularly receive their salary to pay them overtime in the same paycheck. (SOF ¶ 10-11). Whether Cerner's decision to regularly pay Plaintiffs' overtime pay on this consistent, but staggered, pay schedule was reasonable is dependent on the facts and circumstances related to both the particular employee and particular pay period at issue and will vary based on when Plaintiffs and potential class members submitted their time. Plaintiffs have not demonstrated, and cannot demonstrate, they were similarly situated or possess the same interests as to all other nonexempt employees with respect to this standard. For this reason, their "Late Payment of Overtime" class should not be conditionally certified.

## V.     Class Certification is Inappropriate Because Plaintiffs Cannot Demonstrate Sufficient Interest in the Lawsuit

Conditional certification is also inappropriate because of the lack of interest in this case by putative class members. Plaintiffs' nationwide classes potentially include every nonexempt

employee in the United States at any time during the last three years—potentially up to 5,000 members. Before conditionally certifying a collective action under Section 216(b) and authorizing notice, the Court must satisfy itself that there are other employees "who desire to 'opt in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1312 (M.D. Ala. 2002) (internal quotation omitted). This preliminary inquiry is required because: (1) "courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation," *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991), and (2) "an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense." *D'Anna v. M/A Com, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995). Plaintiffs must introduce more than their own statements that other potential class members exist. *Wacker*, 2008 WL 4838146, at *2 ("Unsupported assertions that FLSA violations were widespread and that additional plaintiffs exist do not meet this burden.") (internal quotations and citations omitted).

This case has been pending for over a year and a half. In this time, Plaintiffs have taken extensive measures to publicize the existence of these FLSA claims—beginning several months before the lawsuit commenced. (SOF ¶ 33). Speer testified that he contacted at least ten former and current Cerner employees to "notify" them of this pending litigation against Cerner and told them to contact his attorney to join the lawsuit. (SOF ¶¶ 34-35). Notwithstanding this overt solicitation, the named Plaintiffs have only managed to garner two opt-in plaintiffs, both of whom are former employees who worked in the same position, at the same facility, as the two named Plaintiffs. (SOF ¶¶ 42, 44, 46, 49). Such minimal interest cannot support conditionally certifying any collective action, much less three *nationwide* classes of employees.

"An FLSA plaintiff is not entitled to conditional certification simply to seek out others who might wish to join the action." *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1166 (D. Minn. 2007) (citations omitted). Courts have appropriately denied conditional certification unless the Plaintiff can show sufficient interest in the litigation. *See id.*; *see, e.g.*, *Butcher v. Delta Mem. Hosp.*, No. 5:12-cv-00241-SWW, 2013 WL 1668998, at *3 (E.D. Ark. Apr. 17, 2013); *accord Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 237 (D. Me. 2011) (collecting cases).

Indeed, as former employees having already received their full salaries, overtime compensation, and additional compensation, Plaintiffs now seek to prohibit payment of rewards, awards, bonuses, benefits, and additional compensation of any kind to current employees, resulting in the loss of beneficial forms of pay. To the extent the classes Plaintiffs seek to represent have a personal interest in the outcome of this case, it is an interest in *defeating* Plaintiffs' claims so as not to be injured as a result of the relief Plaintiffs seek. This fundamental conflict renders Plaintiffs inadequate representatives for the classes they seek to represent. *See Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 682 (D. Kan. 2004) ("[T]he court has an inherent interest in ensuring that opt-in plaintiffs are adequately represented.").

## VI.    Plaintiffs' Proposed Notice is Inadequate

If the Court grants Plaintiffs' motion and conditionally certifies the proposed classes, Plaintiffs' proposed Notice (Doc. #97, Exhibit 12) should not be utilized because it is not accurate and is misleading to potential members of the class(es). Among other things, the opt-in period should be 45 days instead of 90, Plaintiffs' description of the "miscalculated overtime" class requires a legal determination to require class membership, and Plaintiffs' responsibility for costs should be clarified in Section 3. If a class is conditionally certified, Cerner respectfully reserves the right to object to the proposed notice on these and other grounds.

29

## CONCLUSION

Plaintiffs have not even filed written consents commencing their collective action claims and allowing them to file this motion. Likewise, Plaintiffs only have three-year, willful claims remaining, yet they come nowhere close to proving that Cerner willfully violated the law. Even if Plaintiffs had ordinary, two-year claims, they have not demonstrated that (1) their three proposed nationwide classes are tied to policies that actually violated the FLSA, (2) Plaintiffs were the victims of a common policy or practice, or (3) Plaintiffs are similarly situated to the thousands of diverse potential class members. Plaintiffs' Motion should be denied.

30

Dated: October 7, 2015

Respectfully Submitted,

SHOOK, HARDY & BACON L.L.P.

By: /s/ Lori R. Schultz
    Lori R. Schultz, #37218
    Amy M. Crouch, #48654
    Michael B. Barnett #62742
    Brent Dwerlkotte #62864
    2555 Grand Blvd.
    Kansas City, Missouri 64108-2613
    Ph. 816.474.6550
    Fax: 816.421.5547
    lschultz@shb.com
    amcrouch@shb.com
    mbarnett@shb.com
    dbdwerlkotte@shb.com

*Attorneys for Defendant Cerner Corporation*

## CERTIFICATE OF SERVICE

This is to certify that on this 7th day of October, 2015, a true and correct copy of the foregoing was served via operation of the Court's ECF system upon the counsel below:

REAVEY LAW LLC

Patrick Reavey
Kevin C. Koc
Livestock Exchange Building
1600 Genessee, Suite 303
Kansas City, MO 64102
Ph: 816.474.6300
Fax: 816.474.6302
Email: patrick@reaveylaw.com
Email: kkoc@reaveylaw.com

*Attorneys for Plaintiffs*

DAVIS GEORGE MOOK LLC

Brett A. Davis,
Tracey F. George
1600 Genessee, Ste. 328
Kansas City, MO 64102
Ph. (816) 569-2629
Fax (816) 447-3939
Email: brett@dgmlawyers.com
Email: tracey@dgmlawyers.com

*Attorneys for Plaintiffs*

  /s/ Lori R. Schultz
*Attorney for Defendant*

32