# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **FRED SPEER and MIKE McGUIRK** | ) |
| Individually and on behalf of a class of all | ) |
| others similarly situated, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) **CASE NO: 4:14-cv-00204-FJG** |
| | ) |
| **CERNER CORPORATION** | ) |
| | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## CERNER CORPORATION'S SUGGESTIONS IN OPPOSITION TO PLAINTIFFS' RULE 23 MOTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

CERNER'S STATEMENT OF FACTS .............................................................................1

CERNER'S RESPONSE TO PLAINTIFFS' PURPORTEDSTATEMENT OF FACTS..............5

ARGUMENT ......................................................................................................................6

I.     PLAINTIFFS' CLASSES FAIL RULE 23'S STRICT REQUIREMENTS .....................6

     A.     Standard of Review ..................................................................................7

     B.     Plaintiffs Classes Fail Ascertainability ..................................................8

          1.     The miscalculated overtime class is not ascertainable..............9

          2.     The late overtime payment class is not ascertainable ..............10

          3.     The FWW class is not ascertainable ........................................12

     C.     Plaintiffs' Proposed Classes Fail Rule 23(a)'s Criteria .........................13

          1.     Numerosity Fails ......................................................................13

          2.     Commonality Fails....................................................................14

          3.     Typicality fails .........................................................................16

               a.     Plaintiffs' claims are not typical with respect to the miscalculated overtime class ..................................17

               b.     Plaintiffs' claims are not typical with respect to the late payment class ....................................18

               c.     Plaintiffs' claims are not typical with respect to the FWW class...............................................18

          4.     Adequacy Fails.........................................................................19

     D.     Plaintiffs' Proposed Classes Fail Rule 23(b)(3)'s Criteria ....................21

          1.     Predominance Fails ..................................................................21

                a.     Plaintiffs have not proven that damages are capable of measurement on a class-wide basis...............................22

Case 4:14-cv-00204-FJG   Document 166   Filed 03/30/16   Page 2 of 34

b.      Common questions do not predominate  the miscalculated
        overtime class..................................................................................23

c.      Common questions do not predominate the late payment class ....24

d.      Common questions do not predominate the FWW class ...............24

2.      Superiority Fails ........................................................................24

CONCLUSION...........................................................................................25

CERTIFICATE OF SERVICE ...........................................................................27

# TABLE OF AUTHORITIES

CASES                                                                        PAGE(S)

*Acton v. City of Columbia, Mo.*,
436 F.3d 969 (8th Cir. 2006) ........................................................................9, 23

*Ambers–Phillips v. SSM DePaul Health Ctr.*,
459 S.W.3d 901 (Mo. 2015) ...............................................................................20

*American Pipe & Construction v. Utah*,
414 U.S. 538 (1974)........................................................................................20, 21

*Amgen, Inc. v. Conn. Ret. Plans & Trust*,
133 S. Ct. 1184 (2013)...........................................................................................8

*Ansoumana v. Gristede's Operating Corp.*,
201 F.R.D. 81 (S.D.N.Y. 2001) ..........................................................................21

*Avritt v. Reliastar Life Ins. Co.*,
615 F.3d 1023 (8th Cir. 2010) ...............................................................................7

*Blades v. Monsanto Co.*,
400 F.3d 562 (8th Cir. 2005) ....................................................................8, 21, 22

*Bray v. Simon & Schuster, Inc.*,
No. 4:14-cv-00258-NKL, 2014 WL 2893202 (W.D. Mo. June 25, 2014) .............20

*Brown v. Electrolux Home Prods., Inc.*,
No. 15-11455, -- F.3d --, 2016 WL 1085517 (11th Cir. Mar. 21, 2016) ...............22

*Californians for Disability Rights, Inc. v. California Dept. of Transp.*,
249 F.R.D. 334 (N.D. Cal. 2008).........................................................................14

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013).............................................................................7, 22, 23

*Dumas v. Albers Med., Inc.*,
No. 03-0640-CV-W-GAF, 2005 WL 2172030 (W.D. Mo. Sept. 7, 2005)...............8

*East Texas Motor Freight Sys. v. Rodriguez*,
431 U.S. 395 ........................................................................................................17

*Elizabeth M. v. Montenez*,
458 F.3d 779 (8th Cir. 2006) ...........................................................................16, 17

*EQT Prod. Co. v. Adair*,
764 F.3d 347 (4th Cir. 2014) .................................................................................8

Case 4:14-cv-00204-FJG   Document 166   Filed 03/30/16   Page 4 of 34

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  131 S. Ct. 2179 (2011) ..................................................................................................8

*Evans v. Lowe's Home Centers, Inc.*,
  No. 3:CV-03-0438, 2006 WL 1371073 (M.D. Pa. May 18, 2006) ....................................19, 24

*Genesis Healthcare Corp. v. Symczyk*,
  133 S. Ct. 1523 (2013) ................................................................................................7

*Great Plains Trust Co. v. Union Pacific R. Co.*,
  492 F.3d 986 (8th Cir.2007) ........................................................................................20

*Hohider v. United Parcel Serv., Inc.*,
  574 F.3d 169 (3d Cir. 2009) .........................................................................................25

*In re Express Scripts, Inc.*,
  No. 4:05-MD-01672-HEA, 2015 WL 128073 (E.D. Mo. Jan. 8, 2015) .................................8

*In re Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013) ......................................................................................24

*In re Milk Prod. Antitrust Litig.*,
  195 F.3d 430 (8th Cir. 1999) ........................................................................................18

*Ingersoll v. Farmland Foods, Inc.*,
  No. 10-CV-6046-FJG, ECF 140, at *19 (W.D. Mo. Feb. 9, 2012) .....................................25

*Janson v. LegalZoom.com, Inc.*,
  271 F.R.D. 506 (W.D. Mo. 2010) ..................................................................................10

*Kohen v. Pacific Inv. Mgmt. Co. LLC*,
  571 F.3d 672 (7th Cir. 2009) ..........................................................................................9

*Lalli v. General Nutrition Centers, Inc.*,
  No. 15-1199, -- F.3d --, 2016 WL 563071 (1st Cir. Feb. 12, 2016) .....................................13

*Luiken v. Domino's Pizza*,
  LLC, 705 F.3d 370 (8th Cir. 2013) .............................................................................8, 15

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ..........................................................................................8

*Mayo v. USB Real Estate Sec., Inc.*,
  No. 08-00568, 2012 WL 4361571 (W.D. Mo. Sept. 21, 2012) ...................................9, 10, 11

*McClean v. Health Sys., Inc.*,
  No. 11-03037-CV-S-DGK, 2012 WL 607217 (W.D. Mo. Feb. 23, 2012) ..........................7, 21

Case 4:14-cv-00204-FJG   Document 166   Filed 03/30/16   Page 5 of 34

*O'Brien v. Town of Agawam,*
   350 F.3d 279 (1st Cir. 2003) ........................................................................12

*O'Shaughnessy v. Cypress Media, L.L.C.,*
   No. 4:13-CV-0947-DGK, 2015 WL 4197789 (W.D. Mo. July 13, 2015)...............15

*Parke v. First Reliance Standard Life Ins. Co.,*
   368 F.3d 999 (8th Cir. 2004) ........................................................................16

*Paxton v. Union Nat'l Bank,*
   688 F.2d 552, 562-63 (8th Cir. 1982) .............................................................19

*Rolwing v. Nestle Holdings, Inc.,*
   437 S.W.3d 180 (Mo. 2014) ..........................................................................20

*Shelter Mut. Ins. Co. v. Dir. of Rev.,*
   107 S.W.3d 919 (Mo. 2003) ..........................................................................20

*Sprague v. Gen. Motors Corp.,*
   133 F.3d 388, 399 (6th Cir. 1998) ..................................................................16

*Stiller v. Costco Wholesale Corp.,*
   298 F.R.D. 611 (S.D. Cal. 2014) ...............................................................22, 24

*Thomas v. U.S. Bank NA ND,*
   789 F.3d 900 (8th Cir. 2015) .....................................................................14, 20

*Vietnam Veterans Against the War v. Benecke,*
   63 F.R.D. 675 (W.D. Mo. 1974).......................................................................8

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011).............................................................................7, 15

*White v. 14051 Manchester Inc.,*
   301 F.R.D. 368 (E.D. Mo. 2014) ...............................................................17, 22

*Wills v. RadioShack Corp.,*
   981 F.Supp.2d 245 (S.D.N.Y 2013)................................................................13

**STATUTES**

28 U.S.C. § 1367 ...........................................................................................20

29 U.S.C. § 207(e)(1-8) ...............................................................................9, 17

Mo. Rev. Stat. § 290.080 ..................................................................................7

Mo. Rev. Stat. § 290.090 ..................................................................................7

v

Mo. Rev. Stat. § 290.505(4)..................................................................................................7

**RULES**

29 C.F.R. § 778.106....................................................................................7, 11, 16, 18

29 C.F.R. § 778.114................................................................................................19

FED. R. CIV. P. 23.........................................................................................6, 7, 8

FED. R. CIV. P. 23(a)...............................................................................7, 14, 16, 22

FED. R. CIV. P. 23(a)(1).........................................................................................14

FED. R. CIV. P. 23(a)(2).........................................................................................15

FED. R. CIV. P. 23(a)(3).........................................................................................16

FED. R. CIV. P. 23(a)(4).........................................................................................19

FED. R. CIV. P. 23(b)(3).................................................................................. passim

FED. R. CIV. P. 23(c)(1)(B)....................................................................................25

# INTRODUCTION

Plaintiffs' Motion for Rule 23 class certification is fatally flawed on multiple fronts. Ignoring significant legal gaps in their case and proposing a lenient standard for class certification that has been completely supplanted by the *Wal-Mart/Comcast* line of Supreme Court decisions, Plaintiffs assert that "there is no better case" for Rule 23 certification. That is demonstrably false. Plaintiffs' three proposed state law classes are unascertainable, fail on numerous 23(a) criteria, and utterly fail to pass muster under Rule 23(b)(3). For all these reasons, this Court should deny certification of each of Plaintiffs' proposed classes.

## CERNER'S STATEMENT OF FACTS[1]

### CERNER

Each of Cerner's more than 16,500 U.S.-based employees works on countless small teams within one of approximately 1,350 Departments, 515 Business Units, 110 Organizations, and 21 Organization Units. (Declaration of Stephanie Roberts, at ¶4-7 (Dated October 6, 2015) (attached as Exhibit A)). All Cerner employees are classified into one of three distinct groups: (1) salaried exempt; (2) hourly nonexempt ("hourly"); or (3) salaried nonexempt ("SNE"). (Declaration of Jessie Richardson, at ¶2 (Dated October 6, 2015) (attached as Exhibit B)).

### PLAINTIFFS SPEER AND MCGUIRK AND OPT-INS

Plaintiffs Frederic Speer and Michael McGuirk were classified as SNE employees. (Doc. #39, First Am. Compl. at ¶¶21, 23). Plaintiffs worked at the Tiger Institute in Columbia, Missouri. (Deposition of Frederic Speer ("Speer Dep."), at 67:14-67:20 (attached as Ex. C); (Deposition of Michael ("McGuirk Dep."), at 30:18-20 (attached as Ex. D). Speer worked for

---

[1] Certain of the "facts" that Plaintiffs argued in support of their Amended Motion for FLSA Conditional Collective Action Certification and Notice (Doc. #97), and that the Court relied upon in the Order issued earlier today granting in part and denying in part that motion (Doc. #165), have been proven false upon development of the factual record, as addressed below.

Cerner from September 2011 to December 2012 as a Service Center Analyst. (Doc. #153, Plaintiffs' Motion, at Ex. 12, Speer Pay Records). McGuirk worked for Cerner from April 2010 to March 2013 as a Service Center Analyst. (Doc. #153, Pls.' Mot. at Ex. 12, McGuirk Pay Records). Plaintiffs received their base salary every week throughout their employment regardless of the number of hours worked. (*Id.*; Doc. #153, Pls.' Mot. at Ex. 12, Speer Pay Records; Speer Dep. at 248:24-249:1). Both Plaintiffs claimed they did not understand how they were paid under the fluctuating workweek method of pay. (Speer Dep., at 47:23-48:12, 51:9-52:4; McGuirk Dep. at 63:4-25, 79:8-80:13).

Plaintiffs Fred Speer and Mike McGuirk claim that they received *ITWorks®* on-call pay and a Wellness Incentive that were not included in the regular rate when calculating their regular rate of pay. (Doc. #153, Pls.' Mot. at p. 37, citing SOF at ¶37; (Deposition of Jessie Richardson ("Richardson Dep."), at 233-34 (attached as Ex. E)). To date, just two individuals have filed written consents to join Plaintiffs' claims filed under the FLSA. (Docs. ##57, 59, Notice of Filing Consent to Join Litigation). Opt-in Scott Sexton claims that he also received *ITWorks* on-call pay that was not included when calculating his regular rate of pay. (Doc. #153, Pls.' Mot. at Ex. 9, Sexton Dec. at ¶¶ 8, 11). Opt-in Wyatt Thorpe does not claim that he received any additional compensation other than his salary and overtime pay. (Doc. #153, Pls.' Mot. at Ex. 8, Thorpe Dec.).

## **CERNER'S PAY SCHEDULE**

Cerner operates on a bi-weekly payroll schedule and has established its payday as the Friday following the close of the two-week pay period. (Ex. B., Richardson Dec. at ¶ 11). Cerner imposes a deadline of 11:59 p.m. on Saturday for the submission of time, and the pay period closes immediately after that deadline. (*Id.* at ¶¶ 8-9). To be included in the Friday paycheck, all pay amounts must be calculated and reconciled, and all payroll information must be submitted to

2

the bank with payroll instructions by close of business Tuesday—two business days after the close of the pay period. (*Id.* at ¶ 13). This quick turnaround requires a regimented and comprehensive two-week payroll flow process, which began during Plaintiffs' employment with the pulling of all payroll time entry data on Sunday, the first day of the next payroll period. (Id. at ¶ 12). As a result of the process required to compute and process Plaintiffs' overtime pay based on their timesheet data, the regular pay day for Plaintiffs' receipt of overtime pay, if earned, was the Friday after the close of the subsequent pay period. (*Id.* at ¶¶ 12-20).

Cerner set this pay schedule to pay Plaintiffs their full salary on the Friday immediately following the close of the pay period—within five days of the close of the pay period—rather than lengthening the period in which they would regularly receive their salary in order to pay them the salary and any overtime that may have been worked within the same paycheck. (*Id.* at ¶¶ 12-13, 17-18).

SNE employees received their full salary whether or not they submitted a timesheet by the deadline (or at all) because as SNE employees they were guaranteed their full salary every week regardless of the hours they worked, including weeks in which they performed no work at all. (*Id.* at ¶¶ 6, 14-16; Ex. A, Roberts Dec. at Exs. 1-2). If SNE employees like Plaintiffs recorded overtime hours on their timesheets in a workweek, Cerner was required to determine Plaintiffs' "regular rate" of pay for each week in order to determine the proper amount of Plaintiffs' overtime compensation. (Ex. B., Richardson Dec. at ¶ 17). During the summer of 2014, Cerner revised its internal processes based on the implementation of additional technology and began to pay SNE associates all regular wages and overtime on the first Friday following the close of the pay period. (Ex. E, Richardson Dep. at 148:22-149:21). During all relevant periods,

Case 4:14-cv-00204-FJG   Document 166   Filed 03/30/16   Page 10 of 34

Cerner paid non-exempt, hourly employees any earned overtime on the first Friday after the close of the pay period. (Ex. B, Richardson Dec. at ¶ 20).

During the final 37 weeks Speer worked at Cerner (pay end dates on or after April 14, 2012), Speer did not comply with Cerner's time submission policy and submitted his time anywhere from 1 to 3 days late 18 out of those 37 weeks. (Doc. #153, Pls.' Mot. at Ex. 12, Speer Pay Records, at pp. 30-66). Speer contends that he believed, based on what he was told by his manager, that he was "allowed to submit [time] essentially up until Tuesday at noon." (Ex. C, Speer Dep. at 219:5-220:25). McGuirk contends that an individual told him as part of his orientation that employees "could still submit [their time] by Monday or Tuesday. Usually Monday because by Tuesday they may be screaming at you to fill it out so they can do the payroll on time." (Ex. D, McGuirk Dep. at 100:3-14).

## CERNER'S PAY TYPES FOR NON-EXEMPT EMPLOYEES

There has been no "policy" in place at Cerner, at any time during the relevant time period, which required the exclusion of all additional compensation for all non-exempt associates when making regular-rate calculations. (Ex. E, Richardson Dep. at 235-236). During the period March 5, 2012, to December 31, 2015, Cerner's non-exempt employees were issued compensation under more than forty different pay codes. (*Id*. at 95:10-97:1, Exs. 6-7; Declaration of Jessie Richardson (dated February 12, 2016), at Ex. C (attached as Ex. F)).

Some of the pay types provided to non-exempt employees were included when making regular-rate calculations and some were excluded. (Ex. B., Richardson Dec. at ¶ 19; Ex. E, Richardson Dep. at 232:14-233:21 and Ex. 7; Ex. F., February 12, 2016 Richardson Dec. at Ex. C). Cerner has included certain commission and Cerner Performance Plan (CPP) payments since before the lawsuit was filed (and continues to do so). (See Richardson Dep. at 232-233 and Ex. 7). Cerner has included Night Differential and Security Differential - ARM in the regular rate

4

calculation for its nonexempt employees since May 2012. (Ex. E, Richardson Dep. at 232:14-233:21, 95:10-97:1, Ex. 7). Cerner has included *ITWorks* on-call payments since August 2014 and Evening Differential – Flat and Weekend Differential – Flat since December 2015. (*Id*.). The Wellness Incentive, on the other hand, has been excluded from regular-rate calculations at all times relevant to this lawsuit. (*Id*. at 95:10-97:1, Ex. 7). Setting the Wellness Incentive to the side, the number of employees in Missouri who received various pay types Plaintiffs highlight ranges from one (Holiday Differential) to 47 (*ITWorks* on-call pay) to 50 (Night Differential). (Ex. F., February 12, 2016 Richardson Dec. at Ex. B).

Determining whether a certain type of additional compensation should be included or excluded from the regular-rate calculation is a multi-factorial analysis and is done on a pay-type by pay-type basis. (Ex. E, Richardson Dep. at 57:23-25; 134:14-136:6). When deciding whether to include or exclude a specific pay type when making regular rate calculations, Cerner analyzes the type of pay at issue, the group that is receiving it, and the way the pay is calculated (*e.g.,* flat rate versus percentage), then consults with Payroll, Accounting, Compliance, and/or Legal depending on the circumstances. (*Id*. at 134:14-136:6; *see also id*. at 201:9-21).

## CERNER'S RESPONSE TO PLAINTIFFS' PURPORTED STATEMENT OF FACTS

Plaintiffs continually claim that the very existence of a centralized payroll group at Cerner means all nonexempt employees are treated the same with regard to the calculation, timing, and treatment of their pay. But a review of the true factual record reveals that argument is unsupported. (*See* Docs. #107 (Opp. to Cond'l Cert.), #142 (MSJ - Pay Types Not Received by Pls.), and #104 (MSJ - Wellness Incentive)). Plaintiffs also continue to ignore that their three proposed classes are not predicated on any practice that was actually unlawful. (*See* Doc. #104 (Mot. for Judgment – FWW), #107 (Opp. To Cond'l Cert.), and #140 (MSJ – Wellness Incentive)). Plaintiffs' remaining factual arguments are largely immaterial and irrelevant to

5

Plaintiffs' Motion. Further, because Plaintiffs' Motion is not a dispositive motion, Cerner need not reply to each fact individually. *See* Local Rule 56.1 (only suggestions in opposition to motions for summary judgment require a party to specifically controvert facts in dispute).

## ARGUMENT

## I.    PLAINTIFFS' CLASSES FAIL RULE 23'S STRICT REQUIREMENTS

Plaintiffs seek to certify three Missouri Minimum Wage Law ("MMWL") classes under Rule 23(b)(3):

### 1.    MISCALCULATED OVERTIME CLASS

All non-exempt persons employed by Cerner in Missouri, at any time since March 5, 2012 through the final judgment in this matter, who received overtime compensation that was calculated upon a "regular rate" of pay that excluded On-Call Pay, Wellness Incentive Bonuses, Night Differentials, Security Differentials- ARM, Retro Wellness Incentives, and/or Holiday Differential Pay.

### 2.    LATE PAYMENT OF OVERTIME COMPENSATION CLASS

All non-exempt persons employed by Cerner in Missouri, at any time since March 5, 2012 through the final judgment in this matter, whose overtime compensation was not paid on the next regular payday for the period in which the overtime work was performed.

### 3.    FLUCTUATING WORK WEEK ("FWW") CLASS

All non-exempt persons employed by Cerner in Missouri, at any time since March 5, 2012 through the final judgment in this matter, who were purportedly compensated based on the fluctuating work-week method of pay and: (i) whose overtime compensation was not paid on the next regular payday for the period in which the overtime work was performed; and/or (ii) who were paid additional compensation beyond their "fixed" salary.

(Doc. #153 at pp. 11-12).[2]  The substance of these classes either duplicates or is narrower than Plaintiffs' proposed FLSA classes.[3] Earlier today, the Court denied conditional certification of

---

[2] Both the miscalculated overtime class and the FWW class articulated by Plaintiffs in their Motion vary from the proposed classes set out in their Amended Complaint. (Doc. #39 at ¶80). The miscalculated overtime class has been limited to six pay types. The FWW class previously included all Missouri employees who were paid under the FWW method and "whose overtime rate of pay did not include all statutorily required remuneration within Defendant's calculation of his/her 'regular rate' of pay."  (*Id*.).

6

Plaintiffs' FWW class under the FLSA. (*See* Doc. #165). For the same reasons stated in the Court's ruling and the other reasons stated herein, certification of Plaintiffs' FWW class should also be denied under Rule 23. Additionally, under the more stringent standards of Rule 23 and based on the factual record now developed, certification of Plaintiffs' remaining classes under Rule 23 also must be denied.

### A.    Standard of Review

"Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013).[4] The Supreme Court has explained that a class should not be certified until the district court concludes, "after a rigorous analysis," that the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—are met. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

When, as here, Plaintiffs seek certification under Rule 23(b)(3), the inquiry "is even more demanding." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Satisfying Rule 23(b)(3) requires Plaintiffs to demonstrate that: (1) common questions of law and fact predominate over questions affecting individual class members, and (2) a class action is superior to other means of adjudicating the controversy. *See Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023, 1029 (8th Cir. 2010); *McClean v. Health Sys., Inc.,* No. 11-03037-CV-S-DGK, 2012 WL 607217, at *6 (W.D.

---

[3] Plaintiffs' stated claims duplicate federal law. The miscalculated overtime and FWW claims are dependent upon Plaintiffs' theory that the Missouri Minimum Wage Law ("MMWL") incorporates the FLSA and its regulations regarding overtime calculation. Mo. Rev. Stat. § 290.505(4). And Plaintiffs' late-overtime claim actually disregards the MMWL's payroll timing statutes, Missouri Revised Statute Sections 290.080 and 290.090, in favor of a Department of Labor interpretive bulletin, 29 C.F.R. Section 778.106, requiring employers to calculate and pay overtime "as soon as practicable." In fact, the Court relied upon this DOL bulletin to save Plaintiffs' state late-overtime claim from early dismissal, observing that "[t]he MMWL is to be applied consistently with the FLSA." (Doc. #77).

[4] The Court's ruling on conditional certification specifically noted that the Court relied on a "lenient standard" under the FLSA (Doc. #165 at p. 9) that is inapplicable here. Even under the lenient standard, the Court denied conditional certification of Plaintiffs' proposed FWW class. (*Id.* at p. 20).

Mo. Feb. 23, 2012). The predominance inquiry must begin "with the elements of the underlying cause of action," *Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S. Ct. 2179, 2184 (2011), and focus on whether the requirements to prove the claim reveal "'some fatal dissimilarity' among class members that would make use of the class-action device inefficient or unfair," *Amgen, Inc. v. Conn. Ret. Plans & Trust*, 133 S. Ct. 1184, 1197 (2013); *see also Blades v. Monsanto Co*., 400 F.3d 562, 566-67 (8th Cir. 2005). Plaintiffs bear the burden of showing that each Rule 23 requirement is met. *Luiken v. Domino's Pizza*, LLC, 705 F.3d 370, 372 (8th Cir. 2013). And Plaintiffs have failed for each of their proposed classes at each and every step.

### B. Plaintiffs Classes Fail Ascertainability

The very first step for a Rule 23 motion—before addressing the enumerated requirements of the Rule—is to determine "whether the class exists," "is capable of legal definition," and is therefore "readily identifiable." *Vietnam Veterans Against the War v. Benecke*, 63 F.R.D. 675, 679 (W.D. Mo. 1974); *see also EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (discussing the "ascertainability" requirement of Rule 23 class certification); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592–94 (3d Cir. 2012).

> [T]he requirement that there be an identifiable class demands more than just an objective definition, and more than just meeting the threshold requirement of theoretical ascertainability; the requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.

*Dumas v. Albers Med., Inc.*, No. 03-0640-CV-W-GAF, 2005 WL 2172030, at *5 (W.D. Mo. Sept. 7, 2005). "If class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." *EQT Prod. Co.,* 764 F.3d at 358 (alterations and citations omitted); *In re Express Scripts, Inc.*, No. 4:05-MD-01672-HEA, 2015

8

WL 128073, at *2 (E.D. Mo. Jan. 8, 2015). Each of Plaintiffs' proposed classes fails prematurely under the ascertainability analysis.

### 1. The miscalculated overtime class is not ascertainable

"A class should not be certified if it is defined in such a way 'that it contains a great many persons who have suffered no injury at the hands of the defendant.'" *Mayo v. USB Real Estate Sec., Inc.*, No. 08-00568, 2012 WL 4361571, at *2 (W.D. Mo. Sept. 21, 2012) (citing *Kohen v. Pacific Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009)). Currently pending is Cerner's Motion for Summary Judgment arguing that Plaintiffs lack Article III standing to assert claims based on pay types other than *ITWorks* on-call pay and the Wellness Incentive, the only pay types they or either opt in received. (*See* Docs. ##141, 142). Also currently pending is Cerner's Motion for Partial Summary Judgment regarding Plaintiffs' claims related to the Wellness Incentive. The motion asserts, among other things, that the Wellness Incentive is not remuneration for employment and, even if it was, it was exempt from inclusion in the regular rate. (*See* Docs. ##105, 106). If Cerner wins both motions, the only pay type left with respect to which Plaintiffs could bring a "miscalculated overtime" claim would be *ITWorks* on-call pay.

Even if Cerner's motions are denied, Plaintiffs' broad purported class cannot be certified. For every pay type at issue, the Court would need to (1) determine whether each pay type was remuneration for employment, and, if so, (2) review the nature and purpose of the remuneration, and the facts and circumstances surrounding its payment, and accordingly determine whether it falls within one of eight statutory exemptions. *See* 29 U.S.C. § 207(e)(1-8). Only after assessing liability for each individual pay type could the Court determine who is a member of the purported class. Indeed, the Eighth Circuit has noted that "the 'remuneration for employment' determination [in an FLSA analysis] is a highly fact-intensive question that focuses narrowly on the specific operation of the program at issue." *Acton v. City of Columbia, Mo.*, 436 F.3d 969,

9

979 n.11 (8th Cir. 2006). Determining who is properly in the class would require numerous "mini-trials" to determine whether the additional compensation employees received was properly excluded. *See Janson v. LegalZoom.com, Inc.*, 271 F.R.D. 506, 512 (W.D. Mo. 2010) (A "class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class.").

Cerner anticipates Plaintiffs will urge this Court to address this issue by, for example, limiting the class to individuals who received "additional compensation that should have been included in the regular rate of pay" or some similar definition. However, such a definition of the class would create an impermissible "fail-safe class": a class member either wins the legal issue, or is defined out of the class and therefore is not bound by the outcome of the litigation. *See Mayo v. USB Real Estate Sec., Inc.*, 2012 WL 4361571, at *2 ("[A fail-safe] class is improper because the 'class member either wins, or by virtue of losing, is defined out of the class and is therefore not bound by the judgment.'"). Such a "fail-safe" class cannot be certified.[5] For all of these reasons, Plaintiffs' miscalculated overtime class is not ascertainable, and this Court should deny Plaintiffs' Motion to certify this class.

### 2.     The late overtime payment class is not ascertainable

Plaintiffs' proposed late overtime payment class also fails. As will be more fully set out in a separate motion regarding the legality of Cerner's payment schedule, neither the MMWL nor the FLSA sets a payment schedule or requires payment of regular wages and overtime in the same paycheck or on the same day. The only deadline set by the Missouri legislature is found in a criminal statute—there is no corresponding private right of action. To the extent the Court looks to federal law instead, the Department of Labor has suggested monthly payments are

---

[5] Cerner cannot anticipate every possible limitation to the class definition Plaintiffs may suggest and respectfully requests the right to brief opposition to alternative class definitions offered.

10

consistent with the FLSA. Because Cerner's pay schedule is consistent with this guidance, there is no argument its pay schedule violated the MMWL (let alone the FLSA) regardless of an employees' individual circumstances and compliance with Cerner's time submission policy.

Because even the interpretive bulletin Plaintiffs argue applies,[6] 29 C.F.R. § 778.106, calls for a determination of what can be accomplished by an employer "as soon after the regular pay period as practicable," Cerner is entitled to demonstrate that particular employees turned in their time cards late so that overtime was paid as soon as practicable. Indeed, Plaintiff Speer did not comply with Cerner's time submission policy and submitted his time anywhere from 1 to 3 days late 18 out of the last 37 weeks he worked at Cerner (Doc. #153, Pls.' Mot., Speer Pay Records, at Ex. 12, at pp. 30-66), meaning he suffered no ascertainable injury with respect to at least those 18 weeks, if not others. An examination of this issue for each purported class member would necessitate a fact-specific inquiry into each employee's submission of his or her time card. Both Plaintiffs also dispute even the existence of the 11:59 p.m. Saturday deadline for time submission based on statements by their particular managers or co-workers. Were this class certified, this issue also would need to be addressed for each class member. Further, certain pay periods may have involved holidays, system processing issues, or intervening events such that Cerner met the "as soon as practicable" threshold for those pay periods. Whether an individual actually suffered an injury in any given pay period and is properly a member of the class would accordingly require individual mini-trials, not only by the individual, but by the pay-period. *See Mayo*, 2012 WL 4361571, at *2. Yet to narrow the class, for example, to only those individuals who played no role in the delay of their overtime—or for only those pay periods that did not involve intervening holidays or system issues—would not only necessitate many fact-specific inquiries,

---

[6] Cerner does not agree that federal interpretive bulletins are applicable, any more than the absence of a state statute or regulation describing the certification process means § 216(b) applies to the state law claims.

but also create a fail-safe class, which is impermissible. *Id*. For all these reasons, the late overtime payment class is not ascertainable and this Court should deny Plaintiffs' Motion to certify this class.

### 3. The FWW class is not ascertainable

Plaintiffs claim alternating factual bases for their claimed "Fluctuating Work Week Class." In Plaintiffs' proposed class definition they give the Court two independent bases for their proposed class: (1) Cerner's alleged late payment of overtime "and/or" (2) employees receiving "additional compensation beyond their 'fixed' salary." (Doc. #153, Pls.' Mot. at pp. 11-12). In their Complaint, Plaintiffs also allege a theory that is duplicative of their "miscalculated overtime" class as a basis for their FWW claims (Doc. #39 at ¶80) and mention this theory at least once in their certification motion. (Doc. #153 at pp. 17-18). Plaintiffs cannot collect a group of disparate factual circumstances and lump them into a class. Regardless, each of these theories fails under the ascertainability prong.

The two redundant theories Plaintiffs advance (alleged late payment of overtime and alleged miscalculation of overtime) do not result in ascertainable classes for the same reasons addressed above. Plaintiffs' last theory is that the Court should certify a class of Cerner's SNE employees paid under the FWW method who were paid additional compensation of any type. However, use of the FWW method of payment is not a separate injury that would entitle a class member to any relief. *See* Order at Doc. #165, pp. 15, 20; *see also* Cerner's Motion for Judgment on the Pleadings, Doc. #104.

Plaintiffs have relied extensively on the First Circuit's opinion in *O'Brien v. Town of Agawam,* 350 F.3d 279 (1st Cir. 2003), to try and bind this group together, arguing that Cerner's payment of even $1 additional compensation to any employee compensated under the FWW violates the law. The First Circuit, however, recently rejected Plaintiffs' interpretation of

12

*O'Brien*. In *Lalli v. General Nutrition Centers, Inc*., the First Circuit addressed an argument identical to what these Plaintiffs must demonstrate in order to win class certification of their FWW class:

> Plaintiff tries to draw a broader lessen from the O'Brien language and argues that *any additional form of compensation* that must be factored into the employee's regular rate removes the pay scheme as a whole from the purview of section 778.114 because employees must receive a 'fixed amount' for straight-time labor each week.

No. 15-1199, -- F.3d --, 2016 WL 563071, at *5 (1st Cir. Feb. 12, 2016) (emphasis added). The court rejected the plaintiff's argument that payment of *any* additional form of compensation was inconsistent with the FWW method of payment. Instead, it recognized that payment of certain types of compensation was permissible under the law, as this Court recently recognized. *Id*. at *5-6; *see also Wills v. RadioShack Corp.*, 981 F.Supp.2d 245, 255-258, 263 (S.D.N.Y 2013) (collecting cases and holding that performance bonuses are permissible in conjunction with the FWW); Doc. #165. Stripped of this theory, Plaintiffs are left with their two redundant theories addressed above. Plaintiffs' FWW class is not ascertainable, and the Court should deny Plaintiffs' Motion to certify this class as well.

### C. Plaintiffs' Proposed Classes Fail Rule 23(a)'s Criteria

If this Court decides to probe past the ascertainability threshold, Plaintiffs' classes are deficient with respect to every prong of Rule 23(a)'s requirements.

#### 1. Numerosity Fails

Each of Plaintiffs' classes fail Rule 23(a)(1)'s requirement that "the class is so numerous that joinder of all members is impracticable."

As more fully discussed below, the classes are not as numerous as Plaintiffs suggest because the filing of the instant complaint over two years ago did not toll the statute of limitation

on any putative class member's state law claims. *See Thomas v. U.S. Bank NA ND*, 789 F.3d 900, 903 (8th Cir. 2015) (noting that Missouri state law does not recognize equitable tolling in class actions); *infra* Section I.C.3. Many of the pay practices at issue in this litigation have changed over time, including the calculations of the regular rate of pay with regard to Night Differential and Security Differential – ARM (May 2012), *ITWorks* oncall pay (August 2014), Evening Differential – Flat and Weekend Differential – Flat (December 2015) and the pay schedule applied to SNE employees (Summer 2014) (*see* Ex. E, Richardson Dep. at Ex. 7; Richardson Dep. at 148:22-150:21), so that the number of employees purportedly in each class are far smaller than Plaintiffs propose. Indeed, even going back to March 5, 2012, only 47 employees in Missouri received *ITWorks* on-call pay, and that number will be smaller for the period going back two years from a certification decision.

As addressed above, Cerner has moved for judgment that Plaintiffs lack Article III standing to assert claims based on pay types other than *ITWorks* on-call pay and the Wellness Incentive (*see* Docs. ##141, 142). But even if Plaintiffs could assert claims based on other pay types, many of those classes would fail the numerosity requirement. The number of employees in Missouri who received various pay types from March 2012 to the present ranges from one (Holiday Differential) to 22 (Security Differential – ARM) to 50 (Night Differential). (Ex. F, February 12, 2016 Richardson Dec. at Exhibit B). *See Californians for Disability Rights, Inc. v. California Dept. of Transp.*, 249 F.R.D. 334, 347 (N.D. Cal. 2008) (noting that precedent suggests that 20-40 class members is in the "grey area for numerosity.") (citations omitted). Those numbers will be lower given that the statute of limitations has not been tolled.

### 2. Commonality Fails

Contrary to the pre-2011 case law cited by Plaintiffs, the Supreme Court's decision in *Wal-Mart* dramatically altered the manner in which a court must evaluate the commonality prong

of Rule 23(a)(2). "To satisfy Rule 23(a)(2)'s commonality requirement the plaintiff must do more than show the presence of common questions of law or fact." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) (noting that "[a]ny competently crafted class complaint . . . raises common 'questions.'") (citation omitted). Plaintiffs must show that there are common questions with "common answers apt to drive the resolution of the litigation" for the proposed class as a whole. *Id.* (quotation omitted). The class claims "must depend on a common contention" which is "of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve the issue that is central to the validity of each one of the claims in *one stroke*." *O'Shaughnessy v. Cypress Media, L.L.C.*, No. 4:13-CV-0947-DGK, 2015 WL 4197789, at *6 (W.D. Mo. July 13, 2015) (emphasis added) (citing *Wal-Mart*, 131 S. Ct. at 2551).

Plaintiffs suggest the commonality requirement for all three classes can be met by simply asserting uniform policies or pay practices existed at Cerner. But the Supreme Court has disavowed such a lackadaisical approach to commonality: "What matters to class certification…is not the raising of common 'questions'—even in droves—but, rather the capacity of class wide proceedings to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551; *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 374-76 (8th Cir. 2013) (applying *Dukes* and reversing certification where interaction with customers meant liability was "dominated by individual issues.").

Here, discovery has proven Plaintiffs' uniform policy or pay practices allegations false for both the "miscalculated overtime" and "fluctuating workweek" classes, as no universal policy existed at Cerner that required the exclusion of all additional compensation from non-exempt associates' regular rate of pay when calculating overtime premiums. (*See* Docs. ##141, 142).

15

Rather, each pay type would require a separate mini-trial to determine if it was both properly excluded from regular-rate calculations and permissible in conjunction with the FWW method of overtime calculation. Regarding Plaintiffs' "late overtime" theories, even assuming that the Department of Labor's interpretive bulletin in 29 C.F.R. § 778.106 mandates overtime be paid at the same time regular pay is issued, the Court (or jury) would be required to determine on a case-by-case basis whether Cerner delayed paying overtime longer than "reasonably necessary." As noted above, litigation over this issue would necessitate a fact-specific inquiry into each employee's submission of his or her time card, along with various other factors. For all three classes, common answers are therefore unlikely to resolve anything in the litigation.

### 3. Typicality fails

The third requirement Plaintiffs must prove under Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "The presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006) (citing *Parke v. First Reliance Standard Life Ins. Co.,* 368 F.3d 999, 1004-05 (8th Cir. 2004)). The representative plaintiffs cannot show typicality where the question of liability can only be ascertained on an individualized basis for each class member. *Parke v. First Reliance Stand. Life Ins. Co.,* 368 F.3d at 1004-05. "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiffs, so goes the claims of the class*." Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). Plaintiffs cannot prove typicality as to any of their three classes.

### a. Plaintiffs' claims are not typical with respect to the miscalculated overtime class

With respect to their so-called "miscalculated overtime" claims, Plaintiffs' claims are not "typical" of the class they seek to represent because Plaintiffs lack Article III standing to assert many of the claims they brought on behalf of the class. (*See* Docs. ##141-142; *see also See Elizabeth M.*, 458 F.3d at 787 (citing *East Texas Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.")). Even setting standing to the side, the class representatives' testimony must be typical and representative of the claims in the suit. *See White v. 14051 Manchester Inc.*, 301 F.R.D. 368, 381 (E.D. Mo. 2014) (citations omitted). Without such testimony, "the typicality and adequacy of representation factors have not been met." *Id.*

Cerner utilizes more than 40 types of pay for its non-exempt workforce (*see* Ex. E, Richardson Dep. at Exs. 6-7) and determines whether to include or exclude a particular pay type from regular rate calculations on a pay-type by pay-type basis, considering multiple factors. (*See* Doc. #142, p.4; Doc. #164; Ex. E, Richardson Dep. at 134-136; *see also id.* at 201:9-21). In assessing liability, the Court would need to individually examine the criteria under 29 U.S.C. § 207(e)(1-8) for each pay type. Such an assessment with respect to *ITWorks* on-call pay would have no relevance with respect to the Wellness Incentive (for example)—a different type of pay that served a different purpose, was paid in a different way, and was given to a different group of employees. Similarly, "proof" of Plaintiffs' *ITWorks* on-call and Wellness Incentive claims (the only claims they have) would have no bearing on the claims of any class member who received the Night Differential, Holiday Differential, or any other pay type. Because proof of any violation would require individualized inquiry into each pay type, and Plaintiffs received only two, typicality is not satisfied. *See Elizabeth M.*, 458 F.3d at 787 ("The presence of a common

Case 4:14-cv-00204-FJG   Document 166   Filed 03/30/16   Page 24 of 34

legal theory does not establish typicality when proof of a violation requires individualized inquiry.") (citation omitted).

> **b.** **Plaintiffs' claims are not typical with respect to the late payment class**

Plaintiffs Speer and McGuirk have not shown that their late payment of overtime claims are typical of purported class members' claims. Even assuming that the Department of Labor's interpretive bulletin in 29 C.F.R. § 778.106 mandates that overtime be paid at the same time regular pay is issued, the Court still must determine on a case-by-case basis whether Cerner delayed paying overtime longer than "reasonably necessary." That assessment will require the Court to determine *when* Plaintiffs and putative class members submitted their time sheets and *whether* Cerner's timing in making payment was "reasonable" in light of that fact. Plaintiff Speer submitted his time sheets late 18 out of the last 37 weeks he was employed by Cerner. (*See* Doc. #97, Ex. 10 pp. 30-66). "A proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation." *In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999). Because these assessments are necessarily individualized, Plaintiffs' claims will not be typical of other purported class members' claims.

> **c.** **Plaintiffs' claims are not typical with respect to the FWW class**

Stricken of their theory that payment of any extra compensation—no matter the reason or circumstances—violates the law (*see* Section B(3), *supra*), Plaintiffs are left with a class that is identical to their miscalculated overtime and their late payment of overtime classes. Plaintiffs' claims are not typical of those classes' claims for all of the reasons addressed above.

Even if Plaintiffs had a viable argument that Cerner is prohibited from paying any FWW employee even $1 above his or her fixed salary and overtime—which the Court has already determined they do not (Doc. #165)—the foundational question under 29 C.F.R. § 778.114 is

whether "there is a clear mutual understanding of the parties." Both Plaintiffs testified they did not understand how they were paid under the FWW method of pay. (Speer Dep., at pp. 47:23-48:12, 51:9-52:4; McGuirk Dep., at pp. 63:4-25, 79:8-80:13). Plaintiffs' and class members' state of mind regarding the FWW method of pay necessarily requires an individualized analysis. Plaintiffs' lack of understanding about their pay prohibits their claims from being typical of the class. *Evans v. Lowe's Home Centers, Inc.*, No. 3:CV-03-0438, 2006 WL 1371073, at *9 (M.D. Pa. May 18, 2006).

### 4. Adequacy Fails

The adequacy requirement of Rule 23(a)(4) focuses on "whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982). As an initial matter, and for all of the reasons discussed above, Plaintiffs' interests are not similar to the interests of the purported class members—Plaintiffs do not possess many of the claims they are trying to assert on others' behalf and/or Plaintiffs' claims turn on different factual determinations.

Further, Plaintiffs' delay in prosecuting this action has negatively impacted the purported class members' claims, rendering Plaintiffs inadequate class representatives. This case has been pending for more than two years, during which Plaintiffs have conducted a total of two depositions and engaged in only limited discovery, all of which revealed many of Plaintiffs' claims lack merit. *See*, e.g., Docs. ##103, 105, 141. Significantly, recent Missouri and Eighth Circuit caselaw limits absent class members' damages under the MMWL to two years from the time class certification is denied (or granted)—and this will significantly limit (or bar) many purported class members' claims.

The Eighth Circuit recently concluded that Missouri does not follow the tolling rules articulated in *American Pipe & Construction v. Utah*, 414 U.S. 538 (1974). In *Thomas v. U.S. Bank N.A.*, 789 F.3d 900, 903 (8th Cir. 2015), the Eighth Circuit held that federal courts must apply state law regarding the statute of limitations, including state tolling laws.[7] The court held: "The Missouri Supreme Court has recently clarified that 'American Pipe involved the tolling of individual federal actions while a federal class action was pending to preserve the underlying purpose of the class action procedure' but under Missouri law 'statute[s] of limitations may be suspended or tolled only by specific disabilities or exceptions enacted by the legislature and the courts are not empowered to extend those exceptions.'" *Id.* (quoting *Rolwing v. Nestle Holdings, Inc.*, 437 S.W.3d 180, 184 (Mo. 2014) (*en banc*), and *Shelter Mut. Ins. Co. v. Dir. of Rev.*, 107 S.W.3d 919, 923 (Mo. 2003) (*en banc*)).[8]

The Eighth Circuit made clear that the Missouri Supreme Court does not recognize *American Pipe's* holding that the filing of a class action complaint tolls the statute of limitations applicable to the claims of absent class members—because only the Missouri legislature can determine whether to adopt equitable tolling in a particular case. *Id.* (citing *Ambers–Phillips v. SSM DePaul Health Ctr.*, 459 S.W.3d 901 (Mo. 2015) (*en banc*) (noting that prior cases "have emphasized that it is up to the legislature to determine whether to adopt a discovery rule or

---

[7] This Court has supplemental jurisdiction over Plaintiffs' MMWL claims under 28 U.S.C. § 1367, and is bound by Missouri law on Plaintiffs' Missouri state law claims. (*See* Doc. #39 p. 2).

[8] In *Bray v. Simon & Schuster, Inc.*, No. 4:14-cv-00258-NKL, 2014 WL 2893202 (W.D. Mo. June 25, 2014), the court remarked that *American Pipe* tolling might not apply to Missouri state law claims. The court noted: "The federal-court rule that statutes of limitations are subject to equitable tolling, from the time a class action is filed until certification is denied, has its origins in *American Pipe & Construction v. Utah*, 414 U.S. 538 (1974). But when a federal court sits in diversity jurisdiction, as in the instant case, the tolling rule comes from the state whose law is being applied." *Id.* at *2 (citing *Great Plains Trust Co. v. Union Pacific R. Co.*, 492 F.3d 986, 995 (8th Cir.2007)). Judge Laughrey remarked that the Missouri Supreme Court had recently suggested that Missouri does not follow the *American Pipe* tolling rule. *See id.* at *3. Judge Laughrey's comments in *Bray* were issued before the Eighth Circuit's decision in *Thomas*.

Case 4:14-cv-00204-FJG   Document 166   Filed 03/30/16   Page 27 of 34

equitable tolling in a particular case because 'a statute of limitations may be suspended or tolled only by specific disabilities or exceptions enacted by the legislature and the courts are not empowered to extend those exceptions.'")). The Missouri legislature has not enacted a law that would toll the absent class members' MMWL claims upon the filing of Plaintiffs' Complaint, and *American Pipe* does not apply. Many purported class members' claims under the MMWL will accordingly be time-barred. Many other purported class members' claims will be severely limited in scope considering Cerner changed two policies critical to Plaintiffs' arguments (*ITWorks* on-call pay and timing of overtime payments) more than a year and a half ago. (*See* Richardson Dep. at Ex. 7; Richard Dep. at 148:22-150:21). Plaintiffs' failure to prosecute this action in a timely manner renders them inadequate class representatives.[9]

### D. Plaintiffs' Proposed Classes Fail Rule 23(b)(3)'s Criteria

Plaintiffs seek certification under Rule 23(b)(3), which requires that: "1) common questions predominate over any questions affecting only individual members; and 2) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy." *Blades v. Monsanto Co.,* 400 F.3d 562, 569 (8th Cir. 2005); *McClean*, 2012 WL 607217, at *6. Each of Plaintiffs' proposed classes fails both the predominance and superiority tests.

#### 1. Predominance Fails

The predominance requirement is a stricter version of the Rule 23(a) commonality requirement. *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 89 (S.D.N.Y. 2001); *see also Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). The Eighth Circuit has noted that predominance is not shown "[i]f, to make a prima facie showing on a given question, the

---

[9] This failure is not unlike Plaintiffs' failure to file their written consents under Section 216(b) of the FLSA until October 8, 2015. (*See, e.g.*, Doc. #107 pp. 7-9; 12-14). That fact limits Plaintiffs' own FLSA claims to three-year willful claims, as any non-willful, two-year claim they had is time-barred.

members of a proposed class will need to present evidence that varies from member to member…" *Blades*, 400 F.3d at 566. Only if "the same evidence will suffice for each member to make a prima facie showing" will the predominance requirement be met. *White*, 301 F.R.D. at 382 (citations omitted). Even if Plaintiffs could show commonality for any of their proposed classes, which they cannot, their Motion fails at predominance.

### a. Plaintiffs have not proven that damages are capable of measurement on a class-wide basis

As an initial matter, predominance is not met when "liability cannot be proved on a classwide basis without thwarting [Cerner's] ability to demonstrate that some class members, due to a variety of circumstances, did not actually experience" any injury. *See Stiller v. Costco Wholesale Corp.,* 298 F.R.D. 611, 628 (S.D. Cal. 2014) (citation omitted). "The Supreme Court's decision in *Comcast* makes clear that individualized damages determinations can defeat Rule 23(b)(3)'s predominance requirement." *Id.* (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1435 (2013)); *see also Brown v. Electrolux Home Prods., Inc.*, No. 15-11455, -- F.3d --, 2016 WL 1085517, at *10 (11th Cir. Mar. 21, 2016) (noting that "individual damages defeat predominance if computing them will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable.") (internal citations omitted).

In *Comcast*, the Supreme Court held that to obtain class certification, a plaintiff must present a damages model that comports with substantive law and a theory of liability capable of proof through common evidence. *Comcast*, 133 S. Ct. at 1432-33. The plaintiffs in *Comcast* did present a model for estimating damages, but the Court found it to be incapable of distinguishing whether damages a class member suffered were sufficiently tied to the plaintiffs' theory of class-wide liability. *Id.* at 1431. The Supreme Court found that it was not enough simply to propose any "'method to measure and quantify damages on a class-wide basis,'" because such logic

would mean that any arbitrary method would suffice, rendering Rule 23(b)(3) a "nullity." *Id*. at 1433 (citation omitted). The Court explained that, even if a model can establish the presence of damages class-wide, it must also reliably measure the extent of injury for each class member to satisfy Rule 23(b)(3). *Id*. at 1435 n.6.

Although Plaintiffs are not required at the class-certification stage to prove specific damages for each member of the class, Plaintiffs are required to prove at this stage that damages are quantifiable on a class-wide basis using common proof. *See id*. at 1432. Here, Plaintiffs have failed to offer any damages model whatsoever, much less prove they have one that comports with substantive law and with a theory of liability capable of common proof as *Comcast* necessitates. Indeed, Plaintiffs dedicate one sentence of their motion for certification to the issue of proving damages on a class-wide basis: "These same 'Cerner pay records' even reveal the full extent of any damages, rendering individualized inquires of class members unnecessary…" (Pls.' Br. at 20-21). This is insufficient. As one circuit court has aptly stated: "no damages model, no predominance, no class certification." *In re Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013).

### b. Common questions do not predominate the miscalculated overtime class

Even if Plaintiffs could overcome the insurmountable obstacle presented by their failure to advance a damage theory, each of their three proposed classes still fails the predominance inquiry. Under the *Acton* test, to determine if each of the pay types Plaintiffs include in their class definition qualifies as "additional remuneration," the Court must undertake a narrow, fact-intensive inquiry. *Acton*, 436 F.3d at 979 n.11; *see* Section I(B)1, *supra*. Additionally, to the extent individuals received other payments that entitle Cerner to set-off damages, these facts further individualize the inquiries. This myriad and varied evidence would predominate this case

Case 4:14-cv-00204-FJG   Document 166   Filed 03/30/16   Page 30 of 34

at trial, not common proof to common questions. *See Stiller*, 298 F.R.D. at 628. As a result, Plaintiffs' miscalculated overtime class fails predominance.

### c. Common questions do not predominate the late payment class

Similarly, Cerner has a right to present defenses to any individual's claim that overtime was paid late, including that time sheets were turned in late, that certain pay periods involved holidays, system processing issues, or intervening events so that overtime was, in fact, paid as soon as practicable. Moreover, Cerner has the right to offer proof of setoffs that reduce or eliminate damages to individual plaintiffs. For all these reasons, common proof cannot determine either liability or damages. *See Stiller*, 298 F.R.D. at 628.

### d. Common questions do not predominate the FWW class

Because the FWW class is a composite of subsets of the other two classes, it suffers the same lack of predominance. Further, and to the extent Plaintiffs argue the fact that they were paid by the FWW method adds a level of commonality to this class, they are wrong. The proper use and application of the FWW method of payment "inevitably goes to the state of mind of both parties" and defeats commonality. *Evans*, 2006 WL 1371073, at *9.

### 2. Superiority Fails

The second inquiry under Rule 23(b)(3) requires the Court to determine whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy," considering:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3)(A)-(D).

As an initial matter, Plaintiffs' failure to even mention a trial plan for addressing how their class claims could be tried requires denial of their motion. As the proponents of class certification, Plaintiffs shoulder the obligation of explaining how the Court could practically try the "claims, issues, and defenses" in this case to judgment without running afoul of the substantive and procedural constraints on collective adjudications. FED. R. CIV. P. 23(c)(1)(B); *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 202 (3d Cir. 2009) (class proponents must present and support a workable plan before a judicial determination on propriety of class certification). Plaintiffs fail to offer any such plan.

Moreover, a class action is not the superior method of adjudicating this small number of potential claims. As discussed above, Plaintiffs are incorrect that the number of putative class members in each of the classes is "in the thousands." *See* Section I(C)1. Indeed, it is possible that "miscalculated overtime" class for *ITWorks* on-call pay is much smaller than the 47 employees who received that pay type since March 2012. Thus, unlike the *Ingersoll* case cited by Plaintiffs where a class action was superior to "potentially over 1,000 separate lawsuits," no similar possibility is present in this case. *See Ingersoll v. Farmland Foods, Inc.*, No. 10-CV-6046-FJG, ECF 140, at *19 (W.D. Mo. Feb. 9, 2012).

## CONCLUSION

Plaintiffs' proposed state law classes should not be certified. Plaintiffs have alleged unascertainable classes, which each fail the requirements of numerosity, commonality, typicality, and adequacy. And even if Plaintiffs had been able to demonstrate a prima facie showing on these threshold elements, their classes fatally stumble at Rule 23(b)(3)'s requirements of predominance and superiority. This Court should deny Plaintiffs' Motion as to all three proposed classes.

Dated: March 30, 2016

Respectfully Submitted,

SHOOK, HARDY & BACON L.L.P.

By: /s/ Amy M. Crouch
       Lori R. Schultz, #37218
       Amy M. Crouch, #48654
       Michael B. Barnett #62742
       Brent Dwerlkotte #62864
       2555 Grand Blvd.
       Kansas City, Missouri 64108-2613
       Ph. 816.474.6550
       Fax: 816.421.5547
       lschultz@shb.com
       amcrouch@shb.com
       mbarnett@shb.com
       dbdwerlkotte@shb.com

*Attorneys for Defendant Cerner Corporation*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 30th day of March, 2016, a true and correct copy of the foregoing was served via operation of the Court's ECF system upon the counsel below:

REAVEY LAW L.L.C.

DAVIS GEORGE MOOK L.L.C.

Patrick Reavey
Kevin C. Koc
Livestock Exchange Building
1600 Genessee, Suite 303
Kansas City, MO 64102
Ph: 816.474.6300
Fax: 816.474.6302
Email: patrick@reaveylaw.com
Email: kkoc@reaveylaw.com

Brett A. Davis
Tracey F. George
1600 Genessee, Ste. 328
Kansas City, MO 64102
Ph. (816) 569-2629
Fax (816) 447-3939
Email: brett@dgmlawyers.com
Email: tracey@dgmlawyers.com

*Attorneys for Plaintiffs*

*Attorneys for Plaintiffs*

 /s/ Amy M. Crouch
*Attorney for Defendant*