**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

FRED SPEER and MIKE MCGUIRK,   )
individually and on behalf of a class   )
of all others similarly situated,   )
  )
               Plaintiffs,   )
  )    Case No. 14-0204-CV-W-FJG
v.   )
  )
CERNER CORPORATION,   )
  )
           Defendant.   )

<u>**ORDER**</u>

Pending before the Court are (1) Cerner Corporation's Motion for Partial Judgment on the Pleadings on Plaintiffs' Claim that Cerner Violated the FLSA in Using the Fluctuating Workweek Computation (Doc. No. 103); (2) Cerner Corporation's Motion for Partial Summary Judgment on Plaintiffs' Claim the Wellness Incentive Was Not Exempt from the Regular Rate (Doc. No. 105); and (3) Cerner Corporation's Motion for Partial Summary Judgment Regarding Claims Based on Pay Types not Paid to Plaintiffs (Doc. No. 141).

**I.      Background**

Plaintiffs, Frederic Speer and Michael McGuirk, individually and on behalf of themselves and others similarly situated, bring a two-count complaint against Defendant, Cerner Corporation ("Cerner"), alleging that Defendant violated the Fair Labor Standards Act ("FLSA" or "Act") and the Missouri Minimum Wage Law ("MMWL"). Cerner employed both Plaintiffs, Speer and McGuirk, as Service Center Analysists/System Support Analysts ("Desktop Support Staff") at its operation, Tiger Institute for Health Innovation in

Columbia, Missouri. In their Complaint, Plaintiffs allege that Cerner improperly calculated their overtime compensation by using a fluctuating workweek ("FWW") method, which contemplates dividing employees' fixed earnings by the number of hours they worked in a given week to arrive at a regular rate and then adding one-half time (50%) of the regular rate as overtime for all hours over forty. According to Plaintiffs, because they received payments in addition to their fixed salary (on-call bonuses and wellness incentive[1]), these payments invalidated the FWW method, thus entitling Plaintiffs to the statutorily prescribed default overtime rate of one-and-one-half times (150%) of their regular hourly rate. Plaintiffs also complain that Cerner failed to include all remuneration when calculating the regular rate of pay for its employees, and such failure resulted in overtime compensation of less than even the reduced FWW one-half (50%) overtime compensation rate. Furthermore, according to Plaintiffs, even this inadequate overtime compensation was systematically paid late. Plaintiffs claim that as a result of these violations Cerner denied them, as FLSA non-exempt employees, proper and timely overtime pay in violation of FLSA. Doc. No. 39, ¶ 23.

Cerner has filed a Motion claiming that it is entitled to a partial judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, because it properly computed Plaintiffs' overtime pay using the FWW method. See Doc. No. 103. Defendant also filed a separate Motion for a partial summary judgment, asserting that Plaintiffs' claims with respect to the wellness incentive are barred due to the expiration of the statute of limitations and because the wellness incentive is exempt from being considered remuneration under the law. Doc. Nos. 105, 106.  Defendant later filed another motion for

_____

[1] Notably, Plaintiffs' pleadings do not specify the types of payments made.  However, according to defendants, these are the only types of payments made to the named plaintiffs.

partial summary judgment, arguing the named plaintiffs do not have standing to bring claims on behalf of class members for types of pay not received by the named plaintiffs. Doc. No. 141.

On March 30, 2016, the Court granted plaintiffs' motion for conditional certification of a collective action in part. <u>See</u> Doc. No. 165. Specifically, the Court found that plaintiffs met the burden for conditional certification as to "Late Payment of Overtime" and "Miscalculated Overtime" classes. The "Late Payment of Overtime" class includes "all nonexempt persons employed by Defendant in the U.S." from September 7, 2012 to the present, "whose overtime compensation was not paid on the next regular payday for the period in which the overtime work was performed." The "Miscalculated Overtime" class includes all those from September 7, 2012 to the present whose overtime compensation was calculated based on a regular rate of pay that excluded additional remuneration. <u>See</u> Doc. No. 165, Doc. No. 180-1.

## II.    Statement of Facts

### A.    Facts Specific to Wellness Incentive

Plaintiffs allege they received "remuneration" in addition to their salaries and that such remuneration was not exempt from inclusion in the regular rate of pay "under any applicable FLSA statutory exception." Plaintiffs claim that "their own overtime excluded their on-call pay and wellness bonuses," and that the "supporting declaration testimony" of opt-in Scott Sexton provides that he received "additional remuneration for on-call work." (Amended Motion for Conditional Certification (Doc. No. 97), p. 13, citing "SOF at ¶¶ B. 10-12"). The Declaration of Opt-in plaintiff Wyatt Thorpe does not contend that he received any form of additional remuneration. (<u>Id.</u>, Ex. 7).

Cerner offers its employees a health-benefits plan called the Healthe Options

Component Plan (the "Health Insurance Plan"). Cerner offers the Healthe Living with Rewards Program (the "Rewards Program") to employees who participate in Cerner's Health Insurance Plan. Participation in the Rewards Program is voluntary; however, the timing and amount of the wellness incentive payments are non-discretionary.

Defendant asserts that the Rewards Program is intended to encourage employees to make health conscious decisions by offering a reduction of premiums paid in the form of a rebate applied to the following year's premiums. Defendant's representative, however, testified the goals of Cerner's wellness programs, which include the wellness incentive, also include increasing employees' productivity, improving attendance, decreasing the use of sick leave, and decreasing Cerner's health care costs. (Bogorad[2] Depo., Doc. No. 143-1, at 14:2-24).

Defendant attempts to characterize the wellness incentive as an opportunity for eligible participants to reduce their health-benefit premiums for the subsequent year. However, in response to the motion for summary judgment, plaintiffs argue that the wellness incentive does not reduce employees' health care premiums, as the same premium amount is charged regardless of whether an employee earns a wellness incentive. (Bogorad Depo., Doc. No. 143-1, 41:21-42:5, 66:20-24; Fred Speer's Pay Records, Doc. No. 144, Ex. 11). Instead, Cerner takes the full premium from the employee's paycheck, remits it to The Health Exchange, Inc., and then Cerner separately pays the employee a wellness incentive. (Bogorad Depo., Doc. No. 143-1, 41:21-42:5, 66:20-24). The employees must remain employed throughout the subsequent year to receive the full benefit of the wellness incentive.

---

[2] Arielle Bogorad is employed by Cerner Corporation as Senior Director, Worldwide Benefits, Wellness, and Fitness. See Doc. No. 106-1, ¶ 1.

In its summary judgment motion, defendant characterizes a "reward" under the Rewards Program as the earning of rebates for premiums paid to the employee's health insurance in the next plan year. See Bogorad Decl., Doc. No. 106-1 at ¶ 13. However, as noted by plaintiffs in response, the word "rebate" appears nowhere in Cerner's 200+ pages of plan documents and descriptive literature, which were all drafted by Ms. Bogorad's department prior to the filing of this lawsuit and which Ms. Bogorad approved for accuracy. (Bogorad Depo., Doc. No. 143-1, at 33:6-34:8, 34:9-22). "Rebate" is not a word Ms. Bogorad and her department use to describe the wellness incentive. (Bogorad Depo., Doc. No. 143-1, at 33:25-34:8).  Instead, the word "rebate" was first used by attorneys when they drafted her declaration in this case, and at that time she began to refer to the wellness incentive as a "rebate." (Bogorad Depo., Doc. No. 143-1, at 26:10-28:20, 34:23-35:20).

Similarly, defendants characterize the wellness incentive payments as a return to the employee of money the employee paid toward Health Insurance Plan premiums. (Bogorad Decl., Doc. No. 106-1 at ¶ 16).  Plaintiffs note in response, however, that employees' health insurance premiums are maintained by a separate corporation called The Health Exchange, Inc., which administers Cerner's health insurance plan. (Bogorad Depo., Doc. No. 143-1, at 11:11-12:11). The Health Exchange, Inc. receives the employees' insurance premiums and maintains them in a bank account separate from and not comingled with Cerner Corporation funds. (Bogorad Depo., Doc. No. 143-1, at 12:15-19, 66:20-24, 13:16-14:1). Cerner, therefore, is unable to return plaintiff's insurance premium dollars from this separately maintained insurance plan; instead, plaintiffs argue that defendant pays the wellness incentive itself, which is reflected on pay stubs as additional compensation added to gross wages.  (See Bogorad Depo., Doc. No. 143-1, at

5

66:20-24; Fred Speer's Pay Records, Exh. 11 (filed under seal)).

Defendant further asserts that a Rewards Program participant's wellness incentive rebate has no relation to hours worked or the quality of an employees' work, performance ratings, attendance, or any other factors related to the individual's job with Cerner. However, as noted by plaintiffs, in order to receive the full wellness incentive payment earned in year one, an employee must continue his or her employment throughout the entirety of year two.

Plaintiff Frederic Speer has not received a wellness incentive payment since his paycheck dated May 25, 2012. Plaintiff Mike McGuirk has not received a wellness incentive payment based on his participation in the Rewards Program, if at all, since prior to January 7, 2011.

### B.    Facts Specific to Standing

Named plaintiffs Fred Speer and Mike McGuirk claim that they received ITWorks on-call pay and a wellness incentive that were not included when calculating their regular rate of pay. Opt-in Scott Sexton claims that he also received ITWorks on-call pay that was not included when calculating his regular rate of pay.

At the January 14, 2016 deposition of Cerner's Rule 30(b)(6) corporate representative, Cerner provided lists of pay types paid to non-exempt employees at some point from March 5, 2012, to August 31, 2015. (Richardson Dep. at Exs. 5-7). Cerner, however, can only identify two types of additional compensation included in its overtime calculations prior to plaintiffs filing this lawsuit:  commissions and performance pay plan compensation.  Notably, at some time after the filing of this lawsuit, it appears that Cerner begin including previously excluded pay types (such as on-call pay) in its regular rate of compensation and created new pay types that were not previously used.

Defendant argues that determining whether a certain type of additional compensation should be included or excluded from the regular-rate calculation is a multi-factorial analysis and is done on a pay-type by pay-type basis. (Richardson Dep. at 57:23-25; 134:14-136:6). However, Cerner's corporate representative testified at the deposition that this is just its process today and it "does not know" and can "only speculate" about the process and what factors were considered prior to Plaintiffs filing this lawsuit. (Richardson Depo., Exh. 7, 134:10-21, 136:7-23, 143:10-21, 201:22-202:15). Cerner also testified there are not individual policies for including or excluding each type of pay when calculating overtime, and, instead, it is necessary to look "at the overall calculation" in PeopleSoft to determine what additional compensation Cerner's calculation included or excluded from regular rate calculations. (Richardson Depo., Exh. 7, at 226:2-227:3; 228:21-230:10).

## III.    Standard

A party may file a Motion for a judgment on the pleadings "after the pleadings are closed but early enough not to delay trial." Fed. R. Civ. P. 12(c). In determining whether to grant a motion for judgment on the pleadings the Court uses the same standard as for the motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Saterdalen v. Spencer, 725 F.3d 838, 840-41 (8th Cir. 2013). To survive a Rule 12(b)(6) motion to dismiss, "the complaint must do more than recite the bare elements of a cause of action." Williams v. City of Kansas City, Mo., No. 4:13–0347–CV–W–DGK, 2014 WL 2158998, at *3 (W.D. Mo. May 23, 2014) (citing Ashcroft v. Iqbal, 556 U.S. 662, 687 (2009)). The complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Under Rule 12(c) of the Federal Rules of Civil Procedure, the court "accept[s] as

true all factual allegations set out in the complaint" and "construe[s] the complaint in the light most favorable to the plaintiff[s] drawing all inferences in [their] favor." <u>Ashley Cty., Ark. v. Pfizer, Inc.</u>, 552 F.3d 659, 665 (8th Cir. 2009) (internal quotation marks and citations omitted). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." <u>Id</u>.

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–90 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. <u>Matsushita</u>, 475 U.S. at 586–90.

A nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

> The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

<u>Torgerson v. City of Rochester</u>, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citations and quotations omitted).

**IV.    Analysis**

    **A.    Motion regarding Fluctuating Workweek Calculation (Doc. No. 103)**

In its Motion, Defendant argues that it properly applied the FWW method to calculate Plaintiffs' overtime compensation by dividing the weekly earnings by the actual number of hours they worked to determine the regular hourly rate and then adding 50% of the regular rate as overtime compensation for the number of hours over forty. Cerner contends that this formula complies with FLSA and was upheld by the United States Supreme Court. According to Defendant, neither of these authorities suggests that payment of additional compensation precludes application of the FWW method. Thus, Cerner maintains that the Court should disregard Plaintiffs' argument that the FWW method is invalid, entitling Plaintiffs to a standard overtime rate of one and one-half times of the regular rate envisioned by FLSA. 29 U.S.C. § 207(a)(1). Cerner further asks the Court to commit to a formula of calculating the regular rate that would not include additional compensation which is allegedly intermittent and infrequent. Even if the additional pay is included, Cerner requests the Court use as the denominator the number of hours actually worked by Plaintiffs, instead of forty. In the event the Court decides to recalculate the overtime compensation, Cerner further requests the Court take into account the overtime compensation Cerner already paid to the Plaintiffs as part of the FWW model of pay.

1. <u>FWW as an alternative method of calculating overtime compensation under FLSA</u>

FLSA mandates that non-exempt employees[3] work a forty-hour work week, unless such employees receive compensation for their employment in excess of forty hours at a rate not less than one-and-one-half times the regular rate at which they are employed. 29 U.S.C. § 207(a)(1).

_____

[3] FLSA defines categories of non-exempt employees in 29 U.S.C. § 213.

Case 4:14-cv-00204-FJG   Document 214   Filed 09/26/16   Page 9 of 25

The Department of Labor ("DOL") introduced the FWW method as an alternative method of calculating overtime pay in its 1940 Interpretive Bulletin No. 4. How Overtime is Computed, Interpretative Bull. No. 4 (1940), *reprinted in* WAGE AND HOUR MANUAL 104 (1942). This method applies to employees whose work hours fluctuate from week to week and contemplates dividing employee's weekly earnings by the actual number of hours worked and includes an overtime rate of one-half of the regular hourly rate, as opposed to the statutorily prescribed one-and-one-half time rate of overtime pay. The FWW method was upheld by the U.S. Supreme Court in <u>Overnight Motor Transp. Co. v. Missel</u>, 316 U.S. 572, 580 (1942) (*superseded by statute on different grounds as stated in* <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 114 (1985) and later codified in the Code of Federal Regulations. Overtime Compensation, 15 Fed. Reg. 623 (Feb. 4, 1950) (issuing 29 C.F.R. § 778.3(b)(5)--Salaried employees; irregular hours).[4]

Currently, the FWW provision contained in section 778.114 of the DOL Regulations allows employers to use the FWW method to calculate overtime compensation, upon meeting certain conditions:

> 1) the employee's hours must fluctuate from week to week;
> 2) the employee must receive a fixed weekly salary that remains the same regardless of the number of hours that the employee works during the week;
> 3) the fixed amount must be sufficient to provide compensation at a regular rate not less than the legal minimum wage;
> 4) the employer and the employee must have a clear, mutual understanding that the employer will pay the employee the fixed weekly salary regardless of the hours worked; and
> 5) the employee must receive a fifty percent overtime premium in addition to the fixed weekly salary for all hours that the employee works in excess of forty during that week.

<u>See</u> 29 C.F.R. § 778.114(a), (c) (2016); <u>see</u> <u>also</u> <u>O'Brien v. Town of Agawam</u>, 350 F.3d

---

[4] John F. Lomax, Jr., <u>The Attack on the Fluctuating Workweek Method</u>, 30 ABA J. Lab. & Emp. L. 347, 366 (2015).

279, 288 (1st Cir. 2003) (internal citation omitted); <u>Soderberg v. Naturescape, Inc.</u>, No. CIV. 10-3429 PAM/JJG, 2011 WL 11528148, at *3 (D. Minn. Nov. 3, 2011); <u>Kanatzer v. Dolgencorp, Inc.</u>, No. 4:09CV74 CDP, 2010 WL 2720788, at *6 (E.D. Mo. July 8, 2010) (not reported in F. Supp. 2d).

Under plaintiffs' theory of the case, plaintiffs argue that defendant did not meet the requirements of Section 778.114 by paying certain employees additional remuneration in addition to the fixed weekly salary. Plaintiffs suggest that violating the provisions of Section 778.114 should lead the Court to find that the FWW model should not be used to calculate the amount of unpaid overtime, and instead the Court should use time and one-half of all hours worked beyond 40 in a week.

2. <u>Section 778.114 qualifies for a heightened degree of deference from the Court</u>

Although Defendant relies on section 778.114 in its Motion, at the same time, it also asserts that this regulation, as DOL's interpretive ruling, is not entitled to full <u>Chevron</u> deference. <u>Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984). Under <u>Chevron</u>, agency regulations that are filling a gap in the statute "are given controlling weight, unless they are arbitrary, capricious or manifestly contrary to the statute," and "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." <u>Id.</u> at 844. Defendant argues that, to the extent section 778.114 suggests or is interpreted to mean that payment of remuneration, in addition to a fixed salary, is incompatible with the FWW method, it should not bind this Court because the regulation is not entitled to <u>Chevron</u> deference.

It is true that the FWW provisions started out as DOL's interpretative ruling, and

courts owe only a non-binding <u>Skidmore</u> degree of deference to interpretive rulings, interpretations and opinions of administrative agencies. <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944). In <u>Skidmore</u> the U.S. Supreme Court held that interpretive rulings of the Administrator under FLSA are not interpretations of the Act; still, "these rulings while not controlling upon the courts by reason of their authority, constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." <u>Id</u>. at 140. <u>See</u> <u>also</u> <u>Christensen v. Harris Cty.</u>, 529 U.S. 576, 586-88 (2000).

However, as the First Circuit Court noted, because section 778.114 represents the Secretary of Labor's implementation of the Supreme Court's holding in <u>Missel</u>, 316 U.S. 572, the regulation has binding effect on the courts. <u>O'Brien v. Town of Agawam</u>, 350 F.3d 279, 287, n.15 (1st Cir. 2003) (internal citation omitted) (*superseded by statute on different grounds as stated in* <u>Crowe v. Examworks, Inc.</u>, No. 13-10249-DPW, 2015 WL 5749441 (D. Mass. Sept. 30, 2015)). Cerner argues in the Reply in Support of its Motion (Doc. No. 128) that this language from <u>O'Brien</u> is not only *dicta*, but also incorrectly relies on <u>Martin v. Tango's Rest., Inc.</u>, 969 F.2d 1319, 1324 (1st Cir. 1992)), a case that dealt with a different regulatory provision. However, in determining the level of deference owed to section 778.114, this Court notes that since the First Circuit's <u>O'Brien</u> decision, this regulation survived an attempted revision through notice-and-comment-making proceedings and remained unchanged. In 2008, DOL issued a Notice of Proposed Rulemaking and Request for Comment proposing to revise the FWW provision of § 778.114 to validate payment of bonuses as consistent with FWW method. Specifically, DOL contemplated including the following language: "payment of overtime premiums and other bonus and non-overtime premium payments will not invalidate the [FWW] method of overtime pay." 73 Fed. Reg. 43,654, 43,670 (July 28, 2008). After receiving "sharply

divided" comments, DOL in its 2011 Final Rule decided to leave the regulation unchanged, explaining in the Preamble that the proposed rule "would have been inconsistent with the requirement of a fixed salary payment set forth by the Supreme Court [in <u>Missel</u>]." 76 Fed. Reg. 18,832, 18,850 (Apr. 5, 2011). The critical language states that "[DOL] ha[s] concluded that unless [additional bonus and premium payments] are overtime premiums, they are incompatible with the [FWW] of computing overtime under section 778.114." Updating Regulations Issued Under the Fair Labor Standards Act, 76 Fed. Reg. 18832-01, 18,853.

To the extent there was any doubt as to whether the FWW regulation in section 778.114 qualifies for deference from this Court, the fact that the regulation has remained unchanged, even after undergoing the recent process of notice and comment-making, entitles the regulation to a heightened level of deference. <u>Long Island Care at Home, Ltd. v. Coke</u>, 551 U.S. 158, 173-74 (2007) (citing <u>U.S. v. Mead Corp.</u>, 533 U.S. 218, 229-33 and holding that the regulation in 29 C.F.R. § 552.109(a), which DOL attempted to change, but left unchanged, deserves a high degree of deference). The U.S. Supreme Court in <u>Long Island Care</u> noted that "[w]here an agency rule sets forth important individual rights and duties, where the agency focuses fully and directly upon the issue, where the agency uses full notice-and-comment procedures to promulgate a rule, where the resulting rule falls within the statutory grant of authority, and where the rule itself is reasonable, then a court ordinarily assumes that Congress intended it to defer to the agency's determination." <u>Id.</u>

Even in <u>Urnikis-Negro v. Am. Family Prop. Servs.</u>, 616 F.3d 665 (7th Cir. 2010), the case Cerner relies on as containing the most thorough analysis of the FWW issues, the Seventh Circuit noted that courts give full <u>Chevron</u> deference, "to those regulations

issued with full notice and opportunity for comment or like formalities." Cerner's proposition (unsupported by any authority) in its Reply that introductory comments in the Preamble to the 2011 Final Rule regarding DOL's attempted revision do not change the level of deference owed to section 778.114, is unconvincing. Neither is Cerner's argument emphasizing that some courts (unidentified by Cerner) have erroneously relied in their decisions on the Preamble comments to DOL's Final Rule. Finally, nothing in Encino Motorcars, LLC v. Navarro, 136 S. Ct. 2117, 195 L. Ed. 2d 382 (2016), cited by defendant's in a notice of supplemental authority (Doc. No. 186), alters the Court's conclusion, as the regulation that the Supreme Court did not give deference to in Navarro had abandoned decades-old law in favor of a brand new regulation as to whether certain categories of employees were exempt, without good reason for the change in the law being given.  Here, section 778.114's regulation of the FWW remained unchanged after notice and comment.

Therefore, because section 778.114 was not only promulgated to implement the decision of the U.S. Supreme Court, but has also undergone the process of notice and comment-making and remained unchanged, it qualifies for a heightened degree of deference from this Court.

        3.    <u>Missel and other cases that did not address variable pay in addition to the fixed salary in the FWW context have no bearing on this case</u>

Defendant tries to convince the Court that Plaintiffs' reading of section 778.114 is inconsistent with <u>Missel</u>, as nothing in <u>Missel</u> suggests that add-ons invalidate the fixed rate of compensation within the context of FWW. While that might be true, nothing in <u>Missel</u> precludes a conclusion that payment of additional <u>variable</u> compensation could be incompatible with the FWW, as Plaintiffs argue. Employees in <u>Missel</u> received a fixed

weekly salary and additional $2.50 in supper money paid every week. Missel v. Overnight Motor Transp. Co., 126 F.2d 98, 101 (4th Cir.) aff'd, 316 U.S. 572 (1942). This add-on payment did not depend on the number of hours worked, nor did it vary from week to week. Id. Unlike employees in Missel, Plaintiffs in this case received payments in addition to the fixed salary, at least some of which were allegedly tied to the number of hours they worked and varied from week to week. Because of these factual differences, Missel is not controlling here.

Defendant further cites to a 2010 Tenth Circuit decision in Chavez v. City of Albuquerque, as reaffirming the possibility of including both straight-time pay and add-ons when calculating the overtime rate in the FWW context. 630 F.3d 1300, 1311 (10th Cir. 2011). While Chavez did discuss the issues of regular rate and payment of add-ons under FLSA, it did not mention the FWW method of compensation or the regulation at issue in this case. Instead, as Plaintiffs indicate, Chavez focuses on calculation of the regular rate in the non-FWW context. 630 F.3d at 1305-306. Thus, Chavez as a non-binding precedent that is not on point cannot dictate the outcome in this case as to the effect of non-fixed payments on the FWW model of overtime pay.

4. Compatibility of variable additional compensation with application of the FWW method of overtime pay calculation

Having determined that section 778.114 qualifies for deference from this Court and that the cases cited by Cerner do not affect the Court's analysis on the applicability of the FWW method, the Court now considers the merit to Plaintiffs' argument that on-call bonuses and wellness incentive are the types of compensation that may negate the FWW method. Plaintiffs cite to several district courts' decisions providing examples of when additional compensation is incompatible with FWW. See, e.g., Ayers v. SGS Control

Servs., Inc., No. 03 CIV. 9078 RMB, 2007 WL 646326, at *10 (S.D.N.Y. Feb. 27, 2007); Sisson v. Radioshack Corp., No. 1:12CV958, 2013 WL 945372, at *7 (N.D. Ohio Mar. 11, 2013); Bacon v. Eaton Aeroquip, LLC, No. 11-CV-14103, 2014 WL 5090825, at *8 (E.D. Mich. Oct. 9, 2014); Brantley v. Inspectorate America Corp., 821 F. Supp. 2d 879, 890 (S.D. Tex. 2011). These cases were decided both before and after the DOL's attempt to revise the language of the FWW provision and hold that additional compensation, especially, if it is hour-based,[5] negates the FWW model of calculating overtime compensation. The First Circuit has recently reaffirmed this conclusion, stating that "almost every court ... ha[s] held that paying an employee hours-based, or time-based, bonuses and premiums—such as extra pay for holiday, weekend, or night work—offend[s] § 778.114's requirement of a 'fixed weekly salary.'" Lalli v. Gen. Nutrition Centers, Inc., No. 15-1199, 2016 WL 563071, at *7 (1st Cir. Feb. 12, 2016) (holding that because employee's commissions were not tied to the hours worked, employer could use the FWW method).

At the same time, almost[6] every court that considered whether the "fixed weekly salary requirement is breached by paying an employee bonuses tied to performance ... [has] held, or stated, that, so long as the bonuses and premiums [are] not tied to the number of hours worked by the employee, they [are] consistent with that requirement." Id. (internal quotation marks omitted) (citing Wills v. RadioShack, 981 F. Supp. 2d at 256–57; Lance v. Scotts Co., No. 04 Civ. 5720, 2005 WL 1785315 (N.D. Ill. Jul. 21, 2005);

---

[5] Post-2011 Courts seem to be split on whether payment of performance-based bonuses is compatible with FWW. Compare Wills v. RadioShack Corp., 981 F. Supp. 2d 245, 255-56 (S.D. N.Y. 2013)(holding that payment of bonuses based on store performance, unlike hour-based bonuses, is consistent with the use of the FWW method), with Sisson v. RadioShack Corp., 2013 WL 945372 at *7 (payment of store-performance bonuses invalidates the use of the FWW method).

[6] One notable exception is Sisson, 2013 WL 945372, discussed supra note 5.

<u>Soderberg v. Naturescape, Inc.</u>, No. 10 Civ. 3429, 2011 WL 11528148 (D. Minn. Nov. 3, 2011); and <u>Switzer v. Wachovia Corp.</u>, No. CIV.A. H-11-1604, 2012 WL 3685978 (S.D. Tex. Aug. 24, 2012) (not reported in F. Supp. 2d).

In light of these lines of authority, the Court finds that if additional pay in this case was tied to hours worked such pay could negate the FWW model of overtime pay. The Court, however, cannot make a final decision on this without further development of the factual record. The Court finds that questions of fact remain as to plaintiffs' claims on these issues regarding the possible invalidation of the FWW method of calculating overtime with respect to plaintiffs and putative class members. Therefore, this issue is better left for summary judgment or trial. Therefore, for all the above reasons, Cerner's Motion for judgment on the pleadings (Doc. No. 103) is **DENIED**.

### B. Motion regarding Wellness Incentive (Doc. No. 105)

Defendant argues it is entitled to summary judgment on plaintiffs' claims regarding the wellness incentive, because (1) those claims are time barred, and (2) the wellness incentive was not remuneration paid to plaintiffs under the FLSA, and is exempt from inclusion in the regular rate pursuant to 29 U.S.C. § 207(e)(2). In response, plaintiffs argue that (1) defendants have not met their burden of proving that the wellness incentive falls under the exclusion set forth in 29 U.S.C. § 207(e)(2); (2) plaintiffs have not pled a separate "wellness incentive claim",[7] and therefore their claims on behalf of themselves and all other non-exempt employees whose overtime was miscalculated, are not time-barred; and (3) even if a separate "Wellness Incentive claim" were alleged, plaintiff Fred Speer received the wellness incentive as recently as May 25, 2012, which is well within

---

[7] As noted by plaintiff, the words "wellness incentive" do not appear in the operative complaint.

Missouri's two-year statute of limitations for the Rule 23 Miscalculated Overtime class (e.g. March 5, 2012-present).

### 1. Statute of Limitations

Plaintiffs filed this lawsuit on March 4, 2014, and filed their written consents required under Section 216(b) of the FLSA on October 8, 2015.[8] Defendant argues that plaintiffs' suit under the FLSA did not commence until October 8, 2015. Because the latest date Cerner issued a Wellness Incentive payment to either plaintiff was May 2012, Cerner argues that the statute of limitations has run on both plaintiffs' claims.

As discussed by plaintiffs, however, defendant has completely ignored Missouri state law claims pled in plaintiffs' complaint, for which no consent to join is required, and the statute of limitations for Missouri's Minimum Wage Law is two years. See R.S.Mo. §§ 290.500 et seq. Therefore, plaintiff Fred Speer has a timely claim related to the "wellness incentive," given he received such pay as recently as May 2012. Furthermore, as noted by plaintiffs, they have not specifically pled a "wellness incentive" claim in the Amended Complaint (Doc. No. 39), and accordingly there is no specific cause of action from that complaint that is time-barred. As discussed by plaintiffs, their complaint includes a "miscalculated overtime class," which includes employees who received not only the wellness incentive, but also on-call pay and other remuneration that Cerner excluded from its calculations. Doc. No. 39, ¶¶ 59, 80.

The Court agrees with defendants that, to the extent that he is making such a

---

[8] As noted by defendant, no individual can pursue a collective action under the FLSA without having filed a written consent to join the litigation. 29 U.S.C. §§ 216(b), 256; Acosta v. Tyson Foods, Inc., 800 F.3d 468, 472 (8th Cir. 2015) (holding named plaintiff's failure to file a consent bars his collective action claims and district court erred in not dismissing named plaintiff's claim); Gomez v. Tyson Foods, Inc., 799 F.3d 1192, 1194 (8th Cir. 2015) (same).

claim, named plaintiff Mike McGuirk's claims for violations of the FLSA and MMWL related to payment of the wellness incentive are time-barred. Similarly, named plaintiff Speer's claims for violations of the FLSA related to payment of the wellness incentive are time-barred. This finding, however, does not foreclose other members of the conditionally certified class from seeking relief on such claims. Moreover, plaintiff Speer's MMWL claims related to the wellness incentive are not barred by the statute of limitations. Accordingly, the Court turns to the merits of the remaining wellness incentive claims.

2. Remuneration Paid to Plaintiffs/Exemptions from the Regular Rate Calculation

The FLSA mandates that all employees working greater than forty hours in a workweek must be compensated "at a rate not less than one and one-half times the regular rate at which he is employed" for all hours worked in excess of forty in a workweek. 29 U.S.C. § 207(a)(2). The FLSA defines the "regular rate" as "all remuneration for employment paid to, or on behalf of, the employee," which must be included in the employee's regular rate of pay, provided such remuneration is not excluded by one of the exemptions set forth in § 207(e)(1)-(8). Acton v. City of Columbia, Mo., 436 F.3d 969, 976-77 (8th Cir. 2006); 29 U.S.C. § 207(e). A statutory presumption exists "that remuneration in any form is included in the regular rate calculation. The burden is on the employer to establish that the remuneration in question falls under an exception." Id. (quoting Madison v. Res. for Human Dev. Inc., 233 F.3d 175, 187 (3d Cir. 2000). The statutory exceptions are interpreted narrowly against the employer. See Mitchell v. Kentucky Fin. Co., 359 U.S. 290, 295-96, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959).

Defendant argues that the wellness incentive is not remuneration for employment, and instead argues that the wellness incentive is simply a return to the employee of

money that the employee contributed to his or her health insurance premiums through a rebate offered by Cerner. Defendant argues that although the wellness incentive must be taxed because the contribution to healthcare plans are made on a pre-tax basis, the employee has not actually earned more money. Defendant further argues that the only requirement for an employee to be eligible to participate in the rewards program to earn the wellness incentive is to participate in Cerner's Health Insurance Plan.

As discussed by plaintiffs in their statement of facts, however, the word "rebate" does not appear in any of Cerner's pre-lawsuit materials, and was first used by Cerner's attorneys when drafting Ms. Bogorad's declaration in support of this motion for summary judgment. Plaintiffs argue that Ms. Bogorad's testimony demonstrates that the wellness incentive is remuneration for employment, is only paid to employees, and to receive the bonus the employees must continue to work at Cerner over the Course of the next year. Plaintiffs also note that Ms. Bogorad's testimony confirms that the payment cannot be return of previously-paid premiums because the premiums are paid to a separate account which Cerner does not maintain or have access to, and the wellness incentive is instead paid by Cerner, making it additional compensation paid to employees.

The Court finds that, at the very least, plaintiffs have demonstrated that questions of material fact remain as to whether the wellness incentive qualifies as remuneration paid to plaintiffs. The Court next turns to whether the wellness incentive should be exempt from inclusion in the regular rate of pay.

Cerner next argues that, even if the wellness incentive is considered remuneration, it is exempt from inclusion in the regular rate calculation under exemption (2) of Section 207(e):

(2) payments made for occasional periods when no work is performed due

to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment.

29 U.S.C. § 207(e)(2); 29 C.F.R. 778.224. Defendant argues that the wellness incentive qualifies as "payments made to an employee which are not made as compensation for his hours of employment," citing to Theisen v. City of Maple Grove, 41 F.Supp.2d 932, 937 (D. Minn. 1999) (finding, after a special verdict was reached in a jury trial and the Court made a decision on damages, that the defendant's consistent "monthly payment to plaintiffs made in lieu of increased employer contributions to insurance" was properly excluded from the regular rate of pay).

Plaintiffs argue that defendant has not met its burden to prove that the wellness incentive is exempt under § 207(e)(2). Plaintiffs argue that the wellness incentive payment is remuneration for employment under Acton, 436 F.3d at 976. In that case, the Eighth Circuit found that accumulated sick leave which the employees were allowed to cash out for payments constituted "remuneration for employment" and was not exempt under § 207(e)(2). In particular, the Court in Acton found "[t]he City's proffered justifications do not change the undisputed fact that the firefighters are plainly rewarded for regularly showing up for work over a period of years." Id. at 978. The Eighth Circuit found "the authority of federal regulation § 778.223, coupled with the statutory presumption favoring the inclusion of all monies in the regular rate of pay," led to the conclusion that the sick-leave payout should be considered remuneration for employment. Id. at 980. Plaintiffs argue that the same rationale applies to Cerner's wellness incentive payments here, as Cerner allows accumulation of rewards points in year one, which can

only be redeemed through continued employment in year two, and in order to receive the full wellness incentive, the employee must continue employment throughout year two. Plaintiffs also argue that the goals of the program at issue in <u>Acton</u> and the wellness incentive in the present case are the same:  increasing productivity, promoting regular attendance, and incentivizing continued employment throughout the entire following year.

In reply, defendant argues that plaintiffs focus on semantics rather than substance in arguing that the wellness incentive is not a rebate.  However, the Court finds that both parties are relying on semantics here, and based on the facts known to-date, the Court cannot make a final determination as to whether the wellness incentive is exempt from being remuneration for employment.  The Court notes that the primary cases cited by the parties, <u>Acton</u> and <u>Theisen</u>, were decided after a full record had been made by the parties.  In the present matter, discovery as to issues related to class certification has taken place, but full merits discovery has not.  Therefore, defendant's motion for summary judgment on the issue of whether the wellness incentive should be considered remuneration for employment is **DENIED.**

**C.    Motion for Partial Summary Judgment on Standing (Doc. No. 141)**

Defendant argues that plaintiffs in the current action do not have standing to bring claims predicated on pay types that they did not receive.  Defendant states that plaintiffs' have pled too broad a complaint, asserting claims based on all "additional compensation" received by Cerner associates and not included in overtime calculation, even though the named plaintiffs only received two types of additional compensation:  the wellness incentive and on-call pay.  Defendant argues that plaintiffs attempted to cast a wide net hoping that discovery would reveal that Cerner had a uniform policy excluding all additional compensation types, and therefore miscalculated all overtime premiums.

Defendant then asserts that discovery has revealed that there is no uniform policy, but rather Cerner considers each pay type individually under the FLSA standards. Defendant asserts, therefore, the with respect to any of the other pay types it has which are not received by the named plaintiffs, plaintiffs cannot demonstrate injury-in-fact, traceability, and/or harm caused to them by those pay types. See Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

In response, plaintiffs argue that defendant is inviting the Court to commit legal error by conflating Article III standing with the requirements for class certification under Rule 23 and conditional certification of collective action under the FLSA. This Court agrees with plaintiffs. Defendant cannot deny that plaintiffs have standing to pursue a claim against it; they have alleged injury-in-fact (improper compensation for overtime worked), traceable to the actions of defendant which caused the plaintiffs harm. Just because plaintiffs have pled class claims that may include those of individuals who received other types of compensation not received by the named plaintiffs does not mean that the named plaintiffs do not have standing for suit. Instead, defendant's arguments are better addressed as suggested by plaintiffs – on consideration of plaintiffs' motion for class certification when analyzing typicality and commonality.[9] Furthermore, plaintiffs have pled that they are victims of a common policy or plan that applies to a broad group of individuals, a group in which they belong. As pled in the operative complaint, plaintiffs allege Cerner, "in violation of the requirements of the FLSA (29 U.S.C. § 207(e)), [] did not include "all remuneration" earned by Speer, McGuirk and the similarly situated

_____

[9] Notably, the Court already has rejected these arguments in relation to conditional certification under the FLSA. See Order granting in part and denying in part motion to certify class, Doc. No. 165, pp. 16-19.

NonExempt employees when determining their 'regular rate' of pay (as defined under the FLSA, 29 CFR § 778.108)." (Doc. 39, at ¶ 41). "[O]nce a named plaintiff establishes individual standing, the issue of whether a named plaintiff can assert claims on behalf of absent class members is determined at the class certification stage of the litigation." Indergit v. Rite Aid Corp., No. 08 Civ. 9361 (PGG), 2009 WL 1269250, at *4 (S.D. N.Y. May 4, 2009)(case citations omitted). See also Braden v. Wal–Mart Stores, Inc., 588 F.3d 585, 589-90 (8th Cir. 2009) (finding that, while Article III generally requires injury to plaintiff's own legal interests, that does not mean that a plaintiff with Article III standing may assert only his own rights or redress his own injuries, and instead may be able to assert causes of action based on conduct which sweeps more broadly than the injury he personally suffered). Moreover, although defendant asserts broadly that discovery has revealed that plaintiffs were not subject to a uniform policy or plan, the Court finds that the discovery to-date is not at all determinative on this issue; defendant's one-sided declarations cannot be used in such a way to support summary judgment when merits discovery has not even opened.

Defendant's motion for summary judgment on standing, therefore, is **DENIED.**

## V.     Conclusion

Therefore, for the foregoing reasons, (1) Cerner Corporation's Motion for Partial Judgment on the Pleadings on Plaintiffs' Claim that Cerner Violated the FLSA in Using the Fluctuating Workweek Computation (Doc. No. 103) is **DENIED**; (2) Cerner Corporation's Motion for Partial Summary Judgment on Plaintiffs' Claim the Wellness Incentive Was Not Exempt from the Regular Rate (Doc. No. 105) is **GRANTED IN PART** due to the statute of limitations as to the individual claims of Mike McGuirk for violations of the FLSA and MMWL as well as the individual claims of Fred Speer for violations of the FLSA, and

**DENIED IN PART** in all other relevant aspects; and (3) Cerner Corporation's Motion for Partial Summary Judgment Regarding Claims Based on Pay Types not Paid to Plaintiffs (Doc. No. 141) is **DENIED**.

       **IT IS SO ORDERED**.


Date: <u> September 26, 2016 </u>          <u>**S/ FERNANDO J. GAITAN, JR.**</u>
Kansas City, Missouri              Fernando J. Gaitan, Jr.
                             United States District Judge