**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

FRED SPEER and MIKE MCGUIRK,    )
individually and on behalf of a class   )
of all others similarly situated,      )
                                  )
                Plaintiffs,   )
                                  )    Case No. 14-0204-CV-W-FJG
v.                                )
                                  )
CERNER CORPORATION,       )
                                  )
                Defendant.   )

## <u>ORDER</u>

Pending before the Court is Plaintiffs' Motion for Class Certification (Doc. No. 153); and (2) Plaintiffs' Motion to Supplement Rule 23 Reply Brief with Newly Discovered Evidence (Doc. No. 182). As an initial matter, the Court finds that plaintiff's motion to supplement its reply brief is well-taken, despite defendant's arguments that plaintiffs could have discovered this evidence earlier had they asked the correct follow-up questions at the deposition of Cerner's 30(b)(6) deponent Jessie Richardson. <u>See</u> Doc. No. 187, pp. 2-3. Therefore, plaintiffs' motion to supplement is **GRANTED**, and the Court considers the information presented by plaintiffs' supplemental reply brief below.

## I.    Background

Plaintiffs, Frederic Speer and Michael McGuirk, individually and on behalf of themselves and others similarly situated, bring a two-count complaint against Defendant, Cerner Corporation ("Cerner"), alleging that Defendant violated the Fair Labor Standards Act ("FLSA" or "Act") and the Missouri Minimum Wage Law ("MMWL"). Cerner employed both Plaintiffs, Speer and McGuirk, as Service Center Analysts/System Support

Analysts ("Desktop Support Staff") at its operation, Tiger Institute for Health Innovation in Columbia, Missouri. In their Complaint, Plaintiffs allege that Cerner improperly calculated their overtime compensation by using a fluctuating workweek ("FWW") method, which contemplates dividing employees' fixed earnings by the number of hours they worked in a given week to arrive at a regular rate and then adding one-half time (50%) of the regular rate as overtime for all hours over forty. According to Plaintiffs, because they and other proposed class members received payments in addition to their fixed salary, these payments invalidated the FWW method, thus entitling Plaintiffs to the statutorily prescribed default overtime rate of one-and-one-half times (150%) their regular hourly rate. Plaintiffs also complain that Cerner failed to include all remuneration when calculating the regular rate of pay for its employees, and such failure resulted in overtime compensation of less than even the reduced FWW one-half (50%) overtime compensation rate. Furthermore, according to Plaintiffs, even this inadequate overtime compensation was systematically paid late. Plaintiffs claim that as a result of these violations Cerner denied them, as FLSA non-exempt employees, proper and timely overtime pay in violation of FLSA. Doc. No. 39, ¶ 23.

On March 30, 2016, the Court granted plaintiffs' motion for conditional certification of a collective action in part. See Doc. No. 165. Specifically, the Court found that plaintiffs met the burden for conditional certification as to "Late Payment of Overtime" and "Miscalculated Overtime" classes. The "Late Payment of Overtime" class includes "all nonexempt persons employed by Defendant in the U.S." from September 7, 2012 to the present, "whose overtime compensation was not paid on the next regular payday for the period in which the overtime work was performed." The "Miscalculated Overtime" class includes all those from September 7, 2012 to the present whose overtime compensation

was calculated based on a regular rate of pay that excluded additional remuneration. See Doc. No. 165, Doc. No. 180-1.

On September 26, 2016, the Court entered an Order denying in large part Cerner's motions for summary judgment and for partial judgment on the pleadings. Order, Doc. No. 214. Specifically, the Court denied Cerner's motion regarding the FWW method of pay (Doc. No. 103), granted in part the motion regarding the wellness incentive claims due to the statute of limitations as to the individual claims of Mike McGuirk for violations of the FLSA and MMWL as well as the individual claims of Fred Speer for violations of the FLSA, and denied the motion in all other relevant aspects (Doc. No. 105), and denied Cerner's motion for summary judgment based on standing (Doc. No. 141).

Currently, plaintiffs seek Rule 23 certification of three classes:

(1) All non-exempt persons employed by Cerner in Missouri, at any time since March 5, 2012 through the final judgment in this matter, whose overtime compensation was not paid on the next regular payday for the period in which the overtime work was performed (**"Late Payment of Overtime Class"**);

(2) All non-exempt persons employed by Cerner in Missouri, at any time since March 5, 2012 through the final judgment in this matter, who received overtime compensation that was calculated based upon a "regular rate" of pay that excluded On-Call Pay, Wellness Incentive Bonuses, Night Differentials, Security Differentials – ARM, Retro Wellness Incentives, and/or Holiday Differential Pay (**"Miscalculated Overtime Class"**);

(3) All non-exempt persons employed by Cerner in Missouri, at any time since March 5, 2012 through the final judgment in this matter, who were purportedly compensated based on the fluctuating workweek method of pay and: (i) whose overtime compensation was not paid on the next regular payday for the period in which the overtime work was performed; and/or (ii) who were paid additional compensation beyond their "fixed" salary (**"Fluctuating Work Week Class"**).

(Collectively, the "Rule 23 Classes").

## II.     Statement of Facts

Defendant Cerner Corporation ("Cerner") is a healthcare information technology corporation, with its world headquarters located in North Kansas City, Missouri. During the relevant time period, Cerner employed Plaintiffs and thousands of other non-exempt employees within the United States to facilitate its global business services as a "leading-edge" technology development company. All Cerner employees are classified into one of three distinct groups: (1) salaried exempt; (2) hourly nonexempt ("hourly"); or (3) salaried nonexempt ("SNE"). Regardless of each employee's location, defendant's U.S. Payroll group processes payroll for all non-exempt employees centrally, at its world headquarters in Missouri. During the relevant time period, Cerner employed four individuals in its payroll department to complete the payroll process each pay period for its approximately 16,500 U.S.-based employees.

Plaintiffs Fred Speer and Mike McGuirk were employed by Cerner as salary non-exempt Service Center Analysts and/or System Support Analysts in the *ITWorks* division in Columbia, Missouri. Plaintiffs, like all of Cerner's non-exempt employees, were entitled to overtime premium pay for work in excess of 40 hours each week. Speer worked for Cerner from September 2011 to December 2012 as a Service Center Analyst. McGuirk worked for Cerner from April 2010 to March 2013 as a Service Center Analyst. Plaintiffs Fred Speer and Mike McGuirk claim that they received *ITWorks*® on-call pay and a Wellness Incentive that were not included in the regular rate when calculating their regular rate of pay.

Like all of Cerner's Missouri non-exempt employees, Plaintiffs recorded their work hours using Cerner's centralized time-keeping system—through PeopleSoft Finance— and then those hours were integrated into PeopleSoft HR. All of Cerner's hourly and

salary non-exempt employees are required to enter their work hours each week by 11:59 p.m. on Saturday. From there, Cerner's corporate U.S. Payroll group processes payroll and issues pay checks, utilizing centralized and system-wide calculations and processes. Of its Missouri-based, non-exempt associates, during any given year of the class period, Cerner paid approximately 850-1,200 employees—including Plaintiffs—on a fluctuating workweek basis ("Salary Non-Exempt Employees"). Plaintiffs, like all of Cerner's Salary Non-Exempt Employees, were promised a fixed salary plus one-half (instead of one-and-one-half) times their regular rate of pay for each hour worked over 40 in a workweek. Cerner calculated and paid all its Salary Non-Exempt Employees across the U.S. pursuant to the same payroll policies and overtime calculations.

**Timing of Payment of Overtime**

Cerner operates on a bi-weekly payroll schedule and has established its payday as the Friday following the close of the two-week pay period. Cerner imposes a deadline of 11:59 p.m. on Saturday for the submission of time, and the pay period closes immediately after that deadline. Cerner paid all its Salary Non-Exempt Employees' overtime wages a full pay period behind (e.g. nearly three full weeks after the close of the pay period in which the overtime was earned), from at least March 2012 until the summer of 2014, after Plaintiffs filed this lawsuit. This pay process was confirmed in Cerner's HR documents, which notified U.S. associates that "Overtime is always one pay period behind." Cerner's detailed instructions to its U.S. Payroll group for processing payroll also expressly reminded them that "***Overtime is always a pay period behind***" and direct them to "pull prior pay period weeks" when gathering associates' reported overtime hours. Doc. No. 153, Exh. 11, at SPEER_D00001163. Cerner testified that it takes approximately 21-23 hours to calculate and process Salary Non-Exempt Employee's payroll each pay period.

(Doc. No. 153, Richardson Depo., Exh. 4, at 176:1- 22; 179:17-21). Only one person in defendant's payroll department performs the overtime calculations for all Salary Non-Exempt Employees. (Richardson Depo., Exh. 4, at 176:1-9). From March 2012 until the summer of 2014 (after this lawsuit was filed), Cerner did not begin the process of calculating Salary Non-Exempt Employees' overtime each pay period until Thursday following the close of the two-week pay period (e.g., a full five days after the pay period ended). (Richardson Depo., Exh. 4, at 169:25-171:21). Cerner admitted that all hourly and salary non-exempt employees have the same deadline (Saturday at 11:59 p.m.) for entering their work hours, but only hourly employees received their overtime pay on the next pay day after the close of the pay period. (Richardson Depo., Exh. 4, at 157:20-158:2; 160:8-161:11). Defendant argues that during the final 37 weeks Speer worked at Cerner (pay end dates on or after April 14, 2012), Speer did not comply with Cerner's time submission policy and submitted his time anywhere from 1 to 3 days late 18 out of those 37 weeks. McGuirk contends that an individual told him as part of his orientation that employees "could still submit [their time] by Monday or Tuesday. Usually Monday because by Tuesday they may be screaming at you to fill it out so they can do the payroll on time." (Doc. No. 166, Ex. D, McGuirk Dep. at 100:3-14).[1]

After Plaintiffs filed this lawsuit in March 2014, Cerner wrote a computer program called Time Tool, which it implemented in the summer 2014, and began paying Salary Non-Exempt Employees' overtime wages on the next pay day following the close of the pay period. (Richardson Depo., Exh. 4, at 150:9-151:7). Prior to the summer of 2014,

---

[1] The Court notes, however, that Cerner's 30(b)(6) deponent testified that Cerner would not begin calculating overtime for these employees until Thursday following the submission of overtime on Saturday at 11:59 pm, so named plaintiffs turning in overtime 1-3 days "late" would not affect when the calculations were performed.

Cerner claims it "lacked the resources" to pay overtime to its Salary Non-Exempt employees the next pay day after close of the pay period. Plaintiff, however, notes that defendant reported $2.911 billion in annual revenue in 2013. Plaintiffs assert that all of Cerner's Missouri-based, non-exempt employees who were paid overtime a pay period behind at any time since March 2012, were similarly injured by Cerner's systemic, unlawful pay practice.

### Inclusion of Additional Compensation into Regular Rate of Pay

Plaintiffs argue that, until they filed this lawsuit, Cerner failed to include all additional compensation into non-exempt employees' regular rate of pay when calculating and paying overtime premiums. With respect to named plaintiffs, Plaintiff Fred Speer received Wellness Incentive compensation and On-Call pay, both of which were excluded from his overtime calculations between March 2012- present. Plaintiff Mike McGuirk received On-Call pay, which Cerner excluded from his overtime calculations between March 2012-present. Plaintiff further argues that Cerner admits that it did not include On-Call Pay, Wellness Incentive, Night Differential, Security Differential – ARM, Retro Wellness Incentive, and Holiday Differential compensation into Missouri-based, non-exempt employees' overtime calculations between March 5, 2012-December 31, 2015.[2]

### Fluctuating Work Week

_____

[2] Cerner, in response, argues that it has included Night Differential and Security Differential - ARM in the regular rate calculation for its nonexempt employees since May 2012. However, plaintiff argues in its motion to supplement its rule 23 reply brief that Cerner did not include Night Differential and Security Differential – ARM in its regular rate calculation. See Doc. No. 182. Cerner also argues that it has included in its calculation of regular rate of pay _ITWorks_ on-call payments since August 2014 and Evening Differential – Flat and Weekend Differential – Flat since December 2015. The Wellness Incentive, on the other hand, has been excluded from regular-rate calculations at all times relevant to this lawsuit.

Plaintiff argues that Cerner's failure to include additional remuneration Cerner paid for on-call work and other incentive pay into Plaintiffs' and other Salary Non-Exempt Employees' regular rate of pay when calculating overtime premiums resulted in an underpayment of overtime, thus invalidated the flexible work week (FWW) method of calculating overtime payments.

## III. Standard

Under Federal Rule of Civil Procedure Rule 23(a), the Court considers the following prerequisites and certifies a class only if:

> (1) the class is so numerous that joinder of all members is impracticable;(2) there are questions of law or fact common to the class;(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, the Court considers whether one of the three Rule 23(b) requirements justify certification. Here, plaintiffs move for certification under Rule 23(b)(3), which provides that a class may be maintained if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"The decision whether or not to certify a class is not a reflection of the merits of the case." Casey v. Coventry HealthCare of Kansas, Inc., No. 08-0201-CV-W-DGK, 2010 WL 3636140, at *2 (W.D. Mo. Sept. 10, 2010). However, the Supreme Court has explained that a class should not be certified until the district court concludes, "after a rigorous analysis," that the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—are met. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338. 350-51 (2011). Furthermore, the predominance inquiry of Rule 23(b)(3) must begin "with

the elements of the underlying cause of action," <u>Erica P. John Fund, Inc. v. Halliburton Co.</u>, 563 U.S. 804, 809 (2011), and focus on whether the requirements to prove the claim reveal "some fatal dissimilarity among class members that would make use of the class-action device inefficient or unfair." <u>Amgen, Inc. v. Conn. Ret. Plans & Trust</u>, 133 S. Ct. 1184, 1197 (2013).

## IV.    Analysis

Plaintiffs argue that Cerner's late payment of overtime, miscalculated overtime, and use of the fluctuating workweek method, all violate the MMWL. Accordingly, Plaintiffs seek Rule 23 certification of three classes:

(1) All non-exempt persons employed by Cerner in Missouri, at any time since March 5, 2012 through the final judgment in this matter, whose overtime compensation was not paid on the next regular payday for the period in which the overtime work was performed ("Late Payment of Overtime Class");

(2) All non-exempt persons employed by Cerner in Missouri, at any time since March 5, 2012 through the final judgment in this matter, who received overtime compensation that was calculated based upon a "regular rate" of pay that excluded On-Call Pay, Wellness Incentive Bonuses, Night Differentials, Security Differentials – ARM, Retro Wellness Incentives, and/or Holiday Differential Pay ("Miscalculated Overtime Class");

(3)  All non-exempt persons employed by Cerner in Missouri, at any time since March 5, 2012 through the final judgment in this matter, who were purportedly compensated based on the fluctuating workweek method of pay and: (i) whose overtime compensation was not paid on the next regular payday for the period in which the overtime work was performed; and/or (ii) who were paid additional compensation beyond their "fixed" salary ("Fluctuating Work Week Class").

(Collectively, the "Rule 23 Classes").

As an initial matter, defendant argues that the first step in determine whether to certify a class is to determine whether the class is ascertainable – whether it "is capable of definition," <u>Vietnam Veterans Against the War v. Benecke</u>, 63 F.R.D. 675, 679 (W.D.

Mo. 1974), and therefore "readily identifiable." EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014). However, "[t]he ascertainability inquiry is narrow," and "only requires the plaintiff to show that class members can be identified." Byrd v. Aaron's, Inc., 784 F.3d 154, 165 (3rd Cir. 2015). In other words, the class definitions must be drafted such that "membership is ascertainable by some objective standard." Huyer v. Wells Fargo & Co., 295 F.R.D. 332, 336 (S.D. Iowa 2010).

Defendant argues that the classes are not ascertainable in that they are defined in such a way that they may contain many persons who have suffered no injury (defendant further notes that it has filed several summary judgment motions). Further, defendant argues that the broad classes proposed by plaintiff could not be certified because for every pay type received, the Court would need to (1) determine whether each pay type was remuneration for employment, and, if so, (2) review the nature and purpose of the remuneration, and the facts and circumstances surrounding its payment, and accordingly determine whether it falls within one of eight statutory exemptions. In other words, defendant argues that mini-trials are necessary to determine who is a member of the class.

In response to this argument, plaintiffs indicate that their "proposed classes are so readily ascertainable that Cerner need only query a list in PeopleSoft and hit 'PRINT' to identify the putative class members." See Doc. No. 172. Based on the information before the Court, the Court agrees with plaintiffs. Even though Cerner may have defenses and arguments that summary judgment is proper, that does not make plaintiffs' proposed classes unascertainable. Instead, such arguments likely support class-wide resolution of those claims. Furthermore, it should be a simple proposition for Cerner to identify (1) which employees were paid overtime a pay period behind, (2) which employees received

On-Call Pay, Wellness Incentive Bonuses, Night Differentials, Security Differentials – ARM, Retro Wellness Incentives, and/or Holiday Differential Pay during the class period; and (3) which employees paid pursuant to the fluctuating work week received overtime a pay period behind and/or additional compensation beyond their fixed salary. Therefore, the Court finds plaintiffs' proposed classes to be ascertainable. The Court next turns to the Rule 23 elements.

### A.    Federal Rule of Civil Procedure 23(a)

#### 1.    Numerosity.

Rule 23(a)(1) requires that the proposed class be "the class is so numerous that joinder of all members is impracticable." Plaintiffs argue that numerosity is unquestionably satisfied here, as the Late Payment of Overtime Class includes over 1,000 employees, the Miscalculated Overtime Class includes over 2,400 employees, and, Plaintiffs' Fluctuating Work Week Class includes over 1,000 employees. Plaintiffs indicate that individual joinder of thousands of class members would be impracticable, and therefore plaintiffs meet the numerosity requirement.

In response, defendants argue that the classes are not as numerous as suggested, citing to a dubious argument regarding tolling of the statute of limitations (which will be thoroughly addressed in plaintiffs' arguments regarding adequacy, Section IV.A.4., below). Defendant also suggests that if its motions for summary judgment regarding the wellness incentive and standing are granted, the number of class members will also be smaller.

The Court finds that equitable tolling does not apply to eliminate claims of absent class members. Furthermore, the Court has denied defendant's motions for judgment on the pleadings or for summary judgment such that the size of the proposed classes is

unchanged from when plaintiffs filed the motion for class certification.  <u>See</u> Order, Doc. No. 214.  Given that each of the proposed classes numbers in the thousands, the Court finds that numerosity has been met.

**2.      Commonality.**

Rule 23(a)(2) is satisfied where there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs must show that there are common questions with "common answers apt to drive the resolution of the litigation" for the proposed class as a whole. <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011) (quotation omitted). The class claims "must depend on a common contention" which is "of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve the issue that is central to the validity of each one of the claims in one stroke." <u>O'Shaughnessy v. Cypress Media, L.L.C.</u>, No. 4:13-CV-0947- DGK, 2015 WL 4197789, at *6 (W.D. Mo. July 13, 2015) (citing <u>Dukes</u>, 564 U.S. at 350).  In <u>Ingersoll v. Farmland Foods</u>, citing <u>Dukes</u>, this Court granted Rule 23 certification, finding commonality existed in a MMWL case despite differences in class members' departments, managers, job duties, and equipment, where plaintiffs' claims "all rely on non-unique general allegations that particular categories of activities are compensable, yet the defendants fail to compensate for those activities."   <u>Ingersoll</u>, Case No. 10-CV-6046-FJG, Feb. 9, 2012 Order (Doc. No. 140) at 14-15.

Here, plaintiffs argue they meet the commonality requirement with respect to all three proposed classes.

1.      "Late Payment of Overtime Class"

With respect to the "Late Payment of Overtime Class," plaintiffs note that Cerner acted uniformly in paying overtime wages a full pay period behind to all Salary Non-

Exempt Employees from at least March 2012 until the summer of 2014. All the Salary Non-Exempt Employees used the same time-keeping system, used the same time submission deadline, and had their overtime calculated at the same time using the same processes. Plaintiffs argue that whether this practice violated the MMOW is a legal question common to the entire proposed class.

Defendant responds that the "late overtime" theory would require the Court or a jury to determine on a case-by-case basis whether Cerner delayed paying overtime longer than reasonably necessary, and therefore that would require looking at when each employee submitted his or her time card. The Court, however, finds this to be a spurious argument; from what the Court understands of this case, it appears that employees did not think it mattered if they submitted their time sheet a couple of days late because Cerner would not even begin making its calculations for another several days and would not pay them the overtime due them until three weeks had passed from the submission deadline. The Court finds that the commonality requirement is easily met for the "Late Payment of Overtime Class".

2.    "Miscalculated Overtime Class"

Plaintiffs argue that Cerner did not include On-Call Pay, Wellness Incentive, Night Differential, Security Differential – ARM, Retro Wellness Incentive, and Holiday Differential compensation into Missouri-based, non-exempt employees' overtime calculations during the class period. Plaintiffs Fred Speer and Mike McGuirk are members of this class because they were paid Wellness Incentive and On-Call pay during that time period, and were allegedly injured when those pay types were not included in their overtime calculations. Plaintiffs allege Cerner's payroll calculations, which were used uniformly to pay all Cerner's non-exempt employees, systematically miscalculated and

underpaid overtime wages by failing to include all required remuneration in the regular rate. Plaintiffs assert that the common legal question is whether Cerner's payroll calculations unlawfully failed to include all required remuneration when calculating overtime wages.

In response, defendant argues that discovery has proven that it has no uniform policy or pay practices that required the exclusion of all additional compensation from the regular rate of pay.  Regardless of how Cerner terms its corporate decisions, however, it appears that decisions were made as to what types of pay should be included in the regular rate, and that those decisions applied to broad groups of individuals, inclusive of the proposed plaintiff class. Cerner also argues that mini-trials would be required as to each pay type. However, as noted by plaintiffs in reply, such a decision would not require a "mini-trial" for each individual class member as that word is used in class action parlance; instead, the Court may reach that decision on summary judgment or trial as to each pay type, without having to evaluate individualized differences between class members.  Plaintiffs have demonstrated commonality with respect to the "Miscalculated Overtime Class."

        3.     "Fluctuating Work Week Class"

Plaintiffs argue that contrary to defendant's legal obligation, plaintiffs and other Salary Non-Exempt Employees were not paid a fixed salary, were not paid contemporaneous overtime, and did not receive at least 50% of the regular rate of pay in overtime premiums.  Plaintiffs argue that, for an employer to utilize the FWW model of pay, it must comply with the requirements of 29 C.F.R. § 778.114. Plaintiffs allege that Cerner did not meet the requirements of that regulation, which renders pay under the

FWW model invalid. Plaintiffs argue that the same Cerner pay policies apply commonly to the class as a whole.

In response, again defendant argues that discovery has proven it has no uniform policy of pay practices regarding the fluctuating workweek model of pay. Again, however, the Court finds that the information provided to it to date shows that decisions were made by Cerner as to the timing of overtime pay and what categories of pay were included in calculating the regular rate of pay for purposes of making overtime payments using the FWW model. No mini-trials would be necessary on these issues, as all issues appear to be resolvable on a class-wide basis, as discussed above in relation to the other two proposed classes. Therefore, the Court finds plaintiffs have demonstrated commonality with respect to the "Miscalculated Overtime Class."

### 3. Typicality

Rule 23(a)(3) requires that the claims of the representative parties be typical of the claims of the class. In other words, class representatives should have the same interests and seek a remedy for the same injuries as other class members. See East Texas Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977). It is "not necessary to first find that all putative class members share identical claims." Jones v. NovaStar Financial, Inc., 257 F.R.D. 181, 187 (W.D. Mo. 2009). Instead, the "typicality 'requirement is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal procedure or remedial theory.'" Jones, 257 F.R.D. at 187 (citing Paxton v. Union Nat. Bank, 688 F.2d 552, 562-63 (8th Cir. 1982)). However, the representative plaintiffs cannot show typicality where the question of liability can only be determined on an individualized basis for each class member. Parke v. First Reliance Stand. Life Ins. Co., 368 F.3d at 1004-05.

Plaintiffs argue that Speer and McGuirk satisfy the typicality requirement, as both worked as non-exempt employees at Cerner; both were subject to the late overtime payment policy; both received additional compensation that was excluded from their overtime calculations; and both were paid on a FWW basis and received additional compensation beyond their fixed salary that was excluded from their overtime payments. Therefore, plaintiffs argue their claims are same or similar to those they seek to represent.

Defendants argue (1) that plaintiffs lack Article III standing to establish claims related to the miscalculated overtime class, as they never received Night Differential, Security Differential – ARM, Retro Wellness Incentive, and Holiday Differential; (2) plaintiffs' late payment claims are not typical of others, as the Court must still determine on a case-by-case basis whether Cerner delayed paying overtime longer than reasonably necessary, which will then require the factfinder to determine when plaintiffs and putative class members submitted their time sheets (further noting that plaintiff Speer submitted his time sheet late several weeks while employed by Cerner); and (3) plaintiffs' FWW claims are not typical because the Court allegedly found in its order denying conditional certification on this issue that plaintiffs' claims are either duplicative or otherwise precluded by law (see Doc. No. 165), and further such claims would require an analysis into plaintiffs' state of mind regarding a clear mutual understanding that plaintiffs were being paid as salary non-exempt workers.

With respect to the defendant's arguments regarding the FWW claims, the Court finds that defendant has read its order denying conditional certification (Doc. No. 165) too broadly. As the Court more recently found in its order denying judgment on the pleadings,

plaintiffs' FWW claims may proceed.[3] <u>See</u> Order, Doc. No. 214. The Court finds that plaintiffs and other putative class members were similarly aggrieved when Cerner allegedly used the FWW method of calculating the overtime rate, while not complying with its provisions. Analysis of this issue will not require individualized determinations. Plaintiffs have demonstrated their FWW claims are typical.

With respect to the Miscalculated Overtime Class, the Court agrees with plaintiffs that plaintiffs have the same or similar grievances as other class members, despite receiving just two out of the six types of pay allegedly excluded by Cerner in calculating overtime. The Court finds this issue similar to that presented in <u>Ingersoll</u>, where the Court certified a class of workers in a hog plant; just because certain of the workers worked in different parts of the plant than the named plaintiffs or used different types of equipment from the named plaintiffs did not defeat typicality. Instead, the Court found that all the workers were similarly aggrieved in that all claims were based on defendant's pay policies regarding refusal to pay employees for actual time spent donning, doffing, and engaging in other pre-, mid-, and post-shift activities. <u>See</u> <u>Ingersoll</u>, Case No. 10-6046, Doc. No. 140, p. 16. Similarly here, named plaintiffs' claims are typical, in that they are arguing that certain types of pay were uniformly excluded by Cerner in calculating their overtime payments. Plaintiffs' claims are based on the same (or similar) legal theories as those of the class, and analysis of each of the six types of excluded pay will not involve individual issues. Furthermore, plaintiffs have Article III standing to bring claims against Cerner. Plaintiffs have demonstrated typicality as to the Miscalculated Overtime Class.

_____

[3] Plaintiffs may wish to file a motion for reconsideration on their motion for conditional certification as to this issue; the Court notes, however, that as a practical matter the late payment of overtime class included all Cerner employees who were paid pursuant to the FWW during the appropriate class period, and all would have received notice of the action. <u>See also</u> Doc. No. 165, p. 20, n.9.

Finally, with respect to the late payment of overtime class, plaintiffs note in reply that the late payment practice applied to the named plaintiffs and every class member regardless of when they handed in their time sheet. Plaintiffs further note that after the filing of this case, Cerner began paying all salary non-exempt employees' their overtime during the pay period when it was earned, which plaintiffs argue means that it was reasonably possible all along for Cerner to have paid overtime timely. At the very least, the Court finds that plaintiffs' late payment of overtime claims are typical to those of the members of the putative class.

Therefore, the typicality requirement is met.

### 4. Adequacy.

Rule 23(a)(4) requires that the putative class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The rule has two components: "whether (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." Paxton v. Union Nat. Bank, 688 F.2d 552, 562-63 (8th Cir. 1982).

Here, named plaintiffs Speer and McGuirk indicate that their claims are co-extensive with those of the proposed class, and they have already demonstrated that they will vigorously prosecute the interests of the classes.

In response, defendant argues that plaintiffs' interests are not similar to those of the purported class members. As discussed above, however, the Court rejects these arguments. Furthermore, defendant argues that an alleged delay in prosecuting this action has negatively impacted the purported class members' claims, making plaintiffs inadequate class representatives. Defendant argues that recent Missouri and Eighth

Circuit case law limits absent class members' damages to two years from the date that class certification is denied or granted, which will significantly limit (or bar) absent members' claims. Defendant cites to <u>Thomas v. U.S. Bank N.A.</u>, 789 F.3d 900, 903 (8th Cir. 2015), for the proposition that federal courts must apply state law regarding statute of limitations, including state tolling rules. Defendant then argues that because the Missouri legislature has not enacted a law adopting <u>equitable</u> tolling to the claims of <u>absent class members</u>, the statute of limitations is continuing to run on the claims of absent class members in the current matter. <u>See</u> <u>Rolwing v. Nestle Holdings, Inc.</u>, 437 S.W.3d 180, 183 (Mo. 2014).

As correctly discussed by plaintiffs in their reply suggestions, this case has nothing to do with equitable tolling. Instead, putative class members' claims were <u>legally tolled</u> by the filing of the class action complaint on March 4, 2014. Equitable tolling, which is discussed in <u>Thomas</u>, has to do with the tolling of state law claims during the pendency of unsuccessful class action lawsuits – in other words, equitable tolling in this matter could apply only if the current motion for class certification was denied and a separate group of aggrieved individuals attempted to file a lawsuit raising the same issues. <u>See</u> <u>American Pipe & Construction v. Utah</u>, 414 U.S. 538 (1974); <u>Crown, Cork & Seal Co. v. Parker</u>, 462 U.S. 345 (1983). Obviously, we do not have an equitable tolling situation presented in this lawsuit, and defendant has not demonstrated that plaintiffs are inadequate representatives of the class on this basis.

The Court finds that plaintiffs have met the adequacy requirement, both as to counsel and as to class representatives. Pursuant to Fed. R. Civ. P. 23(g), the Court appoints the attorneys at Davis George Mook LLC and Reavey Law LLC as class counsel. Fred Speer and Mike McGuirk are appointed class representatives.

B. **Federal Rule of Civil Procedure 23(b)(3)**

In this matter, plaintiffs seek certification under Fed. R. Civ. P. 23(b)(3), which authorizes certification when "[t]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The matters pertinent to such findings include: "(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Id.

1. **Predominance**

The predominance requirement is satisfied if "there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine such class member's individual position." In re Potash Antitrust Litig., 159 F.R.D. 682, 693 (D. Minn. 1995). See also Blades v. Monsanto Co., 400 F.3d 562, 569 (8th Cir. 2005)(finding the Court looks at whether some elements of claims and defenses can be proven on a systematic, class-wide basis). However, where "[l]iability determinations would be individualized and fact-intensive, . . . class certification under Rule 23(b)(3) is improper." Walker v. Bankers Life & Cas. Co., No. 06-C-6906, 2008 WL 2883614, at * 10 (N.D. Ill. July 28, 2008)(citation omitted).

Plaintiffs argue that here, for each of plaintiffs' three putative classes, common evidence found in Cerner's own pay records is all that is required to establish simultaneously, on a class wide basis, whether each of Cerner's pay practices violated

the MMWL, and there is no need to conduct individualized inquiry of class members. Cerner paid overtime a full pay period behind for all salary non-exempt employees. Cerner also excluded On-Call Pay, Wellness Incentive, Night Differential, Security Differential – ARM, Retro Wellness Incentive, and Holiday Differential from Missouri-based, non-exempt employees' overtime calculations. Cerner also paid the Fluctuating Work Week class members additional compensation beyond a fixed salary, which was excluded from their late overtime payments. Plaintiffs state that the alleged violations are established by Cerner's pay documents, and damages will be established by those documents as well. See McClean v. Health Systems, Inc., No. 11-03037-CV-S-DGK, 2012 WL 607217, at *4-5 (W.D. Mo. Feb. 23, 2012) (finding predominance met by defendant's uniform, systemic payroll practices evidenced in its own payroll records).

In response, defendant first argues that plaintiffs have not proven that damages are capable of measurement on a class-wide basis, citing to Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1435 (2013). Defendant says that plaintiff has failed to demonstrate that the damages in this case are quantifiable on a class-wide basis using common proof. However, in response, plaintiffs note that in a case like this one, where all class members are known to defendant, there is no need for a complex damages model; instead, all that will need to happen is that (1) the payroll calculations be run again, this time using all required remuneration; (2) calculate time and a-half instead of half-time to the FWW class; and (3) multiply by two to pay liquidated damages. The Court agrees with plaintiffs; there is no need to demonstrate a "damages model" in a case where damages can be calculated using formulas derived from a statute/regulation and underlying data that completely resides in the hands of defendant.

Furthermore, to the extent that defendant argues that an individualized, fact intensive inquiry is needed as to the members of the proposed classes, those arguments fail for the same reasons as detailed above. The alleged violations appear to be systemic, and the formulas used to calculate overtime appear to be standardized. Accordingly, the Court finds that plaintiffs have met the predominance requirement.

### 2. Superiority

Rule 23(b)(3) requires that class resolution be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) lists four factors relevant to the superiority analysis: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action. "Rule 23(b)(3) is the best method of adjudication for situations . . . in which the potential recovery is so small that litigation of a single claim is, as a general matter, hardly worth the cost and effort of litigation." Ingersoll, No. 5:10-cv-6046-FJG, at 19 (quoting Hammer v JP's Southwestern Foods, L.L.C., 267 F.R.D. 284, 290 (W.D. Mo. 2010)). Superiority is established "when a class action would achieve 'economies of time, effort, and expense,' and promote uniformity of decisions without sacrificing procedural fairness." Id. (citation omitted).

Plaintiff argues that all the facts favor a finding of superiority. The individual class members' potential recovery is small in comparison to the cost of pursuing an individual lawsuit. Plaintiffs are aware of no other Missouri actions regarding the same claims. The forum is desirable because Cerner is headquartered in Missouri, and all its corporate

witnesses and documents are located in this district.  Further, the case does not impose insurmountable management challenges because common proof will be used to support each of plaintiffs' claims.

Defendant argues that plaintiffs have failed to demonstrate superiority because they have not offered a trial plan; however, the Court is unaware of a requirement for a detailed trial plan in a motion for class certification.  Defendant further argues that these classes cover only a small number of claims; however, as discussed above and in the Court's order on summary judgment (Doc. No. 214), plaintiffs proposed classes each number over 1,000 individuals.  As the Court noted in Ingersoll, "a class action is a superior method of adjudicating what would otherwise be potentially over 1,000 separate lawsuits." Id., at 20.  Accordingly, plaintiffs have demonstrated superiority under Rule 23(b)(3).

### C.    Class Definition

As the Court finds plaintiffs' proposed classes should be certified, the Court adopts the following class definitions:

(1) All non-exempt persons employed by Cerner in Missouri, at any time since March 5, 2012 through the final judgment in this matter, whose overtime compensation was not paid on the next regular payday for the period in which the overtime work was performed ("Late Payment of Overtime Class");

(2) All non-exempt persons employed by Cerner in Missouri, at any time since March 5, 2012 through the final judgment in this matter, who received overtime compensation that was calculated based upon a "regular rate" of pay that excluded On-Call Pay, Wellness  Incentive Bonuses, Night Differentials, Security Differentials – ARM, Retro Wellness Incentives, and/or Holiday Differential Pay ("Miscalculated Overtime Class");

(3) All non-exempt persons employed by Cerner in Missouri, at any time since March 5, 2012 through the final judgment in this matter, who were purportedly compensated based on the fluctuating workweek method of pay and: (i) whose overtime compensation was not paid on the next regular

payday for the period in which the overtime work was performed; and/or (ii) who were paid additional compensation beyond their "fixed" salary ("Fluctuating Work Week Class").

**D.      Notice**

Plaintiffs have not submitted a proposed form of notice.    Therefore, the Court **ORDERS** plaintiffs to submit their proposed notice on or before **OCTOBER 17, 2016**. Defendant may file its objections, if any, on or before **OCTOBER 27, 2016.**  Plaintiffs may reply to the objections on or before **NOVEMBER 4, 2016**.

**V.      Conclusion**

Therefore, for the foregoing reasons, plaintiffs' motion for class certification (Doc. No. 153 is **GRANTED.**  The attorneys at Davis George Mook LLC (Tracey Flexter George and Brett A. Davis) and Reavey Law LLC (Patrick Gerard Reavey and Kevin C. Koc) are appointed as class counsel. Fred Speer and Mike McGuirk are appointed class representatives.   Additionally, plaintiffs' motion to supplement rule 23 reply brief with newly discovered evidence (Doc. No. 182) is **GRANTED**, and plaintiffs' proposed supplemental brief is considered as filed.

**IT IS SO ORDERED**.


Date:  September 27, 2016                    **S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri                        Fernando J. Gaitan, Jr.
                                             United States District Judge