IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| FRED SPEER and MIKE MCGUIRK, individually and on behalf of a class of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) Case No. 14-0204-CV-W-FJG |
| v. | ) ) |
| CERNER CORPORATION, | ) ) |
| Defendant. | ) |

**ORDER**

Pending before the Court are (1) Cerner Corporation's Motion for Partial Summary Judgment on Plaintiffs' Federal and State Late-Overtime Claims (Doc. No. 189); and (2) Plaintiffs' Motion to File Surreply to Address New Arguments in Cerner's Reply in Support of Motion for Partial Summary Judgment on Federal and State Late-Overtime Claims (Doc. No. 223). As an initial point, the Court will **DENY** plaintiffs' motion for leave to file a surreply (Doc. No. 223), as the Court finds that plaintiffs adequately controverted the relevant facts and arguments in their original suggestions in opposition. Furthermore, defendant's request for oral argument in its reply to Doc. No. 189 is **DENIED.**

**I.  Background**

Plaintiffs, Frederic Speer and Michael McGuirk, individually and on behalf of themselves and others similarly situated, bring a two-count complaint against Defendant, Cerner Corporation ("Cerner"), alleging that Defendant violated the Fair Labor Standards Act ("FLSA" or "Act") and the Missouri Minimum Wage Law ("MMWL"). Cerner employed both Plaintiffs Speer and McGuirk as Service Center Analysists/System Support Analysts

("Desktop Support Staff") at its operation, Tiger Institute for Health Innovation in Columbia, Missouri. In their Complaint, Plaintiffs allege that Cerner improperly calculated their overtime compensation by using a fluctuating workweek ("FWW") method, which contemplates dividing employees' fixed earnings by the number of hours they worked in a given week to arrive at a regular rate and then adding one-half time (50%) of the regular rate as overtime for all hours over forty. Plaintiffs also complain that Cerner failed to include all remuneration when calculating the regular rate of pay for its employees, and such failure resulted in overtime compensation of less than even the reduced FWW one-half (50%) overtime compensation rate. Furthermore, according to Plaintiffs, even this inadequate overtime compensation was systematically paid late. Plaintiffs claim that as a result of these violations Cerner denied them, as FLSA non-exempt employees, proper and timely overtime pay in violation of FLSA. Doc. No. 39, ¶ 23.

On March 30, 2016, the Court granted plaintiffs' motion for conditional certification of a collective action in part. See Doc. No. 165. On September 27, 2016, the Court granted plaintiffs' motion to certify a Rule 23 class. See Doc. No. 215. Among the classes certified was "All non-exempt persons employed by Cerner in Missouri, at any time since March 5, 2012 through the final judgment in this matter, whose overtime compensation was not paid on the next regular payday for the period in which the overtime work was performed ("Late Payment of Overtime Class"). Doc. No. 215, p. 23. Defendant Cerner moves for summary judgment as to both the state and federal late-overtime claims because: (1) according to Cerner, the FLSA does not prohibit the reasonable and consistent pay schedule under which Cerner paid a portion of its non-exempt employees their overtime; (2) under the FLSA, Cerner paid all overtime "as soon

as practicable" after it issued regular pay; (3) and, according to Cerner, under Missouri law, no statute permits a private right of action for the conduct alleged in this case.

## II. Statement of Facts

Plaintiffs allege that Cerner made bi-weekly salary payments to them for two weeks of work in the week following those weeks. This means Plaintiffs received their salary payments for weeks 1 and 2 in week 3, their salary payments for weeks 3 and 4 in week 5, and so forth. During plaintiffs' employment, however, Cerner calculated and paid overtime to Salaried Non-Exempt ("SNE") employees in the subsequent payroll, such that overtime earned during weeks 1 and 2 would be paid in the week 5 payroll. Plaintiffs note, however, that in the summer of 2014 (after the filing of this lawsuit), Cerner changed its payroll processes, such that SNE employees were paid their overtime in the same pay period in which it was earned. Plaintiffs complain that prior to the summer of 2014, Cerner made untimely overtime payments violating the FLSA and the Missouri Minimum Wage Law ("MMWL"). Cerner's own HR documents from the relevant time period notify United States associates that "Overtime is always one pay period behind." (Exh. 2, filed under seal; Exh. 3, at SPEER_D00001233, filed under seal).

As of February 2015, Cerner employed SNE employees in greater than 120 different business units and in eighteen states across the country. During the period 2012 to January 2016, Cerner had anywhere between 500 and 800 SNE employees at a given time. During the period 2012 to January 2016, Cerner had anywhere between 400 and 1,600 hourly employees at a given time. Cerner asserts it pays its SNE employees pursuant to the fluctuating workweek ("FWW") method of pay, and according to the FWW method of pay, SNE employees are required to be paid an additional 50% premium for

3

each overtime hour worked beyond forty hours per week. The parties dispute whether Cerner complied with the FWW method of pay.

Cerner maintains a deadline of 11:59 p.m. on Saturday evening for the weekly submission of timesheets by its employees. The pay period ends at midnight. However, plaintiffs testified that their managers told them during their employment that the deadline was flexible, and it was acceptable to submit time sheets by the following Monday or Tuesday. Further, prior to this lawsuit being filed, Cerner did not begin calculating SNE employees' overtime each pay period until Thursday following the close of the two-week pay period, five days after the pay period ended.

Cerner operates on a bi-weekly payroll schedule and has established its payday as the Friday following the close of each two-week pay period. To be included in the upcoming Friday paycheck, all time must have been entered, pay amounts must have been calculated and reconciled, and payroll information must have been submitted to the bank with payroll instructions by close of business Tuesday—two business days after the close of the pay period. As SNE employees, Plaintiffs received their full weekly salaries in their regular paycheck, regardless of the number of hours they worked and regardless of whether they submitted their timesheets by the midnight-Saturday deadline. Plaintiffs and all SNE employees received their full salaries, even if they missed the time submission deadline, because their weekly salary was always the same for each work week, regardless of the number of hours worked. As a result, information could be quickly processed, reconciled, and submitted to the bank for payment of Plaintiffs' full base salary by the Tuesday after the close of the pay period. However, if Plaintiffs or any other SNE employee recorded overtime hours on their timesheets, Cerner was required to determine Plaintiffs' "regular rate" of pay for each week in order to calculate, process, and issue

4

payment of the proper amount of overtime compensation. Under the FWW method of calculating overtime, the regular rate varies based upon the types of additional compensation received[1] and the number of overtime hours recorded and submitted by Plaintiffs on their timesheets.

Cerner asserts it was not possible to calculate Plaintiffs' (and other SNE employees') overtime compensation by the bank's Tuesday deadline based on Cerner's staff and the tools available to it during the relevant time period. Plaintiffs, however, dispute this fact, given that the calculation is simple math, and Cerner has admitted it only takes approximately 16-23 hours to calculate and process SNE Employee's payroll each pay period. (Richardson Depo., Exh. 1, at 176:1-22; 179:17-180:20). Plaintiffs further note that Cerner, a company with billions in annual revenue and more than 16,500 U.S.-based employees, chose to staff its payroll department with just four people. (Richardson Depo., Exh. 1, at 151:9-18). Furthermore, after Plaintiffs filed this lawsuit in March 2014, Cerner created a computer program called Time Tool, which it implemented in the summer 2014, and began paying SNE employees' overtime wages on the next pay day following the close of the pay period in which it was earned, which plaintiffs argue demonstrates that timely payment was reasonably possible. (Richardson Depo., Exh. 1, at 150:9-151:7).

Instead of calculating the SNE employees' overtime compensation by the bank's Tuesday deadline, Cerner made calculations for all hourly employees' overtime, and submitted both hourly employees' overtime and regular pay information, as well as SNE employees' base pay information to the bank for payment. Following that process, Cerner

---

[1] Plaintiffs dispute whether Cerner paid them any required additional types of compensation before making the calculations. For purposes of this motion for summary judgment, Cerner's alleged violations of other portions of the FLSA and state law are not material as to resolution of this motion concerning the timing of Cerner's overtime payments to plaintiffs.

calculated and submitted SNE employees' overtime information for payment the Friday after the close of the next two-week pay period. Defendant Cerner asserts that staggering only the SNE overtime payroll limited the impact within the Cerner employee population (Ex. C, Richardson Depo. at 160:8-161:11); plaintiff, however, argues that by claiming it was attempting to limit the impact, Cerner shows it was aware that its late overtime payment practice legally impacted its SNE employees.

Defendant Cerner also claims that the SNE employees, including named plaintiffs, frequently submitted their timesheets late. However, plaintiffs respond that with their overtime being a pay period behind, SNE employees had no incentive to submit their timesheets by the purported Saturday deadline.

### III. Standard

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–90 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586–90.

A nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

> The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving
party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citations and quotations omitted).

**IV. Analysis**

    A.    Is the DOL Bulletin Regarding Late Payment of Overtime to be given Deference?

As noted by defendant, neither the FLSA nor its regulations "specifically address when overtime compensation must be paid." Brooks v. Vill. of Ridgefield Park, 185 F.3d 130, 135 (3d Cir. 1999); Nolan v. City of Chicago, 162 F. Supp. 2d 999, 1002 (N.D. Ill. 2001) ("The FLSA does not specifically define when overtime payments must be made."). In the absence of a federal statute or regulation, the DOL issued a bulletin in 1968, which provides:

> There is no requirement in the Act that overtime compensation be paid weekly. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

29 C.F.R. §778.106. Defendant argues that because this is a bulletin and not a regulation, it commands no deference from this or any other court. See O'Brien v. Town of Agawam, 350 F.3d 279, 298 (1st Cir. 2003) (stating, in part, "Because § 778.106 is an interpretative bulletin, it does not command formal deference from this court"). As discussed by plaintiffs, however, defendant omits the very next sentence: "Nevertheless, the Secretary's interpretations "have the power to persuade, if lacking power to control, as

7
Case 4:14-cv-00204-FJG   Document 242   Filed 03/17/17   Page 7 of 11

they constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." (citation omitted)).  In O'Brien, the First Circuit ultimately agreed to follow the Secretary's interpretation stated in § 778.106.

O'Brien is not the only case agreeing with the Secretary's interpretation of § 778.106 and the FLSA as requiring on-time overtime payments with exceptions only when the correct amount of overtime cannot be determined within a reasonable amount of time after submission.  See, e.g. Brooks v. Vill. of Ridgefield Park, 185 F.3d 130, 135-36 (3d Cir. 1999); Brennan v. City of Philadelphia, No. 13-6635, 2016 WL 3405449 at *2 (E.D. Penn. June 21, 2016); Ortega v. Due Fratelli, Inc., No. 14 C 06669, 2015 WL 7731863 at *7 (N.D. Ill. December 1, 2015); Parker v. City of New York, No. 04-CV-4476 (BSJ)(DCF), 2008 WL 2066443, at *11 (S.D.N.Y. May 13, 2008); Nolan v. City of Chicago, 162 F. Supp. 2d 999, 1003-4 (N.D. Ill. 2001) (same).

This Court will not depart from precedent based on a stray comment about the level of deference accorded § 778.106 in an opinion which otherwise gave the interpretive bulletin full effect.  The Court finds that summary judgment should be **DENIED** as to this point.

      B.     Was Cerner's Overtime Policy Reasonable or Practicable?

Defendant argues that even if the Court holds that § 778.106 creates a cause of action under the FLSA, by its express terms it contemplates that overtime payments may be delayed when they cannot be calculated at the same time as regular pay and that they may be made on the subsequent payroll.  Cerner argues that its payment of overtime on the subsequent pay period was reasonable under the circumstances of this case, citing to Brennan v. City of Phila., No. 13-6635, 2016 WL 3405449, at *2 (E.D. Penn. June 21, 2016).  However, in Brennan, the Court did not grant summary judgment in favor of

defendant who paid overtime late on a consistent basis, similar with Cerner here; instead, it found that questions of fact remained as to whether the defendant was calculating overtime "as soon as practicable or convenient under the circumstances" to establish liability. Id. at *4, citing Speer v. Cerner, Case No. 14-0204, 2016 WL 1267809, at *7 (W.D. Mo., March 30, 2016) (J. Gaitan, Order granting conditional certification of collective action). Here, plaintiffs have set forth numerous facts supporting their claim that Cerner could have calculated SNE employees' overtime sooner, but chose not to do so until plaintiffs filed suit. Therefore, the Court finds, again, that questions of material fact remain as to whether Cerner was paying its SNE employees overtime as soon as practicable or convenient under the circumstances.

      C.      Does Missouri Law Create a Private Right of Action for Untimely Overtime?

Defendant argues that the Missouri Minimum Wage Law is silent as to a private cause of action due to the timing of pay (having only a criminal statute addressing timing of pay). Defendant notes that earlier in this action, Judge Sachs denied defendant's motion to dismiss on this same issue. See Doc. No. 77 (Order of May 22, 2015). Judge Sachs concluded that the federal timing rules should be incorporated into state law, but that the applicability of those rules could be revisited as necessary as the case proceeded. See Doc. No. 77, p. 5 (further noting, as this Court has done above, that the Court would "doubtless be left with a reasonable time issue to resolve"). Cerner argues that if the Court does not dismiss plaintiffs' federal late-overtime claim (which it has not, for the reasons stated above), Cerner "accepts the Court's invitation to revisit whether Plaintiffs have a private right of action under Missouri law." Doc. No. 190, p. 15.

Defendant notes that Missouri law explicitly provides a timing requirement for the payment of wages and salaries. R.S.Mo. § 290.080 provides that "All corporations doing

9

business in this state . . . shall pay the wages and salaries of their employees as often as semimonthly, within sixteen days of the close of each payroll period."[2] Defendant argues that the statute creates a criminal offense, not a private right of action:

> Any corporation or person violating this section shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not less than fifty dollars, nor more than five hundred dollars, for each offense.

Id. Defendant notes that R.S.Mo. § 290.090, the very next statute, explicitly grants a private right of action for late payment of factory employees. Defendant notes that, under Missouri law, "A statute which creates a criminal offense and provides a penalty for its violation, will not be construed as creating a new civil cause of action independently of the common law, unless such appears by express terms or by clear implication to have been the legislative intent." Christy v. Petrus, 295 S.W.2d 122, 126 (Mo. 1956). Thus, defendants argue that plaintiffs have no claim under Missouri law. Defendant also argues that Missouri Revised Statute §290.505 (which was referenced by Judge Sachs) does not support the "late overtime" claim. Defendant states that § 290.505 simply mirrors the language of the FLSA, which also does not have a specific timing requirement.

However, §290.505(4), provides, "this section shall be interpreted in accordance with the Fair Labor Standards Act . . . and the Portal to Portal Act . . . and any regulations promulgated thereunder." Although defendant argues that it would be illogical to infer that the generic language in § 290.505, which states nothing about timing, could create a different timing requirement than the 16-day requirement found in § 290.080, this Court finds no illogic in allowing a private cause of action under § 290.505(4), as reasoned by

---

[2] Given this timing requirement, one could argue that defendant is violating this law in its late payment of overtime, as, under this Court's understanding of the facts, the close of each payroll period occurs on midnight on Sunday, yet SNE employees are not paid their overtime for that payroll period until the Friday of the following pay period, or approximately 19 days after the close of the pay period.

Judge Sachs. The MMWL is to be interpreted consistently with the FLSA. R.S.Mo. § 290.505(4). Just because Cerner may also be in violation of a Missouri criminal statute does not mean that it can avoid the MMWL claims pled against it. This Court sees no reason to depart from Judge Sachs' prior ruling in this matter, wherein he stated that he believed that the MMWL would incorporate the timing provisions of 29 CFR § 778.106. Defendant's motion for summary judgment as to the state late-overtime claims is also **DENIED.**

IV. Conclusion

Therefore, for the foregoing reasons, (1) Cerner Corporation's Motion for Partial Summary Judgment on Plaintiffs' Federal and State Late-Overtime Claims (Doc. No. 189) is **DENIED**; and (2) Plaintiffs' Motion to File Surreply to Address New Arguments in Cerner's Reply in Support of Motion for Partial Summary Judgment on Federal and State Late-Overtime Claims (Doc. No. 223) is **DENIED**.

**IT IS SO ORDERED**.

Date: March 17, 2017      **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri      Fernando J. Gaitan, Jr.
United States District Judge